DAVID E. MASTAGNI, ESQ. (SBN 204244)
davidm@mastagni.com
TASHAYLA D. BILLINGTON, ESQ. (SBN 307050)
tbillington@mastagni.com
CHERYL CARLSON, ESQ. (SBN 118102)
ccarlson@mastagni.com
**MASTAGNI HOLSTEDT**
*A Professional Corporation*
1912 "I" Street
Sacramento, California 95811
Telephone: (916) 446-4692
Facsimile: (916) 447-4614

Attorneys for Plaintiffs Vallejo Police Officers' Association and Michael Nichelini

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE VALLEJO POLICE OFFICERS' ASSOCIATION, a labor union; MICHAEL NICHELINI, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF VALLEJO, a municipal corporation; THE VALLEJO POLICE DEPARTMENT, a municipal corporation; SHAWNY WILLIAMS, individually and in his official capacity as Chief of Police for the City of Vallejo; GREG NYHOFF, in his official capacity as City Manager for the City of Vallejo; ANNE CARDWELL, in her official capacity as Assistant City Manager for the City of Vallejo; BOB SAMPAYAN, in his official capacity as Mayor for the City of Vallejo; HERMIE SUNGA, in his official capacity as Vice Mayor for the City of Vallejo; CRISTINA ARRIOLA, in her official capacity as City Councilmember for the City of Vallejo; HAKEEM BROWN, in his official capacity as City Councilmember for the City of Vallejo; PIPPIN DEW, in her official capacity as City Councilmember for the City of Vallejo; MINA DIAZ, in her official capacity as City Councilmember for the City of Vallejo; ROBERT McCONNELL, in his official capacity as City Councilmember and Mayor for the City of Vallejo; KATY MIESSNER, in her official capacity as City Councilmember for the City of Vallejo; ROZZANA VERDER-ALIGA, in her official capacity as City Councilmember and Vice Mayor for the City of Vallejo; and DOES 1 through 100, inclusive, | Case No. <br><br> **COMPLAINT FOR DAMAGES FOR:** <br><br> **1. FREE SPEECH VIOLATIONS** <br> **2. FREE ASSOCIATION VIOLATIONS** <br> **3. PROCEDURAL DUE PROCESS VIOLATIONS** <br> **4. SUBSTANTIVE DUE PROCESS VIOLATIONS** <br> **5. EQUAL PROTECTION VIOLATIONS** <br> **6. FIRST AMENDMENT RETALIATION** <br> **7. FEDERAL PRIVACY RIGHTS VIOLATIONS** <br> **8. STATE PRIVACY RIGHTS VIOLATIONS** <br> **9. DEFAMATION** <br> **10. INTERFERENCE WITH UNION ACTIVITIES** <br> **11. DISCRIMINATION** <br> **12. RETALIATION** <br> **13. CA LABOR CODE VIOLATIONS** <br> **14. NEGLIGENCE** <br> **15. NEGLIGENT SUPERVISION** <br> **16. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br><br><br> **JURY TRIAL DEMANDED** |

Defendants.

## JURISDICTION AND VENUE

1.      This action arises out of Title 42 of the United States Code § 1983.  *See* 28 U.S.C. § 1331.  The unlawful acts and practices alleged herein occurred in the City of Vallejo, County of Solano, California, which is within this federal judicial district.  Pendent jurisdiction is proper because all claims in this action derive from a common nucleus of operative facts.  *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).  Title 28 of the United States Code § 1391(b)(1) confers venue upon this Court.

## INTRODUCTION

2.      This federal civil rights and state law action arises out of a campaign of harassment, intimidation, and retaliation against the Vallejo Police Officers' Association ("VPOA"), its members, and its current President, Vallejo Police Department ("VPD") Lieutenant Michael Nichelini, by the VPD and all defendants, including the City of Vallejo ("City"), culminating in multiple baseless internal affairs investigations into the VPOA's protected union-related activities and the City's continued threats and actions to terminate Lieutenant Nichelini's employment.

3.      The City and the VPD have been embroiled in public controversy for over a decade regarding the conduct of the VPD and the City's ratification of that conduct.  In early 2019, tensions in the City of Vallejo boiled over after the controversial shooting death by the VPD of Willie McCoy, an African-American Vallejo resident, resulting in the eventual replacement of the Police Chief and election of Lieutenant Nichelini as the new VPOA President.

4.      Shortly after becoming VPOA President, Mr. Nichelini became the subject of harassment and intimidation efforts by VPD Police Chief, Defendant Shawny Williams ("Williams"), ratified by the City Defendants, in order to alleviate mounting political pressure by placing that pressure on the VPOA and its President.  Between January 2020 and December 2020, President Nichelini was subjected to at least five instances of harassment, each intended to interfere with the VPOA's concerted rights.  On July 15, 2020, Williams placed Mr. Nichelini on administrative leave and barred him from the workplace.  Williams' action effectively prevented

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Nichelini from meeting with and representing VPOA members.

5.     On December 15, 2020, Williams had VPD Deputy Chief Michael Kihmm notify President Nichelini that he was the subject of an internal affairs investigation regarding VPOA correspondence with a member of the news media.  President Nichelini was notified through a document titled "Witness Notice" regarding a "Notice of Administrative Investigation Interview, IA2020-20."

6.     The December 15, 2020 Notice warned President Nichelini that the investigation "could potentially lead to discipline."  The Notice further falsely accused President Nichelini of "sending an inappropriate and potentially threatening email to a member of the media."

7.     On December 18, 2020, President Nichelini was illegally subjected to an interrogation pursuant to the December 15, 2020 Notice, despite Williams, City, and the VPD being on notice that their conduct violated the constitutional rights of President Nichelini and the VPOA.

8.     Following the December 18, 2020, illegal interrogation of President Nichelini, City and the VPD issued a personnel report regarding IA2020-20 that was internally inconsistent, contained demonstrably false facts about President Nichelini, and featured findings entirely divorced from the evidence the report relied on to make the findings.

9.     On December 21, 2020, President Nichelini received Notice that the City of Vallejo intended to terminate his employment with the VPD.

10.    The Notice, subsequent illegal interrogation and proposal to terminate President Nichelini's employment is a continuation of a series of actions, undertaken by Defendant Williams and ratified by the City Defendants, and each of them, to harass, intimidate, coerce, threaten, and retaliate against the VPOA, and VPOA President Nichelini in particular, for engaging in concerted activities protected by federal law.

11.    As a result of Defendants' illegal conduct, and each of them, the VPOA and President Nichelini now bring this present action for violations of state and federal law.

**PARTIES**

12.    Plaintiff, Michael Nichelini, sues in his individual capacity and in his official capacity as President of the VPOA.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

13.     Plaintiff, the Vallejo Police Officers' Association, is the exclusively recognized collective bargaining agent for Vallejo Police Department Officers of all ranks, except the Chief of Police and the newly created position of Deputy Chief of Police.  Every member of the VPOA's Board of Directors is an employee of the City of Vallejo.  Plaintiff VPOA is an "employee organization" within the meaning of Cal. Gov. Code § 3501(c).  The VPOA's members are "peace officers", as defined by Cal. Penal Code § 830.1.  They are also employees of the City of Vallejo, which is a public entity within the meaning of Cal. Gov. Code § 3501(c).  The VPOA's primary purpose includes representing its members in their relations with the City of Vallejo and advocating for their interests.  Plaintiff VPOA brings this action on behalf of itself and its members.

14.     Defendant CITY OF VALLEJO is a municipal corporation duly organized and existing under the laws of the State of California.  Defendant VALLEJO POLICE DEPARTMENT all times mentioned herein was and is an organizational unit of the municipal entity City of Vallejo, operating under the supervision of the City of Vallejo and its decision makers.

15.     Defendant SHAWNY WILLIAMS is, and at all times mentioned herein was, the Chief of Police for the City of Vallejo and is sued in his official and individual capacities.  He is a final decision maker for VPD because he makes official and independent determinations about discipline, training, supervision, and other personnel matters for the department.

16.     Defendant GREG NYHOFF was, at all times mentioned herein, the City Manager for the City of Vallejo and is sued in his official capacity.  The City manager is directly responsible for supervision of the VPD and the Chief of Police.  He is a final decision maker for the VPD and the City because he makes official, independent, and collective determinations about VPD and City policies, including determinations about discipline, training, supervision, and other personnel matters for the City.

17.     Defendant ANNE CARDWELL was, at all times mentioned herein, the Assistant City Manager for the City of Vallejo and is sued in her official capacity.  The Assistant City manager shares responsibility for supervision of the VPD and the Chief of Police with the City Manager.  She is a final decision maker for the VPD because she makes official and independent determinations about discipline, training, supervision, and other personnel matters for the

1    department when such authority is delegated to her by the City Manager.

2         18.    Defendant BOB SAMPAYAN was the Mayor for the City of Vallejo and is sued in

3    his official capacity.  The Mayor in his role as a member and presiding officer of the City Council

4    is responsible for supervision of the City Manager, the Assistant City Manager, the VPD, and the

5    Chief of Police.  He was a final decision maker for the VPD because the City Council makes

6    official, independent, and collective determinations about City policies, including determinations

7    about discipline, training, supervision, and other personnel matters for the City.

8         19.    Defendant HERMIE SUNGA was the Vice Mayor for the City of Vallejo and is a

9    member of the City Council.  He is sued in his official capacity.  As Vice Mayor and member of

10   the City Council, Mr. SUNGA was directly responsible for supervision of the City Manager, the

11   Assistant City Manager, the VPD, and the Chief of Police.  He was a final decision maker for the

12   VPD because the City Council makes official, independent, and collective determinations about

13   City policies, including determinations about discipline, training, supervision, and other personnel

14   matters for the City.

15        20.    Defendant ROBERT McCONNELL was a Councilmember and is now the Mayor

16   of the City of Vallejo.  He is sued in his official capacity.  The Mayor in his role as a member and

17   presiding officer of the City Council is responsible for supervision of the City Manager, the

18   Assistant City Manager, the VPD, and the Chief of Police.  He is a final decision maker for the

19   VPD because the City Council makes official, independent, and collective determinations about

20   discipline, training, supervision, and other personnel matters for the City.

21        21.    Defendant ROZZANA VERDER-ALIGA was a Councilmember and is now the

22   Vice Mayor.  She is sued in her official capacity.  As Councilmember and Vice Mayor, Ms.

23   VERDER-ALIGA is directly responsible for supervision of the City Manager, the Assistant City

24   Manager, the VPD, and the Chief of Police.  She is a final decision maker for the VPD because the

25   City Council makes official, independent, and collective determinations about discipline, training,

26   supervision, and other personnel matters for the City.

27        22.    Defendant CRISTINA ARRIOLA is a Councilmember for the City of Vallejo and

28   is sued in her official capacity.  She is a final decision maker for the City because the City Council

makes official, independent, and collective determinations about discipline, training, supervision, and other personnel matters for the City.

23.   Defendant HAKEEM BROWN was, at all times mentioned herein, a Councilmember for the City of Vallejo and is sued in his official capacity.  He is a final decision maker for the City because the City Council makes official, independent, and collective determinations about discipline, training, supervision, and other personnel matters for the City.

24.   Defendant PIPPIN DEW was, at all times mentioned herein, a Councilmember for the City of Vallejo and is sued in her official capacity.  She is a final decision maker for the City because the City Council makes official, independent, and collective determinations about discipline, training, supervision, and other personnel matters for the City.

25.   Defendant MINA DIAZ is a Councilmember for the City of Vallejo and is sued in her official capacity.  She is a final decision maker for the City because the City Council makes official, independent, and collective determinations about discipline, training, supervision, and other personnel matters for the City.

26.   Defendant KATY MEISSNER was, at all times mentioned herein, a Councilmember for the City of Vallejo and is sued in her official capacity.  She is a final decision maker for the City because the City Council makes official, independent, and collective determinations about discipline, training, supervision, and other personnel matters for the City.

27.   Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

28.   Plaintiffs are informed and believe and therefore allege that each of the DOE defendants is legally responsible and liable for the incidents, injuries, and damages hereinafter set forth. Each defendant proximately caused injuries and damages because of their actions, omissions, negligence, breach of duty, negligent supervision, management, or control and in violation of law and of public policy.  Each defendant is liable for his/her personal conduct, vicarious and/or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care, control or upon any other act or

1    omission, including policy or custom.  Plaintiffs may seek leave to amend this complaint.

2            29.     In committing the acts and/or omissions alleged herein, Defendants, and each of

3    them, acted within the course and scope of their employment, appointment and/or elected

4    responsibilities for the City of Vallejo for the City of Vallejo.

5            30.     In committing the acts and/or omissions alleged herein, Defendants, and each of

6    them, acted under color of authority and/or color of law.

7            31.     Due to the acts/omissions alleged herein, Defendants, and each of them, acted as the

8    agent, servant, and employee, and/or in concert with each other Defendant herein named.

9            32.     Plaintiffs timely filed a Public Entity Tort Claim on January 14, 2021.  The City of

10   Vallejo failed to respond to Plaintiffs' claims, which were rejected by operation of law on March

11   1, 2021.

12                              **STATEMENT OF FACTS**

13           33.     Plaintiff, VPOA President Michael Nichelini, is a decorated veteran officer who

14   served the Oakland Police Department for ten (10) years, followed by serving the VPD for fourteen

15   (14) years.  Prior to becoming the President of the VPOA, Mr. Nichelini served the VPOA for eight

16   years as Treasurer and Vice President.

17           34.     Defendants CITY OF VALLEJO, VALLEJO POLICE DEPARTMENT, GREG

18   NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY

19   WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ,

20   ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA ("City

21   Defendants"), and each of them, are and were, policymakers for the VPD and the City of Vallejo.

22           35.     City Defendants have not maintained a healthy relationship between the VPD and

23   the citizenry of Vallejo, and the City of Vallejo has been the subject of national controversy

24   regarding the policies of City and the VPD.  The City and the VPD have been embroiled in public

25   controversy for over a decade regarding the conduct of the VPD and the City's ratification of that

26   conduct.

27           36.     In early 2019, tensions in the City of Vallejo boiled over after the controversial

28   shooting death by the VPD of Willie McCoy, resulting in the citizenry of Vallejo demanding

1  meaningful responses from City Defendants regarding the conduct of VPD.  Citizens called for the
2  resignation and replacement of multiple City Defendants, including Defendants SAMPAYAN and
3  NYHOFF.

4        37.    In September 2019, Defendant WILLIAMS was appointed Chief of Police for the
5  City of Vallejo.  Defendant WILLIAMS and the Deputy Police Chief(s) are the only VPD officers
6  not represented by the VPOA.  WILLIAMS began his tenure as Chief of Police of the City of
7  Vallejo during a period of extreme tension between the citizens of Vallejo, the VPD, and City
8  Defendants.

9        38.    In December 2019, while Mr. Nichelini was Vice President of the VPOA, the VPOA
10  demanded that City Defendants meet-and-confer regarding the VPD's body-worn camera policy.
11  On January 1, 2020, Mr. Nichelini became the VPOA President, inheriting both the meet-and-
12  confer process between City and the VPOA, and the extreme tension between the citizens of
13  Vallejo, the VPD, and City Defendants.

14       39.    On March 4, 2020, President Nichelini, in his capacity as VPOA President, sent an
15  email regarding matters of public concern to other VPOA members.  The email discussed matters
16  of important VPOA business, including dealings with the public and the ongoing political relations
17  between VPOA members and the City Defendants.  The email contained a small image of one of
18  VPD's earliest historic badges.  The badge once belonged to local hero George N. Frazier, veteran
19  of the Spanish-American War and World War I, who served as both a VPD officer and a detective
20  for the Solano County Sheriff's Office in the early 1900s.

21       40.    President Nichelini sent the email from his personal computer, using an application
22  he wanted to encourage VPOA members to use for communication amongst themselves.  Since the
23  image of the badge was tiny, President Nichelini did not notice Mr. Frazier's badge bore a small
24  engraving of a Gammadion cross, a Native American symbol for peace and prosperity.  When Mr.
25  Frazier, a Native American, placed the engraving on the badge, circa 1907, the image bore no
26  negative connotations.

27       41.    On March 8, and March 17, 2020, President Nichelini discussed the badge engraving
28  with VPD officials.  During the March 17, 2020 discussion, Defendant WILLIAMS stated he

1  understood and accepted President Nichelini's reasonable explanation for the badge image and
2  agreed it was not a political statement and did not reference any particular group.  The public was
3  unaware of the badge image and had no interest in the image until months later when the matter
4  was publicized by the Chief of Police and the City Manager, who falsely accused President
5  Nichelini of a hate crime.

6        42.    On May 28, 2020, President Nichelini filed a grievance on behalf of the VPOA
7  against VPD regarding City Defendants efforts to civilianize Public Information Officer ("PIO")
8  and officer recruitment positions.  On June 24, President Nichelini filed a complaint with the
9  California Public Employment Relations Board ("PERB") on behalf of the VPOA against VPD
10 regarding City Defendants' efforts to civilianize the PIO and officer recruitment positions.

11       43.    On July 1, 2020, Defendant WILLIAMS denied the VPOA's Step 1 Grievance
12 concerning the City's unilateral civilianizing and contracting out of union work.  Defendant
13 WILLIAMS failed to respond to the substantive contractual and statutory allegations set forth in
14 the VPOA's Step 1 Grievance.

15       44.    On July 15, 2020, Defendant WILLIAMS placed President Nichelini on
16 administrative leave for allegedly destroying a windshield, a piece of evidence in a high-profile
17 officer-involved shooting that took place on June 2, 2020.  Although Defendant WILLIAMS knew
18 President Nichelini had no knowledge of, or involvement in the destruction of the windshield,
19 WILLIAMS nonetheless falsely accused President Nichelini of destroying evidence.  This action
20 barred Nichelini from the workplace purposefully and effectively preventing him from contacting
21 and representing VPOA members.

22       45.    Defendant WILLIAMS retaliated against President Nichelini by falsely accusing
23 him of destroying the windshield after President Nichelini filed grievances on behalf of the VPOA.
24 Among other things, the timing of the false accusations against President Nichelini by WILLIAMS
25 evinces retaliatory intent.  City Defendants subsequently leaked the false information regarding
26 President Nichelini's alleged involvement in the destruction of the windshield to the press.  City
27 Defendants also made public the March 4, 2020 badge email in order to further damage President
28 Nichelini's reputation.  (*See* Paragraph 41, above).

46.     On July 31, 2020, President Nichelini filed another complaint with PERB on behalf of the VPOA against VPD, regarding City Defendants' efforts to interfere with the VPOA's protected, concerted activities by retaliating against President Nichelini.  City Defendants were thus noticed of their constitutionally and legally infirm conduct no later than July 31, 2020.

47.     Nevertheless, on August 6, 2020, President Nichelini was subjected to an interview by the California Department of Justice ("DOJ") in a criminal probe into the destruction of the windshield.  At the time the DOJ interviewed President Nichelini regarding the windshield, Defendant WILLIAMS knew that President Nichelini had no knowledge of, and was not involved in the destruction of evidence.  President Nichelini, based on information and belief, understands the evidence has completely vindicated him from all destruction allegations, but the Chief of Police is concealing that information from the public and the City.

48.     On August 21, 2020, City Defendants responded to the VPOA's grievance regarding PIO and recruiting positions, denying the grievance at Step Two.  On August 25, 2020, President Nichelini filed a Step 3 grievance on behalf of the VPOA against City Defendants regarding the PIO and recruiting positions.

49.     On August 28, 2020, President Nichelini received another Notice of Interview regarding a City Council meeting recording that occurred almost a year earlier. The Notice also alleged dishonesty in a previous internal affairs investigation.  The VPD also gave President Nichelini another Notice of Interview on August 28, 2020 regarding disparaging comments he allegedly made to a human resources officer about Defendant WILLIAMS.  Among other things, the timing of the disciplinary notices sent to President Nichelini evinces retaliatory intent.

50.     On September 3, 2020, despite City Defendants being on notice that their conduct towards President Nichelini and the VPOA was constitutionally and legally infirm, City Defendants nonetheless subjected President Nichelini to an administrative interrogation regarding the windshield evidence, the badge image, and a press release President Nichelini sent in the performance of his duties for the VPD.

51.     On September 4, 2020, President Nichelini filed a grievance on behalf of himself and the VPOA against City Defendants for discrimination against VPOA members for their

1  engaging in protected, concerted activities.

2  52.   On September 23, 2020, President Nichelini received a Notice of Intent to Discipline

3  for a September 24, 2019 incident at a City Council meeting in which President Nichelini, while

4  responsible for security at the meeting, used his cell phone to record portions of the meeting he was

5  concerned would not be captured by his body-worn camera.  Among other things, the timing of

6  thedisciplinary notice sent to President Nichelini evinces retaliatory intent.

7  53.   In addition to disciplining President Nichelini under the pretext of a 364-day old

8  incident, Defendants WILLIAMS also informed local civil rights attorney Melissa Nold, a citizen

9  who complained to City Defendants about President Nichelini, that President Nichelini had been

10  disciplined.  WILLIAMS's disclosure of President Nichelini's personnel information was unlawful

11  and unethical.

12  54.   On October 15, 2020, the VPOA filed a Petition for Writ of Mandate and Complaint

13  for Declaratory and Injunctive Relief challenging the City of Vallejo's October 6, 2020 declaration

14  of emergency because the City used the declaration to interfere with VPOA members' rights.  A

15  First Amended Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief

16  was filed on or about December 15, 2021.

17  55.   On October 21, the VPOA filed suit against the City of Vallejo regarding the City's

18  October 6, 2020 declaration of emergency because the City used the declaration to interfere with

19  VPOA members' rights.

20  56.   On December 7, 2020, President Nichelini, in his capacity as VPOA President,

21  responded to an email from a local newspaper reporter who was relocating to Georgia, and

22  expressed concerns about the fairness of the individual's reporting on VPOA members and the

23  VPD.  Despite acknowledging that the communications were protected VPOA communications,

24  City Defendants nonetheless sent President Nichelini a December 15, 2020 Notice of

25  Administrative Investigation into the December 7, 2020 protected, concerted email.  Among other

26  things, the timing of the notice evinces retaliatory intent.

27  57.   On December 16, Plaintiffs' attorneys mailed City Defendants a Cease-and-Desist

28  Letter.  On December 18, 2020, City Defendants, despite unequivocally being noticed their conduct

towards President Nichelini and the VPOA was constitutionally and legally infirm, nonetheless subjected President Nichelini to an interrogation regarding the December 7, 2020 email.

58.     On December 21, 2020, City Defendants sent a Notice of Intent to Terminate President Nichelini from his employment at VPD, despite City Defendants unequivocally being on notice that their conduct towards President Nichelini and the VPOA was constitutionally and legally infirm.  The Termination Notice contained multiple glaring factual inaccuracies and misrepresentations, in addition to outrageous accusations against President Nichelini that inappropriately seek to damage his reputation and impugn his character.

59.     In late December 2020, City Defendants and the VPOA met and conferred regarding City's proposed "Patrol Staffing Deployment & Mandatory Overtime List."  However, City Defendants did not meet and confer in good faith, in violation of the Meyers-Milias-Brown Act ("MMBA") (Cal Gov. Code § 3500, *et seq*.)  Moreover, at that meeting, Defendant WILLIAMS illegally threatened retaliation against VPOA members for union activities, unlawfully interfering with the VPOA and its members' protected, concerted conduct.

60.     In January 2021, City Defendants, and each of them, notified President Nichelini that City Defendants, and each of them, had illegally placed President Nichelini on administrative leave as a result of President Nichelini's protected conduct, which President Nichelini undertook on behalf of all VPOA members, including himself, despite City Defendants, and each of them, being on notice that such adverse employment actions violated state and federal law.

61.     Moreover, as noted above, City Defendants, and each of them, improperly barred President Nichelini from the workplace to prevent him from contacting and representing VPOA members and the protected, concerted activities of VPOA members, in violation of multiple state laws and the First Amendment.  As further evidence of animus toward and intent to interfere with Nichelini's union-related duties and responsibilities, on January 5, 2021, Defendant WILLIAMS ordered a VPOA member facing misconduct allegations to seek the Police Chief's approval prior to contacting non-attorney VPOA officials.

62.     Further, in January 2021, City Defendants, and each of them, mailed notices to VPOA members that contained illegal gag orders, or "confidentiality directives", to VPOA

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

members under administrative investigation by City Defendants.  According to California law, such directives violate the MMBA and interfere with VPOA members' protected rights, constituting interference by City Defendants, and each of them, with the VPOA's union activities.

63.     Each and every attempt by City Defendants to discipline President Nichelini followed President Nichelini's filing of an action against City Defendants on behalf of the VPOA, indicating each and every attempt by City Defendants to discipline President Nichelini was retaliatory and pretextual, and further establishes a pattern of similar and related harassing, retaliatory, and discriminatory conduct by City Defendants.

## FIRST CAUSE OF ACTION

**(Violation of U.S. Constitution – First Amendment Right to Free Speech)**

**(Against All Defendants)**

64.     The VPOA and President Nichelini ("Plaintiffs") incorporate by reference each and every allegation set forth in Paragraphs 1 through 63 as though fully set forth herein.

65.     Plaintiffs seek relief on the grounds that City Defendants, and each of them, took multiple adverse employment actions against President Nichelini, violating the First Amendment to the U.S. Constitution in that the multiple adverse employment actions were intended to, and actually did, and continues to, prevent the VPOA and its members, including President Nichelini, from engaging in protected speech and activities.

66.     President Nichelini's correspondence to members of the VPOA and the media about matters of public concern is speech protected by the First Amendment, and City Defendants, and each of them, knew the correspondence was protected, concerted speech.  City Defendants further knew that when he issued the correspondence, President Nichelini was speaking in his capacity as the VPOA President, not as a public employee, on matters of public concern.

67.     Despite City Defendants', and each of them, knowledge that President Nichelini's VPOA correspondence was concerted, protected speech, City Defendants nonetheless punished President Nichelini for sending the correspondence, indicating that the correspondence was a substantial and motivating factor for the adverse employment actions.

68.     City Defendants, and each of them, do not have, and have never had, adequate

1    justification for treating VPOA members, including President Nichelini, different from any citizen

2    speaking on any matter of public concern.

3         69.    City Defendants, and each of them, would not have taken the adverse employment

4    action absent the protected speech since the stated purpose of punishing President Nichelini was

5    because he sent the concerted, protected correspondence.

6         70.    As a direct and proximate consequence of City Defendants', and each of them,

7    multiple adverse employment actions against President Nichelini for engaging in protected

8    activities, the free speech of rights of Plaintiffs have already been chilled and are in fact chilled.

9         71.    As a direct and proximate result of Defendants', and each of them, illegal conduct,

10   Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical

11   damages, special damages, reputational harm, embarrassment, and humiliation, among other

12   things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

13   have been damaged in an amount according to proof but not less than $7,500,000.00.

14        72.    Plaintiffs have incurred, and will continue to incur, attorney fees and costs because

15   of this proceeding in amounts that cannot yet be determined precisely, which are recoverable

16   pursuant to 42 U.S.C. §§ 1983 and 1988(b).  Plaintiffs are entitled to recover reasonable fees and

17   costs in defending their constitutional rights.  Accordingly, Defendants are responsible for the fees

18   and costs Plaintiffs incur in conjunction with this litigation.

19                          **SECOND CAUSE OF ACTION**

20      **(Violation of U.S. Constitution – First Amendment Right to Free Association)**

21                          **(Against All Defendants)**

22        73.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs

23   1 through 72 as though fully set forth herein.

24        74.    Plaintiffs seek relief on the grounds that City Defendants, and each of them, took

25   multiple adverse employment actions against President Nichelini, violating the First Amendment

26   to the U.S. Constitution in that the multiple adverse employment actions were intended to, and

27   actually did, and continue to, prevent the VPOA and its members, including President Nichelini,

28   from engaging in protected associational activities.

75.     In addition to pretextually interfering with Plaintiffs' free speech rights, as noted above, City Defendants, and each of them, have conducted a series of baseless investigations and levied a series of baseless allegations against President Nichelini only *after* he became the VPOA President in early 2020.

76.     City Defendants, and each of them, knew President Nichelini and the VPOA have the right to engage in concerted activities on behalf of the VPOA and its members.  City Defendants further knew that repeated, pretextual harassment of the VPOA President would interfere with Plaintiffs' associational rights.

77.     Despite City Defendants', and each of them, knowledge that repeated, pretextual harassment of the VPOA President would interfere with Plaintiffs' associational rights, City Defendants nonetheless conducted a series of baseless investigations and levied a series of baseless allegations against President Nichelini only *after* he became the VPOA President, indicating that his protected associational activities were a substantial and motivating factor for the adverse employment actions.

78.     City Defendants, and each of them, do not have, and have never had, adequate justification for treating VPOA members, including President Nichelini, different from any citizen speaking on any matter of public concern, nor is it disputed that the VPOA's activities are of significant public concern.

79.     City Defendants, and each of them, would not have taken the adverse employment action absent the protected activities because the repeated, pretextual harassment of President Nichelini began only after he became VPOA President.

80.     City Defendants, and each of them, entirely deprived the VPOA of its most important official for the purpose of weakening the union and interfering with its protected, concerted activity by barring President Nichelini from the workplace.

81.     As a direct and proximate consequence of City Defendants', and each of them, multiple adverse employment actions against President Nichelini for engaging in protected, concerted activities, the associational rights of Plaintiffs have already been chilled and are in fact chilled.

82.     As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $7,500,000.00.

83.     Plaintiffs have incurred, and will continue to incur, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable pursuant to 42 U.S.C. §§ 1983 and 1988(b).  Plaintiffs are entitled to recover reasonable fees and costs in defending their constitutional rights.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

**THIRD CAUSE OF ACTION**

**(Violation of U.S. Constitution – Fourteenth Amendment Right to Substantive Due Process)**

**(Against All Defendants)**

84.     Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 83 as though fully set forth herein.

85.     City Defendants', and each of them, arbitrary enforcement of VPD policies, guidelines, and standards allows the VPD to discriminatorily punish VPOA members, including President Nichelini, who speak out about or expose issues directly adverse to their interests, such as corruption or incompetence.

86.     City Defendants, and each of them, have no compelling reason that would justify censorship of VPOA members' speech, or interference with VPOA members' speech, associational, and/or employment rights.

87.     City Defendants', and each of them, arbitrary enforcement of VPD policies, guidelines, and standards significantly burdens VPOA members' speech, associational, and employment rights.

88.     City Defendants', and each of them, arbitrary enforcement of VPD policies, guidelines, and standards therefore violate the Due Process Clause of the U.S. Constitution.

89.     As a direct and proximate result of Defendants', and each of them, illegal conduct,

1   Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical

2   damages, special damages, reputational harm, embarrassment, and humiliation, among other

3   things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

4   have been damaged in an amount according to proof but not less than $7,500,000.00.

5       90.     Plaintiffs have incurred, and will continue to incur, attorney fees and costs because

6   of this proceeding in amounts that cannot yet be determined precisely, which are recoverable

7   pursuant to 42 U.S.C. §§ 1983 and 1988(b).  Plaintiffs are entitled to recover reasonable fees and

8   costs in defending their constitutional rights.  Accordingly, Defendants are responsible for the fees

9   and costs Plaintiffs incur in conjunction with this litigation.

10   **<u>FOURTH CAUSE OF ACTION</u>**

11   **(Violation of U.S. Constitution – Fourteenth Amendment Right to Procedural Due Process)**

12   **(Against All Defendants)**

13       91.     Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs

14   1 through 90 as though fully set forth herein.

15       92.     City Defendants, and each of them, denied President Nichelini the opportunity to be

16   heard and to have a neutral decision maker decide any adverse employment consequences.  Instead,

17   City Defendants, and each of them, had a Termination Notice containing multiple glaring factual

18   inaccuracies and internal inconsistencies, served on President Nichelini.

19       93.     City Defendants, and each of them, further denied President Nichelini the

20   opportunity to be noticed, to be heard, and to have a decision on any adverse employment

21   consequences be made by a neutral decision maker by falsely accusing President Nichelini of

22   destroying windshield evidence and placing him on administrative leave despite City Defendants'

23   and each of them, knowledge that President Nichelini was not involved in the destruction of

24   windshield evidence.

25       94.     City Defendants', and each of them, denials of President Nichelini's right to an

26   opportunity to be heard and to have a decision on any adverse employment consequences to be

27   made by a neutral decision maker therefore violate the Due Process Clause of the U.S. Constitution.

28       95.     City Defendants, and each of them, defamed President Nichelini, impugning his

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

good name, reputation, honor, integrity, and other tangible interests, such as employment, including future employment, in the course of City Defendants', and each of them, improper efforts to terminate President Nichelini.

96.     City Defendants, and each of them, deprived President Nichelini of his right to privacy, good name, reputation, honor, integrity, and other tangible interests, such as employment, including future employment, as secured by independent and adequate bases of state law, without providing President Nichelini notice and an opportunity to be heard by a neutral decision maker.

97.     As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $7,500,000.00.

98.     Plaintiffs have incurred, and will continue to incur, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable pursuant to 42 U.S.C. §§ 1983 and 1988(b).  Plaintiffs are entitled to recover reasonable fees and costs in defending their constitutional rights.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

## FIFTH CAUSE OF ACTION

**(Violation of U.S. Constitution – Fourteenth Amendment Right to Equal Protection)**

**(Against All Defendants)**

99.     Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 98 as though fully set forth herein.

100.     City Defendants', and each of them, arbitrary enforcement of VPD policies, guidelines, and standards against VPOA members, denials of VPOA members' right to be noticed, heard, and to have a decision on any adverse employment consequences to be made by a neutral decision maker, and the infringements of the VPOA and VPOA members' free speech and associational rights, including President Nichelini, treats the VPOA and its members differently than other similarly situated individuals, based on their speech's content, the viewpoint of their

expression, their employment status, and their status as union members.

101. Because City Defendants', and each of them, actions impact the VPOA's free speech and associational rights, a fundamental right is implicated.

102. City Defendants, and each of them, have no rational, legitimate, or compelling reason that would justify their disparate treatment of the VPOA or its members, including President Nichelini.

103. City Defendants', and each of them, arbitrary enforcement of VPD policies, guidelines, and standards against VPOA members, denials of VPOA members' right to be noticed, heard, and to have a decision on any adverse employment consequences to be made by a neutral decision maker, and the infringements of the VPOA and VPOA members' free speech and associational rights, including President Nichelini, violates the Equal Protection Clause of the U.S. Constitution.

104. As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things. As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $7,500,000.00.

105. Plaintiffs have incurred, and will continue to incur, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable pursuant to 42 U.S.C. §§ 1983 and 1988(b). Plaintiffs are entitled to recover reasonable fees and costs in defending their constitutional rights. Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

**SIXTH CAUSE OF ACTION**

**(Violation of U.S. Constitution – Right to Freedom from Retaliation)**

**(Against All Defendants)**

106. Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 105 as though fully set forth herein.

107. The VPOA and its members, including President Nichelini, have rights under the

First and Fourteenth Amendments to the U.S. Constitution to be free from retaliation when exercising their rights to free speech, where, as here, those members speak as private citizens about matters of public concern.

108.    As explained above herein, the multiple adverse employment actions to which City Defendants, and each of them, subjected Plaintiffs were in direct response to the exercise of Plaintiffs' protected, concerted activities, including Plaintiffs' rights to freedom of speech and association.  Plaintiffs were thus engaged in a constitutionally protected activity.

109.    The adverse employment actions City Defendants, and each of them, took against President Nichelini would chill a person of ordinary firmness because City Defendants, and each of them, threatened to terminate President Nichelini for engaging in protected, concerted activity on behalf of the VPOA and its members.

110.    Plaintiffs' interest in effectively representing the VPOA and its members outweigh any interest City Defendants, and each of them, can have in promoting the efficiency of its public services by trampling on VPOA members' free speech and associational rights.

111.    City Defendants, and each of them, took adverse employment actions against the VPOA and its members, including President Nichelini, motivated solely by the VPOA's exercise of its constitutional rights.

112.    As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $7,500,000.00.

113.    Plaintiffs have incurred, and will continue to incur, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable pursuant to 42 U.S.C. §§ 1983 and 1988(b).  Plaintiffs are entitled to recover reasonable fees and costs in defending their constitutional rights.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

///

**SEVENTH CAUSE OF ACTION**

**(Violations of U.S. Constitution – Right to Privacy)**

**(Against All Defendants)**

114.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 113 as though fully set forth herein.

115.    The U.S. Constitution guarantees Plaintiffs' privacy, dignity, and security against certain arbitrary, invasive, or abusive acts by public employers, without regard to whether the government actor is investigating a crime or performing some other government function.

116.    Plaintiffs have a reasonable expectation of privacy in VPOA member personnel information and an interest legally protected therein by state and federal law.

117.    The disclosure of VPOA personnel or medical files constitutes a clearly unwarranted and serious invasion of privacy of VPOA members.

118.     No privilege protects City Defendants, and each of them, from the unwarranted disclosure of VPOA member personnel information to members of the public or the media.

119.    City Defendants, and each of them, violated the VPOA's and President Nichelini's privacy rights by releasing President Nichelini's confidential personnel information, including alleged disciplinary action taken against President Nichelini, to members of the public and the media.

120.    As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $7,500,000.00.

121.    President Nichelini has incurred, and will continue to incur, actual damages, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable, in addition to special damages.  President Nichelini is entitled to recover reasonable fees and costs in defending his rights.  Accordingly, Defendants are responsible for the fees and costs President Nichelini incurs in conjunction with this litigation.

## EIGHTH CAUSE OF ACTION

### (Violations of California Constitution and Statute – Right to Privacy)

### (Against All Defendants)

122. Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 121 as though fully set forth herein.

123. The California Constitution, Article I, Section I confers on Plaintiffs a general right to the reasonable expectation of privacy and an interest legally protected therein.

124. Peace Officers, including all VPOA members and President Nichelini, have additional privacy protections in California under Cal. Penal Code § 832.7 and Cal. Evid. Code § 1043 *et seq*., and an interest legally protected therein.

125. Employers of Peace Officers in California, including City Defendants, and each of them, may not release the personnel records of VPOA members, particularly as it regards discipline, to members of the general public or the media.

126. Plaintiffs have a reasonable expectation of privacy in confidential VPOA member personnel information and an interest legally protected therein. Furthermore, confidential VPOA member personnel information cannot be considered an appropriate matter of public concern.

127. The disclosure of VPOA personnel or medical files constitutes a clearly unwarranted and serious invasion of VPOA members' privacy. Moreover, such public disclosure of private facts regarding an employee's confidential personnel file would be highly offensive and objectionable to the reasonable person, and was in fact highly offensive and objectionable to Plaintiffs.

128. No privilege protects City Defendants, and each of them, from the unwarranted disclosure of VPOA member personnel information to members of the public or the media. Further, City Defendants, and each of them, knew that a reasonable person would consider the publicity highly offensive and objectionable or acted with reckless disregard for whether a reasonable person would consider the publicity highly offensive and objectionable.

129. City Defendants, and each of them, violated the VPOA's and President Nichelini's privacy rights by releasing President Nichelini's confidential personnel information, including disciplinary action taken against President Nichelini, to members of the public and the media.

130.     As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $7,500,000.00.

131.     President Nichelini has incurred, and will continue to incur, actual damages, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable, in addition to special damages.  President Nichelini is entitled to recover reasonable fees and costs in defending his rights.  Accordingly, Defendants are responsible for the fees and costs President Nichelini incurs in conjunction with this litigation.

## NINTH CAUSE OF ACTION

### (Defamation and Reputational Harm)

### (Against All Defendants)

132.     Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 131 as though fully set forth herein.

133.     City Defendants, and each of them, intentionally caused false and defamatory statements about President Nichelini to be leaked to the local press and published, resulting in foreseeable reputational harm to President Nichelini.

134.     The defamatory statements supplied by City Defendants, and each of them, to the local press adversely reflect on President Nichelini's ability to engage in his profession, causing irreparable harm to President Nichelini's trade, profession, and occupation, and future earning capacity.

135.     The defamatory statements supplied by City Defendants, and each of them, to the local press about President Nichelini were, and are false, and the falsity of the statements was known to City Defendants, and each of them, at the time the statements were publicized to the local press.

136.     The defamatory statements supplied by City Defendants, and each of them, to the

local press about President Nichelini were and are false, and the City Defendants, and each of them, at the time the statements were publicized to the local press, publicized those statements with reckless disregard for the truth or falsity of the statements.

137.    City Defendants, and each of them, knew the local press reasonably understood the defamatory statements to be about President Nichelini and that the local press understood the defamatory statements to mean that President Nichelini was forever unqualified to engage in his profession, causing irreparable harm to President Nichelini's trade, profession, and occupation, and future earning capacity.

138.    City Defendants, and each of them, knew, that because of the facts and circumstances known to the local press, that the statements tended to injure President Nichelini in his occupation, intentionally exposing President Nichelini to hatred, contempt, ridicule, and shame, and to discourage others from associating or dealing with President Nichelini.

139.    President Nichelini's reputation was invaded and damaged by the defamatory statements supplied by City Defendants, and each of them, to the local press as evidenced by subsequent, repeated public attacks on President Nichelini's character and reputation by members of the local citizenry and press, and others, through both traditional and social media channels.

140.    The defamatory statements published by Defendants, and each of them, showed President Nichelini in a false light.  Moreover, Defendants, and each of them, knew the defamatory statements would create a false impression about President Nichelini, and Defendants, and each of them, acted with reckless disregard as to whether the defamatory statements would create a false impression about President Nichelini.

141.    The defamatory statements published by Defendants, and each of them, about President Nichelini caused him to suffer harm to his trade, profession, and occupation, and President Nichelini has spent and lost money as a result of the defamatory statements.

142.    As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

1  have been damaged in an amount according to proof but not less than $7,500,000.00.

2      143.   President Nichelini has incurred, and will continue to incur, actual damages,

3  attorney fees and costs because of this proceeding in amounts that cannot yet be determined

4  precisely, which are recoverable, in addition to special damages.  President Nichelini is entitled to

5  recover reasonable fees and costs in defending his rights.  Accordingly, Defendants are responsible

6  for the fees and costs President Nichelini incurs in conjunction with this litigation.

7                          **TENTH CAUSE OF ACTION**

8      **(Interference with Union Activities – Cal. Gov. Code §§ 3500 et seq.)**

9                          **(Against All Defendants)**

10      144.   Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs

11  1 through 143 as though fully set forth herein.

12      145.   By engaging in the acts described herein, City Defendants, and each of them,

13  unlawfully interfered with VPOA members' rights guaranteed by Cal. Gov. Code §§ 3502, 3503,

14  3504, 3505, and 3506, including those of President Nichelini.

15      146.   By engaging in the acts described herein, City Defendants, and each of them,

16  unlawfully interfered with the administration of the VPOA.

17      147.   By engaging in the acts described herein, City Defendants, and each of them,

18  unlawfully interfered with the VPOA and its members, including President Nichelini, by

19  conditioning employment, threatening to discharge or fail to retain, and other threats of reprisal,

20  against the VPOA and its members, including President Nichelini, for their engagement in

21  concerted activities.

22      148.   As a direct and proximate result of Defendants', and each of them, illegal conduct,

23  Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical

24  damages, special damages, reputational harm, embarrassment, and humiliation, among other

25  things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

26  have been damaged in an amount according to proof but not less than $7,500,000.00.

27      149.   Because of the unlawful acts of City Defendants, and each of them, as described

28  herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable.  Plaintiffs are entitled to attorney fees, costs, and punitive damages pursuant to Cal. Gov. Code § 3309.5.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

**ELEVENTH CAUSE OF ACTION**

**(Discrimination – Cal. Gov. Code §§ 3500 et seq.)**

**(Against All Defendants)**

150.   Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 149 as though fully set forth herein.

151.   By engaging in the acts described herein, City Defendants, and each of them, unlawfully interfered with VPOA members' rights guaranteed by Cal. Gov. Code §§ 3502, 3503, 3504, 3505, and 3506, including those of President Nichelini.

152.   By engaging in the acts described herein, City Defendants, and each of them, unlawfully discriminated against members of the VPOA, including President Nichelini.

153.   By engaging in the acts described herein, City Defendants, and each of them, unlawfully discriminated against the VPOA and its members, including President Nichelini, by conditioning employment, threatening to discharge or fail to retain, and other threats of reprisal, against the VPOA and its members, including President Nichelini, for their engagement in concerted activities.

154.   As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $7,500,000.00.

155.   Because of the unlawful acts of City Defendants, and each of them, as described herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable.  Plaintiffs are entitled to attorney fees, costs, and punitive damages pursuant to Cal.

Gov. Code § 3309.5.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

### TWELFTH CAUSE OF ACTION

**(Retaliation – Cal. Gov. Code §§ 3300 et seq. & 3500 et seq.)**

**(Against All Defendants)**

156.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 155 as though fully set forth herein.

157.    By engaging in the acts described herein, City Defendants, and each of them, unlawfully interfered with VPOA members' rights guaranteed by Cal. Gov. Code §§ 3304, 3502, 3503, 3504, 3505, and 3506, including those of President Nichelini.

158.    By engaging in the acts described herein, City Defendants, and each of them, unlawfully retaliated against members of the VPOA, including President Nichelini.

159.    By engaging in the acts described herein, City Defendants, and each of them, unlawfully retaliated against the VPOA and its members, including President Nichelini, by conditioning employment, threatening to discharge or fail to retain, and other threats of reprisal, against the VPOA and its members, including President Nichelini, for their engagement in concerted activities.

160.    As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $7,500,000.00.

161.    Because of the unlawful acts of City Defendants, and each of them, as described herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable.  Plaintiffs are entitled to attorney fees, costs, and punitive damages pursuant to Cal. Gov. § Code 3309.5.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

## THIRTEENTH CAUSE OF ACTION

### (Interference with Political Affiliations – Cal. Labor Code §§ 1101, 1102)

### (Against All Defendants)

162.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 161 as though fully set forth herein.

163.    City Defendants, and each of them, through the making, adopting, or enforcement of rules, regulations, or policies, seek to discharge, discriminate and retaliate against, and take other adverse employment action against Plaintiffs in an effort to forbid or prevent VPOA members, including President Nichelini, from engaging in politics.

164.    City Defendants, and each of them, through the making, adopting, or enforcement of rules, regulations, or policies, seek to discharge, discriminate and retaliate against, and take other adverse employment action against Plaintiffs in an effort direct, control, or tend to direct or control, the political activities of the VPOA and the political affiliations of VPOA members, including President Nichelini.

165.    City Defendants, and each of them, coerced and influenced, or attempted to coerce and influence Plaintiffs, through or by means of threat of discharge or loss of employment, to adopt or follow, or refrain from adopting or following, the course or line of political action and political activities of the VPOA and VPOA members, including President Nichelini.

166.    As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $7,500,000.00.

167.    Because of the unlawful acts of City Defendants, and each of them, as described herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable.  Plaintiffs are entitled to damages for each violation pursuant to Cal. Labor Code § 1103.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction

with this litigation.

## **FOURTEENTH CAUSE OF ACTION**

### **(Negligence)**

### **(Against All Defendants)**

168.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 167 as though fully set forth herein.

169.    City Defendants, and each of them, employed all VPOA members, including President Nichelini, during all relevant times and events herein stated.

170.    City Defendants, and each of them, owed a duty of due care to Plaintiffs because a special employment relationship exists between City Defendants, and each of them, and Plaintiffs.

171.    City Defendants, and each of them, breached their duty of care by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs, and by treating Plaintiffs disparately and unfairly, as described herein.

172.    Plaintiffs have experienced emotional, psychological, financial, reputational, and professional harm as a result of City Defendants', and each of them, breaches of the duties they owed to Plaintiffs.

173.    City Defendants', and each of them, negligence was a substantial factor in causing Plaintiffs' harm, and City Defendants', and each of them, negligence was the legal and proximate cause of Plaintiffs' harm.

174.    As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $7,500,000.00

175.    Because of the negligent acts of City Defendants, and each of them, as described herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in

1  conjunction with this litigation.

2  **(Negligent Infliction of Emotional Distress)**

3  **(Against All Defendants)**

4  176.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs

5  1 through 175 as though fully set forth herein.

6  177.    As a direct and proximate result of City Defendants', and each of them, negligent

7  conduct, as described herein, President Nichelini has suffered, and will continue to suffer, serious

8  emotional distress, including suffering, anguish, horror, nervousness, grief, anxiety, worry, shock,

9  humiliation, and shame.

10  178.    Moreover, a reasonable person, normally constituted, would be unable to cope with

11  the mental stress engendered by the circumstances arising out of City Defendants', and each of

12  them, negligent conduct, as described herein.

13  179.    Further, City Defendants', and each of them, negligent conduct was a substantial

14  factor in causing President Nichelini's serious emotional distress, as described herein.

15  180.    As a direct and proximate result of Defendants', and each of them, illegal conduct,

16  Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical

17  damages, special damages, reputational harm, embarrassment, and humiliation, among other

18  things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

19  have been damaged in an amount according to proof but not less than $7,500,000.00.

20  181.    Because of the negligent acts of City Defendants, and each of them, as described

21  herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

22  because of this proceeding in amounts that cannot yet be determined precisely, which are

23  recoverable.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in

24  conjunction with this litigation.

25  **FIFTEENTH CAUSE OF ACTION**

26  **(Negligent Supervision)**

27  **(Against All Defendants *Except* Defendant WILLIAMS)**

28  182.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs

1 through 181 as though fully set forth herein.

183.    City Defendants, and each of them, employed all VPOA members, including President Nichelini, during all relevant times and events herein stated.

184.    City Defendants, and each of them, owed a duty of due care to Plaintiffs because a special employment relationship exists between City Defendants, and each of them, and Plaintiffs.

185.    City Defendants, and each of them, did, and do, employ Defendant WILLIAMS, and at all relevant times referenced herein, Defendant WILLIAMS was an employee of City Defendants, and each of them.

186.    Plaintiffs were harmed by Defendant WILLIAMS, and City Defendants, and each of them, are responsible for Plaintiffs' harm because City Defendants negligently supervised Defendant WILLIAMS.

187.    Defendant WILLIAMS is unfit to perform the duties of Police Chief for the City of Vallejo because Defendant WILLIAMS repeatedly violated the rights of Plaintiffs, putting them and other VPOA members at risk of having their constitutional and statutory rights further violated.

188.    City Defendants, and each of them, should have known and in fact did know that Defendant WILLIAMS was unfit to perform the duties of Police Chief because City Defendants, and each of them, were noticed that Defendant WILLIAMS repeatedly violated the rights of Plaintiffs and other VPOA members, and that Defendant WILLIAMS' unfitness put Plaintiffs and VPOA members at risk of having their constitutional and statutory rights further violated.

189.    Plaintiffs have experienced emotional, psychological, financial, reputational, and professional harm as a result of City Defendants', and each of them, breaches of the duties they owed to Plaintiffs.

190.    City Defendants', and each of them, negligence was a substantial factor in causing Plaintiffs' harm, and City Defendants', and each of them, negligence was the legal and proximate cause of Plaintiffs' harm.

191.    As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other

1    things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

2    have been damaged in an amount according to proof but not less than $7,500,000.00.

3         192.    Because of the negligent acts of City Defendants, and each of them, as described

4    herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

5    because of this proceeding in amounts that cannot yet be determined precisely, which are

6    recoverable.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in

7    conjunction with this litigation.

8                              **SIXTEENTH CAUSE OF ACTION**

9                          **(Intentional Infliction of Emotional Distress)**

10                            **(Against Defendants WILLIAMS)**

11        193.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs

12   1 through 192 as though fully set forth herein.

13        194.    At all relevant times stated herein, Defendant WILLIAMS was the direct

14   supervisors of Plaintiffs and every member of the VPOA and was thus in a position of authority

15   over Plaintiffs.

16        195.    Defendant WILLIAMS targeted Plaintiffs and other VPOA members for

17   harassment, intimidation, defamation, victimization, discrimination, and retaliation.  In doing so,

18   Defendant WILLIAMS' conduct was extreme and outrageous.

19        196.    In targeting Plaintiffs for harassment, intimidation, defamation, victimization,

20   discrimination, and retaliation, Defendant WILLIAMS intended to harass, intimidate, defame,

21   victimize, and discriminate and retaliate, and was substantially certain that such harassment,

22   intimidation, defamation, victimization, discrimination, and retaliation against Plaintiffs would

23   result from his conduct.

24        197.    In targeting Plaintiffs for harassment, intimidation, defamation, victimization,

25   discrimination, and retaliation, Defendant WILLIAMS intended to cause President Nichelini severe

26   emotional distress, and Defendant WILLIAMS acted with reckless disregard of the probability

27   President Nichelini would suffer severe emotional distress, knowing that President Nichelini would

28   bear the brunt of Defendant WILLIAMS' extreme and outrageous conduct towards Plaintiffs.

198.    As a direct and proximate result of Defendant WILLIAMS' extreme and outrageous conduct, President Nichelini did, and does, suffer severe emotional distress.

199.    As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $7,500,000.00.

200.    Because of the intentional acts of Defendant WILLIAMS, as described herein, President Nichelini has incurred, and will continue to incur, actual damages, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

## **PRAYER**

WHEREFORE, Plaintiffs pray judgment as follows:

1.    For a determination that City Defendants, and each of them, have denied the VPOA and its members the rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution;

2.    For temporary, preliminary, and permanent injunctions enjoining the City Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' constitutional rights;

3.    For a determination that City Defendants', and each of them, herein described conduct violated the First and Fourteenth Amendments;

4.    For a determination that City Defendants, and each of them, violated President Nichelini's right to privacy;

5.    For a determination that City Defendants, and each of them, defamed President Nichelini;

6.    For a determination that City Defendants, and each of them, violated Cal. Gov. Code §§ 3300 *et seq*., based on their conduct described herein;

7.      For a determination that City Defendants, and each of them, violated Cal. Gov. Code §§ 3500 *et seq*., based on their conduct described herein;

8.      For a determination that City Defendants, and each of them, violated Cal. Labor Code §§ 1100 *et seq*., based on their conduct described herein;

9.      For a determination that City Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

10.     For a determination that City Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

11.     For a determination that City Defendants, and each of them, were negligent in their treatment of Plaintiffs and that City Defendants, and each of them, negligently supervised Defendant WILLIAMS;

12.     For a determination that Defendant WILLIAMS' conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

13.     For temporary, preliminary, and permanent injunctions enjoining the City Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' statutory and other rights;

14.     For damages in an amount according to proof but not less than $7,500,000.00;

15.     For interest on damages as awarded as allowed by law;

16.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

17.     For costs incurred herein;

18.     For such other relief as the court deems just and proper;

19.     For a statement of decision.

**MASTAGNI HOLSTEDT, A.P.C**.

DATED: March 12, 2021                    By: */s/ Cheryl Carlson*
                                         CHERYL CARLSON
                                         Attorney for Plaintiffs

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**