1  DAVID P. MASTAGNI, ESQ. (SBN 57721)
   dmastagni@mastagni.com
2  GRANT A. WINTER (SBN 266329)
   gwinter@mastagni.com
3  **MASTAGNI HOLSTEDT A.P.C**
4  1912 I Street, Sacramento, California 95811
   Telephone: (916) 446-4692
5  Facsimile: (916) 447-4614

6
   Attorneys for Plaintiffs Vallejo Police Officers'
7  Association and Michael Nichelini

8              **IN THE UNITED STATES DISTRICT COURT**

9               **EASTERN DISTRICT OF CALIFORNIA**

10

11 THE VALLEJO POLICE OFFICERS'          Case No. 2:21-cv-00454-KJM-CKD
   ASSOCIATION, a labor union; MICHAEL
   NICHELINI, an individual,             **THIRD AMENDED COMPLAINT FOR**
12                      Plaintiffs,       **DAMAGES FOR:**
13         vs.
   CITY OF VALLEJO, a municipal corporation;  **1. FREE SPEECH VIOLATIONS**
   THE VALLEJO POLICE DEPARTMENT, a           **2. FREE ASSOCIATION VIOLATIONS**
14 municipal corporation; SHAWNY              **3. PROCEDURAL DUE PROCESS**
   WILLIAMS, individually; GREG NYHOFF,          **VIOLATIONS**
15 individually; ANNE CARDWELL,               **4. SUBSTANTIVE DUE PROCESS**
   individually; BOB SAMPAYAN, individually;     **VIOLATIONS**
16 HERMIE SUNGA, individually; CRISTINA       **5. EQUAL PROTECTION VIOLATIONS**
   ARRIOLA, individually; HAKEEM BROWN,        **6. STATE PRIVACY RIGHTS**
17 individually; PIPPIN DEW, individually;        **VIOLATIONS**
   MINA DIAZ, individually; ROBERT             **7. DEFAMATION**
18 McCONNELL, individually; KATY              **8. INTERFERENCE WITH UNION**
   MIESSNER, individually; ROZZANA               **ACTIVITIES**
19 VERDER-ALIGA, individually; and DOES 1    **9. DISCRIMINATION**
   through 100, inclusive,                     **10. RETALIATION**
20                      Defendants.         **11. INTERFERENCE WITH POLITICAL**
                                               **AFFILIATIONS**
21                                         **12. WHISTLEBLOWER RETALIATION**
                                           **13. NEGLIGENCE**
22                                         **14. NEGLIGENT INFLICTION OF**
                                               **EMOTIONAL DISTRESS**
23                                         **15. NEGLIGENT SUPERVISION**
                                           **16. INTENTIONAL INFLICTION OF**
24                                             **EMOTIONAL DISTRESS**
                                           **17. WRONGFUL DISCHARGE FOR**
25                                             **LAWFUL OFF-DUTY CONDUCT**
                                           **18. WRONGFUL TERMINATION**
26
                                           **JURY TRIAL DEMANDED**
27

28

---

Third Amended Complaint for Damages and          1          *Vallejo POA, et al. vs. City of Vallejo, et al.*
Demand for Jury Trial                                        Case No. 2:21-cv-00454-KJM-CKD

## JURISDICTION AND VENUE

1. This action arises out of Title 42 of the United States Code § 1983. *See* 28 U.S.C. § 1331. The unlawful acts and practices alleged herein occurred in the City of Vallejo, County of Solano, California, which is within this federal judicial district. Pendent jurisdiction is proper because all claims in this action derive from a common nucleus of operative facts. (*See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *see also* 28 U.S.C.A. § 1367.) Title 28 of the United States Code § 1391(b)(1) confers venue upon this Court.

## INTRODUCTION

2. This federal civil rights and state law action arises out of a campaign of harassment, intimidation, and retaliation against the Vallejo Police Officers' Association ("VPOA"), its members, and its current President, Vallejo Police Department ("VPD") Lieutenant Michael Nichelini, by the VPD and all defendants, including the City of Vallejo ("City"), culminating in multiple baseless internal affairs investigations into the VPOA's protected union-related activities and the City's continued threats and actions to terminate Lieutenant Nichelini's employment.

3. The City and the VPD have been embroiled in public controversy for over a decade regarding the conduct of the VPD and the City's ratification of that conduct. In early 2019, tensions in the City of Vallejo boiled over after the shooting death by the VPD of Willie McCoy, an African-American Vallejo resident, resulting in the eventual replacement of the Police Chief and election of Lieutenant Nichelini as the new VPOA President.

4. Shortly after becoming VPOA President, Mr. Nichelini became the subject of harassment and intimidation efforts by VPD Police Chief, Defendant Shawny Williams ("Williams"), ratified by the City Defendants, in order to alleviate mounting political pressure by deflecting that pressure toward the VPOA and its President. Between January 2020 and December 2020, President Nichelini was subjected to at least five instances of harassment, each intended to interfere with the VPOA's concerted rights. On July 15, 2020, Williams placed Mr. Nichelini on administrative leave and barred him from the workplace. Williams's actions effectively prevented Nichelini from meeting with and representing VPOA members.

5.     On December 15, 2020, Williams had VPD Deputy Chief Michael Kihmm notify President Nichelini that he was the subject of an internal affairs investigation regarding VPOA correspondence with a member of the news media.  President Nichelini was notified through a document titled "Witness Notice" regarding a "Notice of Administrative Investigation Interview, IA2020-20."

6.     The December 15, 2020 Notice warned President Nichelini that the investigation "could potentially lead to discipline."  The Notice further falsely accused President Nichelini of "sending an inappropriate and potentially threatening email to a member of the media."

7.     On December 18, 2020, President Nichelini was illegally subjected to an interrogation pursuant to the December 15, 2020 Notice, despite Williams, City, and the VPD being on notice that their conduct violated the constitutional rights of President Nichelini and the VPOA.

8.     Following the December 18, 2020 illegal interrogation of President Nichelini, City and the VPD issued a personnel report regarding IA2020-20 that was internally inconsistent, contained demonstrably false facts about President Nichelini, and featured findings entirely divorced from the evidence the report relied on to make the findings.

9.     On December 21, 2020, President Nichelini received Notice that the City of Vallejo intended to terminate his employment with the VPD.

10.    On March 31, 2021, President Nichelini received Notice that the City of Vallejo had terminated his employment with the VPD.

11.    The Notice, subsequent illegal interrogation, and proposal to terminate President Nichelini's employment is a continuation of a series of actions, undertaken by Defendant Williams and ratified by the City Defendants, and each of them, to harass, intimidate, coerce, threaten, and retaliate against the VPOA, its members, and VPOA President Nichelini in particular, for engaging in concerted activities protected by state and federal law.

12.    As a result of Defendants' illegal conduct, and each of them, the VPOA and President Nichelini now bring this present action for violations of state and federal law.

Third Amended Complaint for Damages and
Demand for Jury Trial                                            3                     *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                                       Case No. 2:21-cv-00454-KJM-CKD

## PARTIES

13.     Plaintiff, Michael Nichelini, sues in his individual capacity and in his official capacity as President of the VPOA.

14.     Plaintiff, the Vallejo Police Officers' Association, is the exclusively recognized collective bargaining agent for Vallejo Police Department Officers of all ranks, except the Chief of Police and the newly created position of Deputy Chief of Police.  Every member of the VPOA's Board of Directors is an employee of the City of Vallejo.  Plaintiff VPOA is an "employee organization" within the meaning of Cal. Gov. Code § 3501(c).  The VPOA's members are "peace officers", as defined by Cal. Penal Code § 830.1.  They are also employees of the City of Vallejo, which is a public entity within the meaning of Cal. Gov. Code § 3501(c).  The VPOA's primary purpose includes representing its members in their relations with the City of Vallejo and advocating for their interests.  Plaintiff VPOA brings this action on behalf of itself and its members.

15.     Defendant CITY OF VALLEJO is a municipal corporation duly organized and existing under the laws of the State of California.  Defendant VALLEJO POLICE DEPARTMENT all times mentioned herein was and is an organizational unit of the municipal entity City of Vallejo, operating under the supervision of the City Counsel, the City Manager, among others.

16.     Defendant SHAWNY WILLIAMS is, and at all times mentioned herein was, the Chief of Police for the City of Vallejo and is sued in his individual capacities.  He is a final policy maker for VPD because he makes official and independent determinations regarding discipline, training, supervision, and other personnel matters for the department.  As the Chief of Police he is was given "ultimate authority" for adoption the policies, rules, and guidelines of the department through law adopted by the City, including but not limited to Sections 103.1 and 103.3 of the Vallejo Police Department Policy Manual.

17.     Defendant GREG NYHOFF was, at all times mentioned herein, the City Manager for the City of Vallejo and is sued individually.  The City Manager is directly responsible for supervision of the VPD and the Chief of Police.  Under Sections 500 of the Vallejo City Charter and Section 2.10.020 of the Vallejo Municipal Code, he is the chief administrative officer of the city, has the power appoint and suspend all City employees as he deems necessary, and is in charge

Third Amended Complaint for Damages and
Demand for Jury Trial                                    4                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                              Case No. 2:21-cv-00454-KJM-CKD

of the supervision and administration of all departments, offices, and agencies of the City. He is responsible for direct supervision of the Chief of Police in accordance with Section 500 of the Vallejo City Charter. In all the matters described herein, the City Manager failed to exercise his responsibility to supervise the Chief of Police and intervene in the Chief's illegal actions. NYHOFF is a final policy maker for the City of Vallejo because he makes independent, final policy decisions on City affairs that are not subject to review by another party.

18.     Defendant ANNE CARDWELL was, at all times mentioned herein, the Assistant City Manager for the City of Vallejo and is sued individually. The Assistant City manager shares responsibility for supervision of the VPD and the Chief of Police with the City Manager. She is a final policy maker for the VPD because she makes official and independent determinations about discipline, training, supervision, and other personnel matters for the department when such authority is delegated to her by the City Manager.

19.     Defendant BOB SAMPAYAN was the Mayor for the City of Vallejo and is sued individually. The Mayor, in his role as a member and presiding officer of the City Council is responsible for supervision of the City Manager, the Assistant City Manager, the VPD, and the Chief of Police. He was a final policy maker for the City because the City Council is the governing body for the City of Vallejo under V.M.C § 307, among other laws and authority. The City Council failed to supervise the City Manager and were, therefore, complicit in the City Manager and Police Chief's illegal actions.

20.     Defendant HERMIE SUNGA was the Vice Mayor for the City of Vallejo and is a member of the City Council. He is sued both individually. As Vice Mayor and member of the City Council, Mr. SUNGA was directly responsible for supervision of the City Manager, the Assistant City Manager, the VPD, and the Chief of Police. He was a final policy maker for the City because the City Council is the governing body for the City of Vallejo under V.M.C § 307, among other laws and authority. The City Council failed to supervise the City Manager and were, therefore, complicit in the City Manager and Police Chief's illegal actions.

21.     Defendant ROBERT McCONNELL was a Councilmember and is now the Mayor of the City of Vallejo. He is sued individually. The mayor, in his role as a member and presiding

Third Amended Complaint for Damages and
Demand for Jury Trial                                   5                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                            Case No. 2:21-cv-00454-KJM-CKD

1   officer of the City Council, is responsible for supervision of the City Manager, the Assistant City
2   Manager, the VPD, and the Chief of Police.  He was a final policy maker for the City because the
3   City Council is the governing body for the City of Vallejo under V.M.C § 307, among other laws
4   and authority.  The City Council failed to supervise the City Manager and were, therefore, complicit
5   in the City Manager and Police Chief's illegal actions.

6       22.    Defendant ROZZANA VERDER-ALIGA was a Councilmember and is now the
7   Vice Mayor.  She is sued individually.  As Councilmember and Vice Mayor, Ms. VERDER-ALIGA
8   is directly responsible for supervision of the City Manager, the Assistant City Manager, the VPD,
9   and the Chief of Police.  She was a final policy maker for the City because the City Council is the
10  governing body for the City of Vallejo under V.M.C § 307, among other laws and authority.  The
11  City Council failed to supervise the City Manager and were, therefore, complicit in the City
12  Manager and Police Chief's illegal actions.

13      23.    Defendant CRISTINA ARRIOLA is a Councilmember for the City of Vallejo and
14  is sued individually.  She was a final policy maker for the City because the City Council is the
15  governing body for the City of Vallejo under V.M.C § 307, among other laws and authority.  The
16  City Council failed to supervise the City Manager and were, therefore, complicit in the City
17  Manager and Police Chief's illegal actions.

18      24.    Defendant HAKEEM BROWN was, at all times mentioned herein, a council
19  member for the City of Vallejo and is sued individually.  He was a final policy maker for the City
20  because the City Council is the governing body for the City of Vallejo under V.M.C § 307, among
21  other laws and authority.  The City Council failed to supervise the City Manager and were,
22  therefore, complicit in the City Manager and Police Chief's illegal actions.

23      25.    Defendant PIPPIN DEW was, at all times mentioned herein, a Councilmember for
24  the City of Vallejo and is sued individually.  She was a final policy maker for the City because the
25  City Council is the governing body for the City of Vallejo under V.M.C § 307, among other laws
26  and authority.  The City Council failed to supervise the City Manager and were, therefore, complicit
27  in the City Manager and Police Chief's illegal actions.

28

26.     Defendant MINA DIAZ is a Councilmember for the City of Vallejo and is sued individually.  She was a final policy maker for the City because the City Council is the governing body for the City of Vallejo under V.M.C § 307, among other laws and authority.  The City Council failed to supervise the City Manager and were, therefore, complicit in the City Manager and Police Chief's illegal actions.

27.     Defendant KATY MEISSNER was, at all times mentioned herein, a Councilmember for the City of Vallejo and is sued individually.  She was a final policy maker for the City because the City Council is the governing body for the City of Vallejo under V.M.C § 307, among other laws and authority.  The City Council failed to supervise the City Manager and were, therefore, complicit in the City Manager and Police Chief's illegal actions.

28.     Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sue said defendants by such fictitious names.  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

29.     Plaintiffs are informed and believe and therefore allege that each of the DOE defendants is legally responsible and liable for the incidents, injuries, and damages hereinafter set forth.  Each defendant proximately caused injuries and damages because of their actions, omissions, negligence, breach of duty, negligent supervision, management, or control and in violation of law and of public policy.  Each defendant is liable for his/her personal conduct, vicarious and/or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care, control or upon any other act or omission, including policy or custom.  Plaintiffs may seek leave to amend this complaint.

30.     In committing the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment, appointment and/or elected responsibilities for the City of Vallejo for the City of Vallejo.

31.     In committing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or color of law.

32.     Due to the acts/omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee, and/or in concert with each other Defendant herein named.

Third Amended Complaint for Damages and
Demand for Jury Trial                                    7                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                              Case No. 2:21-cv-00454-KJM-CKD

33.     Plaintiffs timely filed a Public Entity Tort Claim on January 14, 2021.  The City of Vallejo failed to respond to Plaintiffs' claims, which were rejected by operation of law on March 1, 2021.

**STATEMENT OF FACTS**

34.     Plaintiff, VPOA President Michael Nichelini, is a decorated veteran officer who served the Oakland Police Department for ten (10) years, followed by serving the VPD for fourteen (14) years.  Prior to becoming the President of the VPOA, Mr. Nichelini served the VPOA for eight years as Treasurer and Vice President.

35.     Defendants CITY OF VALLEJO, VALLEJO POLICE DEPARTMENT, GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA ("City Defendants"), and each of them, are and were, policymakers for the VPD and the City of Vallejo, City of Vallejo,  including the Vallejo Police Department in accordance with City Charter Section 307, among other law and authority.

36.     City Defendants have not maintained a healthy relationship between the VPD and the citizenry of Vallejo, and the City of Vallejo has been the subject of national controversy regarding the policies of City and the VPD.  The City and the VPD have been embroiled in public controversy for over a decade regarding the conduct of the VPD and the City's ratification of that conduct.

37.     In early 2019, tensions in the City of Vallejo boiled over after the shooting death by the VPD of Willie McCoy, resulting in demands from anti-police groups demanding meaningful responses from City Defendants regarding the conduct of VPD.  Citizens called for the resignation and replacement of multiple City Defendants, including Defendants SAMPAYAN and NYHOFF.

38.     In September 2019, Defendant WILLIAMS was appointed Chief of Police for the City of Vallejo.  Defendant WILLIAMS and the Deputy Police Chief(s) are the only VPD officers not represented by the VPOA.  WILLIAMS began his tenure as Chief of Police of the City of

Vallejo during a period of extreme tension between the anti-police groups, the City Defendants, and the VPOA.

39.    City Defendants, and each of them, both before and after the members of the City Council were changed following the 2020 election, as a matter of official policy for the City of Vallejo, promulgated, adopted, and ratified a plan to insulate Defendant WILLIAMS from legal and public scrutiny by endorsing Defendant WILLIAMS's actions as those of City Defendants, and each of them, including all actions related to personnel discipline, including discipline related to Mr. Nichelini and other members of the VPOA.

40.    City Defendants, and each of them, both before and after the members of the City Council were changed following the 2020 election, as a matter of official policy for the City of Vallejo, promulgated, adopted, and ratified a plan to "reform" the VPD by purposefully construing the City's mismanagement of public relations between the VPD and the citizens of the City of Vallejo as the fault of rank-and-file VPOA members, including Mr. Nichelini, to avoid the City Defendants' and each of them, culpability for said mismanagement.

41.    City Defendants, and each of them, both before and after the members of the City Council were changed following the 2020 election, as a matter of official policy for the City of Vallejo, promulgated, adopted, and ratified a plan to subject both former VPOA President Mat Mustard, and current VPOA President Michael Nichelini, to spurious allegations which would result in internal discipline, for the express purpose of dismantling the leadership of the VPOA so City Defendants, and each of them, could facilitate Defendant WILLIAMS's installation of his preferred candidates as members of the VPOA board, purposefully interfering with the Association's concerted activities and internal structure.

42.    City Defendants, and each of them, both before and after the members of the City Council were changed following the 2020 election, as a matter of official policy for the City of Vallejo, promulgated, adopted, and ratified a plan to terminate Mr. Nichelini for the express purpose of removing Mr. Nichelini from his role as President of the VPOA by construing members of the VPOA, and Mr. Nichelini in particular, as "racist".

43.     City Defendants, and each of them, both before and after the members of the City Council were changed following the 2020 election, as a matter of official policy for the City of Vallejo, promulgated, adopted, and ratified a plan to dismantle the leadership of the VPOA by construing any resistance to City Defendants' and each of them, and Defendant WILLIAMS's in particular, reform plans as "racist", despite the obvious reality that the VPOA's interests are necessarily often at odds with the interests of City Defendants' and each of them, as the employers of the members of the VPOA, including Mr. Nichelini.

44.     In December 2019, while Mr. Nichelini was Vice President of the VPOA, the VPOA demanded that City Defendants meet-and-confer regarding the VPD's body-worn camera policy. On January 1, 2020, Mr. Nichelini became the VPOA President, inheriting both the meet-and-confer process between the City and the VPOA, and the anti-police groups, the VPD, and City Defendants.

45.     On March 4, 2020, President Nichelini, in his capacity as VPOA President, sent an email regarding matters of public concern to other VPOA members.  The email discussed matters of important VPOA business, including dealings with the public and the ongoing political relations between VPOA members and the City Defendants.  The email contained a small image of one of VPD's earliest historic badges.  The badge once belonged to local hero George N. Frazier, veteran of the Spanish-American War and World War I, who served as both a VPD officer and a detective for the Solano County Sheriff's Office in the early 1900s.

46.     President Nichelini sent the email from his personal computer, using an application he wanted to encourage VPOA members to use for communication amongst themselves.  Since the image of the badge was tiny, President Nichelini did not notice Mr. Frazier's badge bore a small engraving of a Gammadion cross, a Native American symbol for peace and prosperity.  When Mr. Frazier, a Native American, placed the engraving on the badge, circa 1907, the image bore no negative connotations.

47.     On March 8, and March 17, 2020, President Nichelini discussed the badge engraving with VPD officials.  During the March 17, 2020 discussion, Defendant WILLIAMS stated he understood and accepted President Nichelini's reasonable explanation for the badge image and

Third Amended Complaint for Damages and
Demand for Jury Trial                              10                *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                     Case No. 2:21-cv-00454-KJM-CKD

1   agreed it was not a political statement and did not reference any particular group.  The public was

2   unaware of the badge image and had no interest in the image until months later when the matter

3   was publicized by the Chief of Police and the City Manager in an October 5 press release, which

4   falsely accused President Nichelini of a hate crime.

5          48.     On May 28, 2020, President Nichelini filed a grievance on behalf of the VPOA

6   against VPD regarding City Defendants' efforts to civilianize Public Information Officer ("PIO")

7   and officer recruitment positions.  On June 24, President Nichelini filed a complaint with the

8   California Public Employment Relations Board ("PERB") on behalf of the VPOA against VPD

9   regarding City Defendants' efforts to civilianize the PIO and officer recruitment positions.

10          49.     On July 1, 2020, Defendant WILLIAMS denied the VPOA's Step 1 Grievance

11   concerning the City's unilateral civilianizing and contracting out of Association work.  Defendant

12   WILLIAMS failed to respond to the substantive contractual and statutory allegations set forth in

13   the VPOA's Step 1 Grievance.

14          50.     On July 15, 2020, Defendant WILLIAMS placed President Nichelini on

15   administrative leave for allegedly destroying a windshield, a piece of evidence in a high-profile

16   officer-involved shooting that took place on June 2, 2020.  Although Defendant WILLIAMS knew

17   President Nichelini had no knowledge of, or involvement in the destruction of the windshield,

18   WILLIAMS nonetheless falsely accused President Nichelini of destroying evidence.  This action

19   barred Nichelini from the workplace purposefully and effectively preventing him from contacting

20   and representing VPOA members.

21          51.     Defendant WILLIAMS retaliated against President Nichelini by falsely accusing

22   him of destroying the windshield after President Nichelini filed grievances on behalf of the VPOA.

23   Among other things, the timing of the false accusations against President Nichelini by WILLIAMS

24   evinces retaliatory intent.  City Defendants subsequently leaked the false information regarding

25   President Nichelini's alleged involvement in the destruction of the windshield to the press.  City

26   Defendants also made public the March 4, 2020 badge email in order to further damage President

27   Nichelini's reputation.

28

52. On July 31, 2020, President Nichelini filed another complaint with PERB on behalf of the VPOA against VPD, regarding City Defendants' efforts to interfere with the VPOA's protected, concerted activities by retaliating against President Nichelini. City Defendants were thus notified of their constitutionally and legally infirm conduct no later than July 31, 2020.

53. Nevertheless, on August 6, 2020, President Nichelini was subjected to an interview by the California Department of Justice ("DOJ") in a criminal probe into the destruction of the windshield. At the time the DOJ interviewed President Nichelini regarding the windshield, Defendant WILLIAMS knew that President Nichelini had no knowledge of, and was not involved in the destruction of evidence. President Nichelini, based on information and belief, understands the evidence has completely vindicated him from all destruction allegations, but the Chief of Police concealed that information from the public and the City.

54. On August 21, 2020, City Defendants responded to the VPOA's grievance regarding PIO and recruiting positions, denying the grievance at Step Two. On August 25, 2020, President Nichelini filed a Step 3 grievance on behalf of the VPOA against City Defendants regarding the PIO and recruiting positions.

55. On August 28, 2020, President Nichelini received another Notice of Interview regarding a City Council meeting recording that occurred almost a year earlier. The Notice also alleged dishonesty in a previous internal affairs investigation. The VPD also gave President Nichelini another Notice of Interview on August 28, 2020, regarding disparaging comments he allegedly made to a human resources officer about Defendant WILLIAMS. Among other things, the timing of the disciplinary notices sent to President Nichelini evinces a pattern and practice of retaliatory intent.

56. On September 3, 2020, despite City Defendants being on notice that their conduct towards President Nichelini and the VPOA was constitutionally and legally infirm, City Defendants nonetheless subjected President Nichelini to an administrative interrogation regarding the windshield evidence, the badge image, and a press release President Nichelini sent in the performance of his duties for the VPD.

57.     On September 4, 2020, President Nichelini filed a grievance on behalf of himself and the VPOA against City Defendants for discrimination against VPOA members for their engaging in protected, concerted activities.

58.     On information and belief, Defendants Anne Cardwell, Heather Ruiz, Greg Nyoff, Randy Risner, and Shawny Williams regularly met as part of a group referred to as the "Legal and Policy Team #2".

59.     The defendants that were part of the group established a formal policy, plan, or practice for the City of Vallejo to issue a declaration of a public safety emergency in order to implement the VPOA "reforms" that were intended to circumvent the speech rights, associational rights, due process rights, privacy rights, and many other rights under both State and Federal law that were held by Nichelini, the VPOA, and its members (including Nichelini and others).

60.     On September 21, Anne Cardwell, Heather Ruiz, Greg Nyhoff, Randy Risner, Joe Allio, Shawny Willaims, and Dania Torres Wong participated in an email discussion in which they discussed the following:

- The Legal and Policy Team #2's goal for the city council for closed session: Convey to Council the need for declaration of emergency that is currently being drafted. Provide more context as to the level of disturbing culture and corruption that is being discovered in PD via overview of different cases and claims.

- Discussed that the city has tried to work with the VPOA but the VPOA is talking out of both sides of their mouth- stating that the VPOA has resisted every single reform effort that Chief Williams has proposed, down to even changing single words, while not dropping a single grievance or unfair labor practice complaint.

- Discussed the need to obtain a list of all the information requests from the POA, a list of all the grievances filed by the POA specifically related to reform, a list of all writs filed by the POA, and a list of all unfair labor practice complaints filed by the POA.

- The team also discussed talking points for Chief Williams ahead of the council meeting, namely that he should tell the council that despite the POA's effort to

thwart reform, bully, and intimidate him because he is doing his job, if he is interviewed by the FBI, DOJ, District Attorney, or State AG's office he will tell the truth about what he has been experiencing as the chief of the department. The team emphasizes that Shawny needs to act very indignant and offended when saying this to the council in order to garner support.

- The team discussed that the culture dictated by the POA leadership has led to millions of dollars of claims against the city and that the culture of the POA running the city with a us vs. them mentality has put the city at risk.

- Discussed working 70-80 hours a week to combat what is referred to as systematic exploitation by the POA against the city.

- Stated the need to be united and take pointed and definitive action to reform the police department, and as everyone on the team holds leadership positions in the City government, they unanimously believe that they cannot stand by and let the disturbing culture of the VPOA continue, otherwise they are also complicit. They state the need to take bold action to achieve true reform.

- Discussed how Chief Williams was hired to do a specific job and is being blocked at every turn by the VPOA, and that declaring a public emergency is crucial to implementing the reform that is desired, as well as getting the united support of the council.

- It was emphasized that this reform will not be easy and having a united front is crucial to the reform effort.

- Included within these communications were the following specific statements, among others:

  - "Goal for Closed Session: Convey to Council the need for declaration of emergency that is currently being drafted. Provide more context as to the level of disturbing culture and corruption that is being discovered in the PD via overview of different cases and claims."

Third Amended Complaint for Damages and
Demand for Jury Trial
14
*Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

- "City has tried to work with VPOA but VPOA is talking out of both sides of their mouth- they have resisted every single reform effort the chief has proposed down to changing one word…although they have not dropped a single grievance ot ULP (Shawny)"

- IF interviewed by FBI, DOJ or State AG's office, I will tell the truth. I will not lie or cover up what I have and am experiencing as the Chief of this Department. The Culture dictated by the POA leadership has led to millions of dollars or claims and this culture of us vs. them and we run this City is what has put this City at risk."

- "Shawny needs to be very indignant and offended when he talks about this- he will absolutely not tolerate it and knows he has the support of Greag and leadership team, but also needs support of Council. "

- "But this Police issue on top of that is over the top and this team has had to work 70-80 hours as week just trying to manage a systematic explotation by the POA against the City's residents."

- "That said- there are just a few things that are very positive- Police reform is out in front and in the public. The public deserves transparency and this administration can not wait until we tell the full story of the level of corruption that has and continues to occur"

- "I hired Chief Williams to come here and do a job, and he is being blocked at every turn by the VPOA. We need to signal the time has come for change, it is time to stop talking and time to start taking action- to demonstrate through action that this behavior will no longer be tolerated, we owe it to our community and also to the hard-working, dedicated employees at the PD that are actually committed to providing public safety to Vallejo. A critical step toward accomplishing this will be declaring a public emergency, but to be truly effective- the Council needs to be able to stand behind this action. Without a united front on this, we will fail (Greg)- Put on a slide"

Third Amended Complaint for Damages and
Demand for Jury Trial                    15          *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

- "Then go around the room and confirm their support. Emphasize the need to be ALL fully behind this. It will not be easy and we have to be a united front on this."

61.  Each of the forgoing statements made in the September 21 email constitute a formal policy, plan, or practice, and/or an act made by a final policymaker on behalf of the City of Vallejo.

62.  On September 22, 2021, Anne Cardwell, Randy Risner, Veronica Nebb, Greg Nyoff, Mark Love, Christopher Boucher, Bob Deis, Shawny Williams, and Dania Wong emailed ahead of the closed city council session meeting to make sure they were all on the same page regarding the talking points they would be presenting ahead of the meeting.

63.  On September 23, 2020, Anne Cardwell, Greg Nyhoff, Joe Allio, Heather Ruiz, Mark Love, Randy Risner, Bob Deis, and Dania Wong circulated a meeting agenda for the Legal and Policy Team #2. The meeting agenda contained:

- A plan to discuss the status of the different investigations being carried out against Nichelini (swastika badge, press release, HR complaint and potential dishonesty when filming Melissa Nold), as well as a discussion on the overall strategy to discipline Nichelini.

    Discussion relating to the upcoming emergency declaration and how it would be used to assist the reform efforts against the VPOA, and what the next steps were, as well as the status of the pending VPOA grievance.

64.  Each of the foregoing statements constitute a formal policy, plan, or practice, and/or an act made by a final policymaker on behalf of the City of Vallejo.

65.  In addition to disciplining President Nichelini under the pretext of a 364-day old incident, Defendants WILLIAMS also informed local civil rights attorney Melissa Nold, a citizen who complained to City Defendants about President Nichelini, that President Nichelini had been disciplined.  WILLIAMS's disclosure of President Nichelini's personnel information was unlawful and unethical.

66.  On October 1, 2020, Anne Cardwell, Randy Risner, Joe Allio, Fred Deltorchio, and Greg Nyhoff spoke via email concerning statements Nichelini allegedly made about the chief's

1  incompetence in an interview compelled by the city, stating that they did not know what to say and

2  how those statements convinced them that they were on the right path with their next steps, stating

3  "My goodness, I don't even know what to say…except now I'm even more convinced that we are

4  on the right path with our next steps."

5     67.    Each of the foregoing statements made constitute a formal policy, plan, or practice,

6  and/or an act made by a final policymaker on behalf of the City of Vallejo.

7     68.    In a public forum meeting of city council in early October, Shawny Williams and

8  Greg Nyhoff publicly acknowledged the existence of the so-called swastika investigation for the

9  first time.

10     69.    On October 2, 2020, the Mercury News reported on this acknowledgement.

11     70.    On October 5, 2020, Shawny Williams issued another public statement

12  acknowledging the existence of the investigation in response to the Mercury News article.

13     71.    The following week, the story about the so-called swastika investigation was

14  widespread public knowledge and had ran in most major newspapers in Northern California.

15     72.    On October 6, 2020 the Vallejo City Council voted unanimously to declare a public

16  safety emergency, giving unprecedented powers to the City Defendants, specifically

17  DEFENDANT NYHOFF, for the purpose of allowing him to implement and carry out policy

18  reforms on the VPOA and carry out the formal policy of disciplining President Nichelini, and for

19  the purpose of circumventing VPOA member's procedural and substantive rights including but not

20  limited to rights under the MMBA, POBR, as well as "meet and confer" obligations the City had.

21     73.    The ostensible basis and plan/policy for implementation of the Public Safety

22  Emergency was set forth and presented to the City Council and the public, by City Defendants, as

23  a means to control and reform the VPOA and its members and deprive them of their rights as alleged

24  herein.

25     74.    The formal policy, plan, and/or practice to reform the VPOA was turned into a

26  formal written policy, in not less than two policy statements/documents, including but not limited

27  to the "Resolution Adopting the Vallejo Police Reform Initiative" and the "City of Vallejo

28

Proclamation of a Local Public Safety Emergency By the Vallejo City Council". Both documents are published on the City of Vallejo's website.

75.     On October 7, 2020, the Legal and Policy Team #2 met. The agenda contained the following items to discuss:

- A clear acknowledgement that Nichelini was ok as it related to the City investigation into the destruction of a windshield in evidence.
- The writeup relating to the swastika investigation is done and on the Chief's desk, it was sustained, and the next step is the Notice of Intent to Discipline.
- Nichelini's discipline relating to the filming of Melissa Nold.
- An apology was given to Nold, and the press release relating to it was with the chief.

76.     Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

77.     On October 13, 2020, Anne Cardwell, Heather Ruiz, Randy Risner, Dania Wong, Christopher Boucher, Mark Love, and Greg Nyhoff spoke via email about the agenda for the Legal and Policy Team #2 meeting scheduled for the following morning. The agenda contained:

- A point to discuss the status of the current Nichelini investigations (swastika badge, press release HR complaint, filming Melissa Nold)

78.     Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

79.     On October 15, 2020, the VPOA filed a Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief challenging the City of Vallejo's October 6, 2020 declaration of emergency because the City used the declaration to interfere with VPOA members' rights.  A First Amended Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief was filed on or about December 15, 2021.

80.     On October 21, the VPOA filed suit against the City of Vallejo regarding the City's October 6, 2020 declaration of emergency because the City used the declaration to interfere with VPOA members' rights.

81.     On October 27, 2020, Anne Cardwell, Shawny Williams, Mark Love, Heather Ruiz,

Third Amended Complaint for Damages and
Demand for Jury Trial                        18                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

Dania Wong, Christopher Boucher, Randy Risner, and Grey Nyhoff had an email conversation about the agenda for the October 28 meeting of the Legal and Policy Team #2. The agenda contained:

- An update on the investigations against Nichelini. The agenda states that the swastika investigation appears to be the strongest one to stand on for discipline and that they are working on getting a draft notice of discipline ready, and would like to issue it around the same time as the discipline relating to the windshield investigation.

- Finalizing the reports in the other Nichelini investigations.

- Revisiting the idea of Chief Williams being the Skelly officer for Nichelini.

- "Swastika one appears to be the strongest one to stand on. Need to get this Notice of discipline drafted- Chris & Rnady working on Nichelini."

82.    Each of the foregoing statements constitutes a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

83.    On October 28, 2020, Anne Cardwell, Randy Risner, Veronica Nebb, Greg Nyoff, Mark Love, Christopher Boucher, Bob Deis, Shawny Williams, and Dania Wong emailed regarding planning a press statement regarding how the City had responded to public complaints, such as the Melissa Nold complaint.

84.    Each of the foregoing statements constitutes a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

85.    On November 3, 2020, the Legal and Policy Team #2 met. The agenda contained the following:

- Status of current Nichelini investigations (swastika badge, press release, HR complaint, and dishonesty), discussing the HR one first, the exoneration memos, and then the NOID on the swastika and the dishonesty.

86.    Each of the foregoing statements constitutes a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

87.     On November 9, 2020, the Legal and Policy Team #2 met. The Agenda contained the following items:

- Update on the current status of the windshield investigation- the admin investigation is now done, and the notice of discipline for Nichelini is being worked on. The plan is to issue the notice to Nichelini the morning of 12/1.

- Status of the other Nichelini investigations, the HR complaint NOID should be issued on 11/30, the exoneration notice for the press release should be issued 12/1, and the tentative date for the swastika and dishonesty issue date is 12/7.

88.     Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

89.     On November 13, 2020 and November 14, 2020, Randy Risner, Bob Deis, Heather Ruiz, Dania Torres Wong, Christopher Boucher, Mark Love, Anne Cardwell, Shawny Williams, and Greg Nyhoff participated in an email conversation regarding the status of their reform efforts against the VPOA, and their disciplinary efforts against Nichelini. They discussed the following:

- When considering disciplinary solutions for Nichelini, the group discussed demoting him two ranks to police officer and having him sign a non-disparagement clause to prevent him from talking badly about the city. The stated issue with this solution was that it would allow Nichelini to remain president of the POA. The group stated that while they can try and tie Nichelini up as much as possible, there is still risk involved regardless if they settle with him or terminate him.

- Another disciplinary solution discussed by the group was negotiating a demotion with Nichelini and having him resign from being president of the POA. A benefit mentioned to this solution is that it would allow the group to supervise Nichelini after the discipline.

- The group discussed possibly sending Nichelini to the County as a means of alternate employment but worried about the potential for Nichelini to still bad mouth the city, and discussed their belief that Nichelini had anger management issues that would surface once he realized this was a fall from grace.

- The group agreed that they were making process and that they were looking forward to

Third Amended Complaint for Damages and
Demand for Jury Trial                                20              *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                    Case No. 2:21-cv-00454-KJM-CKD

1    the day they could declare victory in their reform efforts.

2    • The group discussed strategy for presenting the disciplinary plan to the council, and
3       contemplated waiting for Nichelini's labor attorney to make a move first, and how the
4       City Council is going to want to know to their fingerprints will be on the decision to
5       discipline Nichelini.

6    • It is said that it would be great if Chief Williams fingerprints are clean regarding the
7       decision and that he would be able to say there were multiple people in on the decision.

8    • The group talked about the overall experience they are having with the reform process
9       and how they don't think Nichelini and his labor attorney respected them and attempted
10      to intimidate them until the City ramped up its investigations and declared a public
11      emergency. They also discuss Nichelini being sexist and not respecting a city consultant
12      until she took him to school. The group states that they think Nichelini will be less
13      frivolous in the future.

14   • "Bad mouthing the City and getting paid to do it is different than getting fired and clearly
15      showing "sour grapes"

16   • "Chief, in lieu of getting fired, a negotiated demotion and resigning from the POA
17      Presidency? That should be compared to what we're considering on the other racist
18      behavior. It would allow us to continue and supervise him"

19   • "I would like to consider a reduction of two (2) ranks to police officer"

20   • "That would keep his retirement, highest paid year as a Lt. But he'd still be POA
21      President"

22   • "One partial solution is a non disparagement clause I. the agreement. This will stop him
23      from talking badly about the city. On the rest, we can tie him up as much as possible
24      but, at the end of the day, there will still be some risk, that is the case whether we settle
25      up with him or terminate him."

26   • "Another concern without answers from me. If Nechelini goes to the County for two
27      years, what if he acts up? That is a long time. He does or says something negative about
28      the City? He does or says something stupid toward the County, as still a city employee?

We kinda talked about this second scenario yesterday."

- "I truly believe we're making progress. I look forward to the day we can declare victory!"

- "IF we ever have anything to take into the Council in closed session, and I think we should wait until we got the most movement from Rains, the Council will want to know who has the authority to do what and how will they exercise that authority?"

- "Even if Greg has the full authority to agree to most or all of the deal, I get the need to run it past Council given the upcoming change in Council makeup. However, the Council will want to know if their fingerprints will be on it or not. Will there be any open session decision? Will there be anything that will be subject to a PRA? And if Greg has the authority, they'll be less concerned but then Greg needs to make sure they won't get amnesia."

- "I think the Rains firm and Nichelini didn't respect the City, us really. So, they were throwing a nunch of things our way, e.g. UP's, etc, thinking they were going to intimidate the city. And then the City started ramping up the I/As, the Chief started making changes and showed resolv, the City declared an emergency, etc. It started sending two a message. And then they met Dania, my sister. I guarantee you, their sexism got in the way until Dani slowly had to take Rains to school. And now they respect the City, they are fearful of losing a union President under their watch, etc

90.    Each of the foregoing statements made in the November 13 and November 14 emails constitutes a formal policy, plan, or practice, and/or an act made by a final policymaker on behalf of the City of Vallejo.

91.    On December 2, 2020, the Legal and Policy Tema #2 met. The agenda contained the following:

- The development policy was sent to the VPOA the previous night. Mike's response to the policy was problematic. Agenda states that is the VPOA is still resistant to the policy after meeting, then the city may need to use the public safety emergency as justification for imposing the policy.

- An update on the current status of the investigations against Nichelini (swastika badge, press release, HR complaint, and dishonesty)
- Notes that they need to finish the drafts of the NOIDS and need to be ready to proceed and move forward.
- "Deployment Policy (Mark/Randy)"
- "Deployment policy sent to VPOA last night. We have a month to have them review. Mike's response problematic so Mark to set up a meeting with VPOA. Shawny to decide weather him or Deputy Chief in the meeting. If they are resistant, we may need to implement as part of the emergency.

92.     Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

93.     On December 7, 2020, President Nichelini, in his capacity as VPOA President, responded to an email from a local newspaper reporter, Otis Taylor, who was relocating to Georgia, and expressed concerns about the fairness of the individual's reporting on VPOA members and the VPD.

94.     On December 9, 2020, Anne Cardwell, Dania Wong, Shawny Williams, Veronica Nebb, Christopher Boucher, Heather Ruiz, Mark Love, and Greg Nyhoff had an email conversation about the agenda for the upcoming Legal and Policy Team #2 meeting. The agenda contained the following:

- A meeting item referencing the email from the VPOA to Otis Taylor. Notes that the legal team is meeting regarding this to see how it impacts other cases and what the beast way to leverage it would be. Anne Cardwell will follow up and have Naveed check the IP address the email was sent from.
- "Email from VPOA to Otis Taylor"
- "Legal Team Meeting to see how this impacts other cases and how to best leverage this. The Chief and Heather going to forward the emails from Nicelini. Anne to follow up and have Naveed check IP addresses."

95.     Despite acknowledging that the communications were protected VPOA communications, City Defendants nonetheless sent President Nichelini a December 15, 2020 Notice of Administrative Investigation into the December 7, 2020 protected, concerted email. Among other things, the timing of the notice evinces retaliatory intent.

96.     On December 15, 2020, Anne Cardwell, Randy Risner, Christopher Boucher, Dania Wong, Bob Deis, Mark Love, Shawny Williams, and Greg Nyhoff had an email conversation about the agendas for the upcoming Legan and Policy Team #2 meetings on December 15 and December 16. The agendas contained the following:

- A recap of the Tuesday meeting regarding the Otis Taylor email interview and the timing of the NOIDS.
- Status of the current Nichelini investigations (Otis Taylor email, swastika badge, press release, HR complain, and dishonesty)
- Notice of intent to terminate Nichelini is set to be sent Friday at 11:30, they are waiting for confirmation of his attendance.
- Christpher is working on the NOIDS for Nichelini relating to the HR investigation, swastika and dishonesty.
- Meeting with the VPOA regarding the deployment policy and a few other policies that are a part of the state emergency declaration.

97.     Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

98.     On December 16, Plaintiffs' attorneys mailed City Defendants a Cease-and-Desist Letter. On December 18, 2020, City Defendants, despite unequivocally being noticed their conduct towards President Nichelini and the VPOA was constitutionally and legally infirm, nonetheless subjected President Nichelini to an interrogation regarding the December 7, 2020 email.

99.     Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

100.    On December 17, 2020, City Defendants and the VPOA met and conferred regarding City's proposed "Patrol Staffing Deployment & Mandatory Overtime List."  However,

Third Amended Complaint for Damages and
Demand for Jury Trial                                24                *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

1  City Defendants did not meet and confer in good faith, in violation of the Meyers-Milias-Brown

2  Act ("MMBA") (Cal Gov. Code § 3500, *et seq.*)  Moreover, at that meeting, Defendant WILLIAMS

3  illegally threatened retaliation against VPOA members for union activities, unlawfully interfering

4  with the VPOA and its members' protected, concerted conduct.

5        101.   Each of the foregoing statements constitute a formal policy, plan, and/or an act made

6  by a final policymaker on behalf of the City of Vallejo.

7        102.   On December 21, 2020, City Defendants sent a Notice of Intent to Terminate

8  President Nichelini from his employment at VPD, despite City Defendants unequivocally being on

9  notice that their conduct towards President Nichelini and the VPOA was constitutionally and

10  legally infirm.   The Termination Notice contained multiple glaring factual inaccuracies and

11  misrepresentations, in addition to outrageous accusations against President Nichelini that

12  inappropriately seek to damage his reputation and impugn his character.

13        103.   That same day, Veronica Nebb, Randy Risner, Meera Bhatt, Heather Ruiz, Anne

14  Cardwell, Shawny Williams, and Greg Nyhoff, communicated the following message to the mayor

15  and city council:

16        • At 11:00 this morning, the Vallejo Police Department (VPD) issued a Notice of

17          Intended Discipline/Termination to Lt. Mike Nichelini. The notice advised Lt.

18          Nichelini of an intent to terminate him based on four independent internal affairs

19          investigations. We expect that if Lt. Nichelini advises the media of this action you

20          may receive questions or requests to comment from the media. Under the Peace

21          Officers Procedural Bill of Rights (POBR), and California Penal Code Section

22          837.7, peace officer personnel matters are confidential. Revealing information

23          related to this ongoing personal matter may subject the city to a claim for a violation

24          of the right to privacy and defamation, among other claims. Therefore if you do

25          receive questions or requests to comment about this matter, we strongly recommend

26          you respond by advising the requestor that with regard to peace officer personnel

27          matters, the Peace Officer Procedural Bill of Rights (POBAR) contained in

28          Government Code Section 3300 et Seq. and Penal Code Section 832.7 provide

specific statutory protections of the privacy and due process rights of all peace officers which prohibit the city council from providing comment.

104.    Each of the foregoing statements constitute a formal policy, practice, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

105.    In January 2021, City Defendants, and each of them, notified President Nichelini that City Defendants, and each of them, had illegally placed President Nichelini on administrative leave as a result of President Nichelini's protected conduct, which President Nichelini undertook on behalf of all VPOA members, including himself, despite City Defendants, and each of them, being on notice that such adverse employment actions violated state and federal law.

106.    Moreover, as noted above, City Defendants, and each of them, improperly barred President Nichelini from the workplace to prevent him from contacting and representing VPOA members and the protected, concerted activities of VPOA members, in violation of multiple state laws and the First Amendment.  As further evidence of animus toward and intent to interfere with Nichelini's Association-related duties and responsibilities, on January 5, 2021, Defendant WILLIAMS ordered a VPOA member facing misconduct allegations to seek the Police Chief's approval prior to contacting non-attorney VPOA officials.

107.    Further, in January 2021, City Defendants, and each of them, mailed notices to VPOA members that contained illegal gag orders, or "confidentiality directives", to VPOA members under administrative investigation by City Defendants.  According to California law, such directives violate the MMBA and interfere with VPOA members' protected rights, constituting interference by City Defendants, and each of them, with the VPOA's union activities.

108.    On January 6, 2021, the Legal and Policy Team #2 met. Their agenda for that meeting contained:

- A point to discuss the ongoing discipline against Nichelini.

- A point regarding Nichelini's upcoming Skelly hearing and how the suspension of 40 hours has been sustained, now there needs to be a decision about whether he will actually be suspended or if it will just be sustained for the record.

Third Amended Complaint for Damages and
Demand for Jury Trial                                    26                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                              Case No. 2:21-cv-00454-KJM-CKD

109.     Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

110.     On January 12, 2021, Anne Cardwell, Heather Ruiz, Mark Love, Shawny Williams, Bob Deis, Randy Risner, Dania Wong, Christopher Boucher, Veronica Nebb, and Gerg Nyhoff had an email conversation regarding the agenda for the January 13 Legal and Policy Team #2 meeting. The agenda contained a discussion point relating to talking about the Nichelini discipline process.

111.     Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

112.     On January 20, 2021 the Legal and Policy Team #2 met. One of the items on their agenda was to discuss the status of the Nichelini discipline.

113.     Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

114.     On January 27, 2021, the Legal and Policy Team #2 met. On there agenda for the meeting was a point to discuss Nichelini's discipline and scheduling his upcoming Skelly hearing.

115.     Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

116.     On February 2, 2021, Anne Cardwell, Shawny Williams, Bob Deis, Christopher Boucher, Veronica Nebb, Randy Risner, Mark Love, Heather Ruiz, and Greg Nyoff had an email conversation about the agenda for the Legal and Policy Team #2 meeting that was scheduled for the following morning. One of the items on the agenda was to discuss the discipline against Nichelini.

117.     Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

118.     On February 9, 2021 Anne Cardwell, heather Ruiz, Mark Love, Bob Deis, Shawny Williams, Christopher Boucher, Randy Risner, Veronica Nebb, Dania Wong, and Greg Nyhoff emailed regarding the agenda for the Legal and Policy Team #2 meeting agenda that day. The agenda contained:

- Nichelini Discipline.

Third Amended Complaint for Damages and
Demand for Jury Trial                    27          *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

1
- An update that Nichelini's Skelly hearing was set for March 17.

2    119.    Each of the foregoing statements constitute a formal policy, plan, and/or an act made

3    by a final policymaker on behalf of the City of Vallejo.

4    120.    Also on February 9, 2021, Heather Ruiz, Veronica Nebb, Shawny Williams, Anne

5    Cardwell, Randy Risner and Greg Nyoff has an email discussion regarding talking points created

6    for the council. One of the talking points was proposed termination for Nichelini.

7    121.    Each of the foregoing statements constitute a formal policy, plan, and/or an act made

8    by a final policymaker on behalf of the City of Vallejo.

9    122.    On February 16, 2021, Anne Cardwell, Bob Deis, Christopher Boucher, Heather

10   Ruiz, Mark Love, Shawny Williams, Veronica Nebb, Dania Wong, Randy Risner, and Greg Nyoff

11   emailed regarding the agenda for the Legal and Policy Team #2 meeting the next morning. The

12   agenda contained a talking point about Nichelini's discipline and the date of his Skelly hearing.

13   123.    Each of the foregoing statements constitute a formal policy, plan, and/or an act

14   made by a final policymaker on behalf of the City of Vallejo.

15   124.    On February 22, 2021, Mark Love, Heather Ruiz, Anne Cardwell, and Greg Nyhoff

16   had an email discussion regarding the slides the planned to present to the closed session of city

17   council the next day.

18   125.    The slides explain how the City of Vallejo used the declaration of a public safety

19   emergency to circumvent VPOA leadership within the ranks, circumvent the MMBA, POBR, as

20   well as prevent grievances, ULP claims from being files, and provide the City a away around "meet

21   and confer" requirements. The slides specifically reference:

22
- Labor issues with the VPOA and how they relate to the public emergency.

23
- Overall status of the reform effort with the VPOA.

24
- Further explanations of how the public safety emergency helps reform the VPOA

25
- Lays out the ways the VPOA is obstructing changes Chief Williams is trying to

26      implement through Unfair Labor Practice Claims, Pending Grievances, and Meet

27      and Confer requests.

28

- Explains how declaring a public safety emergency allowed the city to appoint vital positions in an accelerated manner, particularly the deputy chief position

- How the declaration allows them to circumvent meeting and conferring with the POA prior to implementing new department policies.

- How the MMBA and POBR would be applicable or circumvented by the Public Safety Emergency.

- A conclusion that it would be beneficial to continue the public safety emergency to assist with the anticipated difficulties relating to upcoming policy changes in March.

- "Attached is my proposed closed session presentation on labor. I think this captured our discission from earlier today Anne and Greg. Please feel free to give me any feedback or comments so we can finalize for tomorrow."

- "Labor issues VPOA and as they relate to Public Safety Emergency"

- "VPOA (cont) – What is going on with reform?"

- "Pending disciplinary cases: Nichelini- proposed termination for violation of policies, lying, and racial remarks."

- "VPOA (cont) – Why a Public Safety Emergency? Need for leadership outside the Union"

- "VPOA trying to obstruct changes Chief Willimas is trying ti implement. How are they obstructing? Pending Unfair Labor Practices, Pending Grievances, Policy Meet and Confers"

- ?VPOA (cont)- Why a Public Safety emergency? Proclamation allowed City to: appoint to vital positions in an accelerated fashion- particularly Deputy Chief positions."

- Implement urgently needed policies ahead of meeting and conferring with VPOA- City will still meet and confer with POA, but will not be required to do so prior to implementation of policies , for example, county wide OIS protocol.

126.    Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

127.    On February 23, 2021, Anne Cardwell , Greg Nyoff, Bob Deis, Veronica Nebb, Randy Risner, Shawny Williams, Christopher Boucher, Heather Ruiz, Mark Love, and Dania Torres communicated via email about the agenda for the Legal and Policy Team #2 meeting the next morning. The agenda had an item for discussing Nichelini's discipline.

128.    Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

129.    On March 2, 2021, Anne Cardwell, Bob Deis, Randy Risner, Veronica Nebb, Greg Nyoff, Shawny Williams, Mark Love, Christopher Boucher, and Dania Torres Wong discussed the agenda for the Legal and Policy team meeting the next day. The agenda contained an item relating to disciplining Nichelini.

130.    Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

131.    On March 4, 2021, Randy Risner, Christopher Boucher, Shawny Williams, Anne Cardwell, and Greg Nyoff had an email conversation regarding the decision to terminate Nichelini being upheld by Micki Callahan. The City used 4 bases to recommend the firing of Nichelini.

132.    Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

133.    On March 10, 2021, Anne Cardwell, Bob Deis, Shawny Williams, Christopher Boucher, Veronica Nebb, Randy Risner, Greg Nyoff, Mark Love, and Dania Torres Wong discussed the agenda for the upcoming Legal and Policy Team #2 meeting. The agenda contained:

- An item relating to Nichelini discipline stating that the Skelly decision was upheld on the swastika and the Otis email but the other two were not upheld despite wiggle room for context.
- A discussion point relating to the VPOA and the VPOA meetings.

134.    Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

135.    On March 16, 2021, Anne Cardwell, Randy Risner, Veronica Nebb, Greg Nyoff, Mark Love, Christopher Boucher, Bob Deis, Shawny Williams, and Dania Wong circulated via

email the agenda for the Legal and Policy Team #2 meeting the next morning. One of the agenda items was Nichelini discipline.

136.   Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

137.   On March 24, 2021, Anne Cardwell, Randy Risner, Veronica Nebb, Greg Nyoff, Mark Love, Christopher Boucher, Bob Deis, Shawny Williams, and Dania Wong circulated via email the agenda for the Legal and Policy Team #2 meeting that day. Nichelini discipline was a meeting talking point.

138.   Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

139.   On March 30, 2021, Anne Cardwell, Randy Risner, Veronica Nebb, Greg Nyoff, Mark Love, Christopher Boucher, Bob Deis, Shawny Williams, and Dania Wong met for the Legal and Policy Team #2 meeting. On the agenda for the meeting was:

- A discussion about Nichelini and Robinson's respective notices of discipline.
- Courier could not deliver Nichelini's notice to him.

140.   Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

141.   On March 31, 2021, Defendants, and each of them, through Defendant WILLIAMS, delivered a Notice of 40 hours of unpaid suspension for the September 24, 2019 City Council meeting incident.  Further, the March 31, 2021 Notice informed President Nichelini that he has been terminated from employment at the VPD for engaging in concerted activities.  The termination of President Nichelini's employment, less than three weeks after President Nichelini filed a federal civil rights complaint against Defendants, is flagrantly retaliatory and intended to silence and disable the VPOA.  Accordingly, the termination of President Nichelini's employment violates both the Federal and State Constitutions and California State law.

142.   Defendants', and each of them, March 31, 2021 Notice of dismissal/termination outrageously and unacceptably attempts to paint President Nichelini as a "racist cop", an entirely unfounded and spurious allegation that effectively forever destroys President Nichelini's career,

professional reputation, and personal life, all in an effort by Defendants, and each of them, to avoid the political ramifications of their own mismanagement of VPD public relations and citizen dissatisfaction with the VPD and the City's job performance.

143.    As a result of being labeled and published as a "racist cop", Nichelini suffered harm to reputation which will prevent future employment opportunity, both inside and outside the field of law enforcement. This includes but is not limited to lateral department transfers, promotions both inside and outside the VPD, and career changes. Additionally, Nichelini had other business interests in agriculture and sales, which were economically harmed as a result of boycotts staged by anti-police groups and their followers which caused reductions in business revenue and harm to business reputation and goodwill. Many news stories carried the allegations against Nichelini and were therefore publicized widely to the public, Nichelini's potential employers, as well as customers and potential customers of Nichelini's business interests.

144.    On April 7, 2021, Anne Cardwell, Randy Risner, Veronica Nebb, Greg Nyoff, Mark Love, Christopher Boucher, Bob Deis, Shawny Williams, and Dania Wong met for the Legal and Policy Team #2 meeting. On the agenda for the meeting was a discussion about the Nichelini discipline and what the next steps would be.

145.    Each of the foregoing statements constitutes a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

146.    On April 21, 2021, Anne Cardwell, Randy Risner, Veronica Nebb, Greg Nyoff, Mark Love, Christopher Boucher, Bob Deis, Shawny Williams, and Dania Wong met for the Legal and Policy Team #2 meeting. On the agenda for the meeting were the following items:

- Pros and cons of posting proposals regarding the police reforms, and staying limited to just the VPOA.
- Value in communicating with entire membership of VPOA.
- Nichelini update regarding his appeal to arbitration.
- "Any requested editions to the agenda?"
- "Posting proposals regarding police reforms (Mark)"

- "Discussed pros and cons of doing this. Talked about focusing on policies and reform efforts, to keep limited to just VPOA."

- "CAB could also trigger the request and include in ground rules- also needs to be a discussion on this with Council."

- "There is also value in terms of communicating with the entire membership, not just the VPOA board."

147. Each of the foregoing statements constitutes a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

148. On April 27, 2021, Anne Cardwell, Randy Risner, Veronica Nebb, Greg Nyoff, Mark Love, Christopher Boucher, Bob Deis, Shawny Williams, and Dania Wong emailed regarding the agenda for the upcoming Legal and Policy Team #2 meeting. On the agenda for the meeting was a point to discuss Nichelini discipline.

149. Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

150. On September 21, 2021, Anne Cardwell, Randy Risner, Veronica Nebb, Greg Nyoff, Mark Love, Christopher Boucher, Bob Deis, Shawny Williams, and Dania Wong emailed each other regarding rewriting city policy so that the officers of Vallejo would no longer have qualified immunity, in a continued effort to continue the reform towards the VPOA and VPD.

151. Each of the foregoing statements constitute a formal policy, plan, and/or an act made by a final policymaker on behalf of the City of Vallejo.

152. In June of 2022, the Assistant city manager inquired into getting more training for Chief Williams, specifically saying:

- Also need some resources for leadership development/competency training for the Chief. Building his skills and tool set in leadership from the bottom up instead of top down and building trust with his team amidst change.

153. Each and every attempt by City Defendants, and each of them, to discipline President Nichelini, including the termination of President Nichelini, followed President Nichelini's filing of an action against City Defendants on behalf of the VPOA, indicating each and

1   every attempt by City Defendants to discipline President Nichelini was retaliatory and pretextual,

2   and further establishes a pattern of similar and related harassing, retaliatory, and discriminatory

3   conduct by City Defendants.

4     154. City Defendants, and each of them, including GREG NYHOFF, ANNE

5   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

6   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

7   MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

8   willingly participated in the official policy and plan of the City of Vallejo to promulgate, adopt,

9   and ratify the Public Emergency Declaration to target, harass, intimidate, bully, defame, retaliate

10  against, wrongfully terminate, and interfere with the free speech and associational rights of the

11  VPOA, VPOA members, and President Nichelini, including by interfering with President

12  Nichelini's political activities, including whistleblowing activities, protected, concerted union

13  activities, and Defendants, and each of them, formed the aforementioned policies and plans with

14  the explicit public purpose of directing and controlling the VPOA, its members, and its concerted

15  activities, and Defendants, and each of them, formed the aforementioned policies and plans with

16  the purpose to suppress the free speech rights and retaliating against the VPOA, and its members,

17  including President Nichelini, for exercising their right to free speech with the express aim of

18  preventing criticism of City Defendants, and each of them.

19    155. The Chief of Police was given "ultimate authority" for adoption the policies, rules,

20  and guidelines of the Vallejo Police Department through law adopted by the City, including but not

21  limited to Sections 103.3 and 103.1 of the Vallejo Police Department Policy Manual.

22    156. City Defendants, and each of them, including GREG NYHOFF, ANNE

23  CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

24  ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

25  MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly,

26  intentionally, purposefully, and willingly approved, endorsed, adopted, and ratified the

27  employment practices and decisions of Defendant WILLIAMS, including the express, personal,

28  individual approval, endorsement, and adoption by City Defendants, and each of them, of

Defendant WILLIAMS's release of private and confidential personnel information, including disciplinary information, about VPOA members, including the release of private and confidential personnel information about President Nichelini.

157. City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of the aforementioned official polices, and promulgated, adopted, and ratified the aforementioned plans to dismantle the VPOA leadership and scapegoat its members as responsible for the leadership inadequacies of City Defendants, and each of them, including by promulgating, adopting, and ratifying a plan to purposefully insulate Defendant WILLIAMS from his misconduct toward VPOA members by associating themselves and each other with said misconduct, and adopting and ratifying said misconduct, including, but not limited to, targeting, harassing, intimidating, bullying, defaming, retaliating against, wrongfully terminating, and interfering with the free speech and associational rights of VPOA members, including President Nichelini, including by interfering with the political activities of VPOA members and the union as a whole.

158. City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of the aforementioned official polices, and promulgated, adopted, and ratified the aforementioned plans with an aim to "reform" the VPD, despite unequivocally knowing that such reformation efforts violated state and federal law and the rights of VPOA members, including the rights of President Nichelini.

159. City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

1   MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

2   willingly participated in the formation of the aforementioned official polices, and promulgated,

3   adopted, and ratified the aforementioned plans with an aim to "reform" the VPD, including direct

4   and personal involvement about employment decisions related to VPOA members, in particular

5   President Nichelini, among others, and including direct and personal involvement in ratifying and

6   adopting the employment decisions made by Defendant WILLIAMS as the employment decisions

7   of all City Defendants, and each of them.

8         160.   City Defendants, and each of them, including GREG NYHOFF, ANNE

9   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

10   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

11   MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

12   willingly participated in the formation of official polices, and promulgated, adopted, and ratified

13   plans with an aim to "reform" the VPD, including by altering, changing, and removing, or

14   attempting to alter, change, or remove, procedural requirements, including requirements of, the

15   California Penal Code, the California Evidence Code, the State Constitution and Federal

16   Constitution, the MMBA, the Peace Officer's Bill of Rights, and the Ralph C. Dills Act, and

17   qualified immunity, among others,  that were in place to protect the rights of VPOA members,

18   including President Nichelini.

19         161.   City Defendants, and each of them, including GREG NYHOFF, ANNE

20   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

21   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

22   MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

23   willingly participated in the formation of the aforementioned official polices, and promulgated,

24   adopted, and ratified the aforementioned plans with oppression, fraud, and/or malice by knowingly,

25   intentionally, purposefully, and willingly violating state and federal law and the rights of VPOA

26   members, including under the State Constitution and Federal Constitution, including those of

27   President Nichelini.

28

162.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of the aforementioned official polices, and promulgated, adopted, and ratified the aforementioned plans with oppression, fraud, and/or malice by knowingly, intentionally, purposefully, and willingly violating state and federal law and the rights of VPOA members, including under the State Constitution and Federal Constitution, including those of President Nichelini, however, City Defendants, and each of them, did not engage in the aforementioned conduct against other unions that are similarly situated to the VPOA, or the members of other unions that are similarly situated to the members of the VPOA.

163.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of the aforementioned official polices, and promulgated, adopted, and ratified the aforementioned plans with oppression, fraud, and/or malice by knowingly, intentionally, purposefully, and willingly violating state and federal law and the rights of VPOA members, including under the State Constitution and Federal Constitution, including those of President Nichelini, with no legitimate governmental interest in doing so save the bare desire to harm a politically unpopular group, in order to insulate City Defendants, and each of them, from the consequences of their own leadership deficiencies.

164.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly continue to purposefully and intentionally interfere with the rights conferred by the Federal and State Constitutions, and the rights conferred by Federal and State law, of the VPOA,

1   VPOA members, and President Nichelini despite the VPOA's, VPOA members', and President

2   Nichelini's filing of multiple unfair labor practices complaints, multiple internal complaints, and

3   the instant complaint, and have specifically promulgated, adopted, and ratified, as a matter of

4   official policy, a plan to continue to purposefully and intentionally interfere with the

5   aforementioned rights of the VPOA, VPOA members, and President Nichelini.

6        165.    The VPOA has organizational/associational standing to assert any applicable causes

7   of action on behalf of its members as well as the right to assert any applicable causes of action on

8   behalf of itself regarding violations of the rights of the VPOA and/or VPOA members.  Moreover,

9   President Nichelini has the obligation, as President of the VPOA, to protect and defend the rights

10  of the VPOA and its members by proactively prosecuting claims on its behalf.  Additionally, each

11  and every cause of action asserted herein relates directly to conduct or activities engaged in by the

12  VPOA, VPOA members, or President Nichelini that is germane to the purpose of the VPOA.

13  Further, the claims brough on behalf of the VPOA do not require individual participation by VPOA

14  members because the benefits of preventing employer capture of the union inures to all union

15  members.

16       166.    The Public Safety Emergency Declaration was presented to the City Council with

17  the purpose of allowing the City Manager and the Chief of Police to the rights of the VPOA and its

18  members. As President of the VPOA, Nichelini has a duty to protect and defend the interests of its

19  members. As the actions of the council affect the members of the VPOA in a manner that impacts

20  their rights, the members of the association have suffered injury.

21       167.    The VPOA seeks to protect the interests of officer safety, as well as the interest of

22  having full understanding of policies that affected it's members. before they are implemented. Both

23  of these interests are germane to the purpose of the VPOA, as it exists to advocate for the rights of

24  its members. The Public Safety Emergency Declaration, as well as other policies and decisions

25  stated above, impacted the VPOA's ability to properly advocate with regard to policies that affect

26  its members.

27       168.    Neither the claims brought by the VPOA or the relief requested require any of its

28  members to participate. The VPOA has been injured by the imposition of the Public Safety

1    Emergency Declaration, an event orchestrated with the explicit purpose of allowing the City

2    Manager and Chief of Police to initiate the reforms more easily, as they wanted.

3                              **FIRST CAUSE OF ACTION**

4    **(Violations of U.S. and Cal. Constitutions – First Amendment Right to Free Speech)**

5                        **(Plaintiffs Against All Defendants)**

6         169.    The VPOA and President Nichelini ("Plaintiffs") incorporate by reference each and

7    every allegation set forth in Paragraphs 1 through 168 as though fully set forth herein.

8         170.    In retaliation for Plaintiff's exercise of constitutional rights, and to deprive

9    Plaintiff's of their constitutional rights, VPOA Members, including Nichelini, were subjected to

10   adverse employment actions as set forth above, including but not limited to July 2020

11   administrative leave against Nichelini, the March 2021 unpaid suspension, and the March 2021

12   termination, among others.

13        171.    Plaintiffs seek relief on the grounds that City Defendants, and each of them, took

14   multiple adverse employment actions against President Nichelini, violating the First Amendment

15   to the U.S. Constitution in that the multiple adverse employment actions were intended to, and

16   actually did, and continues to, prevent the VPOA and its members, including President Nichelini,

17   from engaging in protected speech and activities, including by terminating President Nichelini

18   pretextually.

19        172.    President Nichelini's correspondence to members of the VPOA and the media about

20   matters of public concern is speech protected by the First Amendment, and City Defendants, and

21   each of them, knew the correspondence was protected, concerted speech.  City Defendants further

22   knew that when he issued the correspondence, President Nichelini was speaking in his capacity as

23   the VPOA President, not as a public employee, on matters of public concern.

24        173.    Despite City Defendants' and each of them, knowledge that President Nichelini's

25   VPOA correspondence was concerted, protected speech, City Defendants nonetheless punished

26   President Nichelini for sending the correspondence, indicating that the correspondence was a

27   substantial and motivating factor for the adverse employment actions.

28

174.   Additionally, President Nichelini, and the VPOA, and its members, filed protected grievances with the City which were speech protected by the First Amendment, and City Defendants, and each of them, knew the grievances were protected, concerted speech.

175.   Despite City Defendants' and each of them, knowledge that the grievances were concerted, protected speech, City Defendants nonetheless punished President Nichelini for sending the correspondence, indicating that the correspondence was a substantial and motivating factor for the adverse employment actions.

176.   City Defendants, and each of them, do not have, and have never had, adequate justification for treating VPOA members, including President Nichelini, differently from any citizen speaking on any matter of public concern.

177.   City Defendants, and each of them, would not have taken the adverse employment action absent the protected speech since the stated purpose of punishing the VPOA, its members, and President Nichelini was because of the concerted, protected correspondence, and other protected speech.

178.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, intentionally, purposefully, and willingly punished President Nichelini pretextually for sending the concerted, protected correspondence for the express purpose of silencing the VPOA and President Nichelini's speech on behalf of the VPOA, and thus acted with oppression, fraud, and/or malice. The many punishments carried out by Defendants against Nichelini, the VPOA, and its members are set forth above, and include but are not limited to publication of the so-called "swastika email."

179.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of official polices, and promulgated, adopted, and ratified

Third Amended Complaint for Damages and
Demand for Jury Trial                                              40                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

plans to interfere with the free speech rights of the VPOA, VPOA members, and President Nichelini, including by interfering with President Nichelini's political activities, including whistleblowing activities, and Defendants, and each of them, formed the aforementioned policies and plans with the purposeful and intentional aim of suppressing the free speech rights and retaliating against the VPOA, and its members, including President Nichelini, for exercising their right to free speech with the express aim of preventing criticism of City Defendants, and each of them.

180.   As a direct and proximate consequence of City Defendants' multiple adverse employment actions against President Nichelini for engaging in protected activities, the free speech of rights of Plaintiffs have already been chilled and are in fact chilled, and the actions taken by City Defendants, and each of them, would chill the speech of a person of ordinary firmness.

181.   As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $10,500,000.00.

182.   Plaintiffs have incurred, and will continue to incur, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable pursuant to 42 U.S.C. §§ 1983 and 1988(b).  Plaintiffs are entitled to recover reasonable fees and costs in defending their constitutional rights.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

## **PRAYER**

WHEREFORE, Plaintiff Vallejo Police Officer's Association prays for judgment as follows:

1.   For a determination that Defendants, and each of them, have denied the VPOA and its members the rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution;

2.   For temporary, preliminary, and permanent injunctions enjoining the City Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' constitutional rights;

3.     For a determination that Defendants', and each of them, herein described conduct violated the First and Fourteenth Amendments;

4.     For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

5.     For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

6.     For temporary, preliminary, and permanent injunctions enjoining the Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' statutory and other rights;

7.     For damages in an amount according to proof but not less than $10,500,000.00;

8.     For special damages according to proof;

9.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

10.    For interest on damages as awarded as allowed by law;

11.    For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

12.    For costs incurred herein;

13.    For such other relief as the court deems just and proper;

14.    For a statement of decision.

## **PRAYER**

WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

1.   For a determination that Defendants', and each of them, herein described conduct violated the First and Fourteenth Amendments;

2.    For a determination that Defendants, and each of them, violated President Nichelini's right to privacy;

3.    For a determination that Defendants, and each of them, defamed President Nichelini;

4.    For a determination that Defendants, and each of them, were negligent in their

Third Amended Complaint for Damages and
Demand for Jury Trial                    42                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

5.      For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

6.      For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

7.      For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

8.      For damages in an amount according to proof but not less than $10,500,000.00;

9.      For special damages according to proof;

10.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

11.     For interest on damages as awarded as allowed by law;

12.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

13.     For costs incurred herein;

14.     For such other relief as the court deems just and proper;

15.     For a statement of decision.

## SECOND CAUSE OF ACTION

**(Violations of U.S. and Cal. Constitutions – First Amendment Right to Free Association)**

**(Plaintiffs Against All Defendants)**

183.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 182 as though fully set forth herein.

184.    In retaliation for Plaintiff's exercise of constitutional rights, and to deprive Plaintiff's of their constitutional rights, VPOA Members, including Nichelini, were subjected to adverse employment actions as set forth above, including but not limited to July 2020

1    administrative leave against Nichelini, the March 2021 unpaid suspension, and the March 2021

2    termination, among others.

3         185.    Plaintiffs seek relief on the grounds that City Defendants, and each of them, took

4    multiple adverse employment actions against President Nichelini, including terminating President

5    Nichelini from his Civil Service employment, violating the First Amendment to the U.S.

6    Constitution in that the multiple adverse employment actions were intended to, and actually did,

7    and continue to, prevent the VPOA and its members, including President Nichelini, from engaging

8    in protected associational activities.

9         186.    In addition to pretextually interfering with Plaintiffs' free speech rights, as noted

10   above, City Defendants, and each of them, have conducted a series of baseless investigations and

11   levied a series of baseless allegations against President Nichelini, including terminating President

12   Nichelini, only *after* he became the VPOA President in early 2020.

13        187.    City Defendants, and each of them, knew President Nichelini and the VPOA have

14   the right to engage in concerted activities on behalf of the VPOA and its members.  City Defendants

15   further knew that repeated, pretextual harassment of the VPOA President would interfere with

16   Plaintiffs' associational rights.

17        188.    City Defendants, and each of them, including GREG NYHOFF, ANNE

18   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

19   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

20   MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly,

21   intentionally, purposefully, and willingly punished President Nichelini pretextually for sending the

22   concerted, protected correspondence for the express purpose of interfering with the associational

23   rights of the VPOA, and those of President Nichelini on behalf of the VPOA, and thus acted with

24   oppression, fraud, and/or malice.

25        189.    City Defendants, and each of them, including GREG NYHOFF, ANNE

26   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

27   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

28   MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

willingly participated in the formation of official polices, and promulgated, adopted, and ratified plans to target, harass, intimidate, bully, defame, retaliate against, wrongfully terminate, and interfere with the free speech and associational rights of the VPOA, VPOA members, and President Nichelini, including by interfering with President Nichelini's political activities, including protected, concerted union activities, and Defendants, and each of them, formed the aforementioned policies and plans with the purposeful and intentional aim of directing and controlling the VPOA, its members, and its concerted activities.

190.    Despite City Defendants' and each of them, knowledge that repeated, pretextual harassment of the VPOA President would interfere with Plaintiffs' associational rights, City Defendants nonetheless conducted a series of baseless investigations and levied a series of baseless allegations against President Nichelini only *after* he became the VPOA President, indicating that his protected associational activities were a substantial and motivating factor for the adverse employment actions, including the termination of President Nichelini, with the express aim of preventing criticism of City Defendants, and each of them.

191.    City Defendants, and each of them, do not have, and have never had, adequate justification for treating VPOA members, including President Nichelini, different from any citizen speaking on any matter of public concern, nor is it disputed that the VPOA's activities are of significant public concern.

192.    The many punishments carried out by Defendants against Nichelini, the VPOA, and its members are set forth above, and include but are not limited to publication of the so-called "swastika email."

193.    City Defendants, and each of them, would not have taken the adverse employment action absent the protected activities because the repeated, pretextual harassment of President Nichelini began only after he became VPOA President.

194.    City Defendants, and each of them, entirely deprived the VPOA of its most important official for the purpose of weakening the union and interfering with its protected, concerted activity by barring President Nichelini from the workplace and then terminating President Nichelini pretextually.

195.   As a direct and proximate consequence of City Defendants' and each of them, multiple adverse employment actions against President Nichelini for engaging in protected, concerted activities, the associational rights of Plaintiffs have already been chilled and are in fact chilled.

196.   As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $10,500,000.00.

197.   Plaintiffs have incurred, and will continue to incur, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable pursuant to 42 U.S.C. §§ 1983 and 1988(b).  Plaintiffs are entitled to recover reasonable fees and costs in defending their constitutional rights.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

## **PRAYER**

WHEREFORE, Plaintiff Vallejo Police Officer's Association prays for judgment as follows:

1.   For a determination that Defendants, and each of them, have denied the VPOA and its members the rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution;

2.   For temporary, preliminary, and permanent injunctions enjoining the City Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' constitutional rights;

3.   For a determination that Defendants', and each of them, herein described conduct violated the First and Fourteenth Amendments;

4.   For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

Third Amended Complaint for Damages and
Demand for Jury Trial                                    46                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                              Case No. 2:21-cv-00454-KJM-CKD

5.     For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

6.     For temporary, preliminary, and permanent injunctions enjoining the Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' statutory and other rights;

7.     For damages in an amount according to proof but not less than $10,500,000.00;

8.     For special damages according to proof;

9.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

10.    For interest on damages as awarded as allowed by law;

11.    For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

12.    For costs incurred herein;

13.    For such other relief as the court deems just and proper;

14.    For a statement of decision.

## **PRAYER**

WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

1.  For a determination that Defendants', and each of them, herein described conduct violated the First and Fourteenth Amendments;

2.     For a determination that Defendants, and each of them, violated President Nichelini's right to privacy;

3.     For a determination that Defendants, and each of them, defamed President Nichelini;

4.     For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

5.     For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

6.      For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

7.      For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

8.      For damages in an amount according to proof but not less than $10,500,000.00;

9.      For special damages according to proof;

10.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

11.     For interest on damages as awarded as allowed by law;

12.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

13.     For costs incurred herein;

14.     For such other relief as the court deems just and proper;

15.     For a statement of decision.

## THIRD CAUSE OF ACTION

### (Violations of U.S. and Cal. Constitutions – Fourteenth Amendment Right to Substantive Due Process)

### (Plaintiffs Against All Defendants)

198.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 197 as though fully set forth herein.

199.    In retaliation for Plaintiff's exercise of constitutional rights, and to deprive Plaintiff's of their constitutional rights, VPOA Members, including Nichelini, were subjected to adverse employment actions as set forth above, including but not limited to July 2020 administrative leave against Nichelini, the March 2021 unpaid suspension, and the March 2021 termination, among others.

200.   City Defendants' and each of them, arbitrary enforcement of VPD policies, guidelines, and standards allows the VPD to discriminatorily punish VPOA members, including President Nichelini, who speak out about or expose issues directly adverse to their interests, such as corruption or incompetence.

201.   City Defendants, and each of them, have no compelling reason that would justify censorship of VPOA members' speech, or interference with VPOA members' speech, associational, and/or employment rights.

202.   City Defendants and each of them, arbitrary enforcement of VPD policies, guidelines, and standards significantly burdens VPOA members' speech, associational, and employment rights, and have entirely deprived the VPOA of much needed fierce, knowledgeable, and experienced representation in a hyper-political environment by terminating President Nichelini pretextually.

203.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, intentionally, purposefully, and willingly approved, endorsed, adopted, and ratified the employment practices and decisions of Defendant WILLIAMS, including his arbitrary enforcement of VPD policies, guidelines, and standards, for the express purpose of allowing the VPD and Defendant WILLAIMS to discriminatorily punish VPOA members, including President Nichelini, who speak out about or expose issues directly adverse to their interests, such as corruption or incompetence, thus acting with oppression, fraud, and/or malice.

204.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, intentionally, purposefully, and willingly approved, endorsed, adopted, and ratified a plan, as a matter of official policy, to specifically and unjustly deprive VPOA members, including President

1   Nichelini, of the right to work in their chosen profession by arbitrarily enforcing VPD policies,

2   guidelines, and standards, including direct and personal involvement in ratifying and adopting the

3   employment decisions made by Defendant WILLIAMS as the employment decisions of all City

4   Defendants, and each of them, for the express purpose of collectively insulating Defendant

5   WILLIAMS from his own misconduct.

6   205.   The many punishments carried out by Defendants against Nichelini, the VPOA, and

7   its members are set forth above, and include but are not limited to publication of the so-called

8   "swastika email."

9   206.   City Defendants' and each of them, arbitrary enforcement of VPD policies,

10   guidelines, and standards therefore violate the Due Process Clause of the U.S. Constitution.

11   207.   As a direct and proximate result of Defendants', and each of them, illegal conduct,

12   Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical

13   damages, special damages, reputational harm, embarrassment, and humiliation, among other

14   things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

15   have been damaged in an amount according to proof but not less than $10,500,000.00.

16   208.   Plaintiffs have incurred, and will continue to incur, attorney fees and costs because

17   of this proceeding in amounts that cannot yet be determined precisely, which are recoverable

18   pursuant to 42 U.S.C. §§ 1983 and 1988(b).  Plaintiffs are entitled to recover reasonable fees and

19   costs in defending their constitutional rights.  Accordingly, Defendants are responsible for the fees

20   and costs Plaintiffs incur in conjunction with this litigation.

21   **<u>PRAYER</u>**

22   WHEREFORE, Plaintiff Vallejo Police Officer's Association prays for judgment as follows:

23   1.   For a determination that Defendants, and each of them, have denied the VPOA and its

24   members the rights guaranteed by the First and Fourteenth Amendments to the U.S.

25   Constitution;

26   2.   For temporary, preliminary, and permanent injunctions enjoining the City

27   Defendants, and each of them, their agents, employees, and all persons acting on their behalf from

28   further violating VPOA members' constitutional rights;

3.      For a determination that Defendants', and each of them, herein described conduct violated the First and Fourteenth Amendments;

4.      For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

5.      For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

6.      For temporary, preliminary, and permanent injunctions enjoining the Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' statutory and other rights;

7.      For damages in an amount according to proof but not less than $10,500,000.00;

8.      For special damages according to proof;

9.      For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

10.     For interest on damages as awarded as allowed by law;

11.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

12.     For costs incurred herein;

13.     For such other relief as the court deems just and proper;

14.     For a statement of decision.

## **PRAYER**

WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

1.   For a determination that Defendants', and each of them, herein described conduct violated the First and Fourteenth Amendments;

2.      For a determination that Defendants, and each of them, violated President Nichelini's right to privacy;

3.      For a determination that Defendants, and each of them, defamed President Nichelini;

Third Amended Complaint for Damages and
Demand for Jury Trial                                    51                 *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

4.      For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

5.      For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

6.      For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

7.      For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

8.      For damages in an amount according to proof but not less than $10,500,000.00;

9.      For special damages according to proof;

10.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

11.     For interest on damages as awarded as allowed by law;

12.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

13.     For costs incurred herein;

14.     For such other relief as the court deems just and proper;

15.     For a statement of decision.

## FOURTH CAUSE OF ACTION

**(Violations of U.S. and Cal. Constitutions – Fourteenth Amendment Right to Procedural Due Process)**

**(Plaintiffs Against All Defendants)**

209.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 208 as though fully set forth herein.

Third Amended Complaint for Damages and
Demand for Jury Trial                                    52                     *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                                Case No. 2:21-cv-00454-KJM-CKD

210.   In retaliation for Plaintiff's exercise of constitutional rights, and to deprive Plaintiff's of their constitutional rights, VPOA Members, including Nichelini, were subjected to adverse employment actions as set forth above, including but not limited to July 2020 administrative leave against Nichelini, the March 2021 unpaid suspension, and the March 2021 termination, among others.

211.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of official polices, and promulgated, adopted, and ratified plans with an aim to "reform" the VPD, including by altering, changing, and removing, or attempting to alter, change, or remove, procedural requirements, including requirements of, the California Penal Code, the California Evidence Code, the State Constitution and Federal Constitution, the MMBA, the Peace Officer's Bill of Rights, and the Ralph C. Dills Act, and qualified immunity, among others,  that were in place to protect the rights of VPOA members, including President Nichelini.

212.   City Defendants, and each of them, denied President Nichelini the opportunity to be heard and to have a neutral decision maker decide any adverse employment consequences.  Instead, City Defendants, and each of them, had a Termination Notice containing multiple glaring factual inaccuracies and internal inconsistencies, served on President Nichelini.

213.   City Defendants, and each of them, further denied President Nichelini the opportunity to be noticed, to be heard, and to have a decision on any adverse employment consequences be made by a neutral decision maker by falsely accusing President Nichelini of destroying windshield evidence and placing him on administrative leave despite City Defendants' and each of them, knowledge that President Nichelini was not involved in the destruction of windshield evidence.

214.   City Defendants, and each of them, further denied President Nichelini the opportunity to be noticed, to be heard, and to have a decision on any adverse employment

1    consequences be made by a neutral decision maker by pretextually terminating President

2    Nichelini's employment for his engaging in protected, concerted activities.

3         215.   City Defendants and each of them, denials of President Nichelini's right to an

4    opportunity to be heard and to have a decision on any adverse employment consequences to be

5    made by a neutral decision maker therefore violate the Due Process Clause of the U.S. Constitution.

6         216.   City Defendants, and each of them, defamed President Nichelini, impugning his

7    good name, reputation, honor, integrity, and other tangible interests, such as employment, including

8    future employment, in the course of City Defendants' and each of them, improper efforts to

9    terminate President Nichelini.

10        217.   City Defendants, and each of them, deprived President Nichelini of his right to

11   privacy, good name, reputation, honor, integrity, and other tangible interests, such as employment,

12   including future employment, as secured by independent and adequate bases of state law, without

13   providing President Nichelini notice and an opportunity to be heard by a neutral decision maker.

14        218.   City Defendants, and each of them, including GREG NYHOFF, ANNE

15   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

16   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

17   MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly,

18   intentionally, purposefully, and willingly approved, endorsed, adopted, and ratified the

19   employment practices and decisions of Defendant WILLIAMS, including the knowingly false

20   dissemination of the windshield charges, City Defendants' and each of them, knowing and

21   intentional leaking of those charges to the press, the intentional failure to have President Nichelini

22   be heard by a neutral decision maker, including City Defendants' and each of them, personal animus

23   toward President Nichelini in seeking his termination for the express purpose of removing him as

24   President of the VPOA, and City Defendants' and each of them, purposeful public disparagement

25   of President Nichelini and his fitness for his profession for the express purpose of removing him as

26   President of the VPOA,  thus acting with oppression, fraud, and/or malice.

27

28

219. The many punishments carried out by Defendants against Nichelini, the VPOA, and its members are set forth above, and include but are not limited to publication of the so-called "swastika email."

220. As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things. As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $10,500,000.00.

221. Plaintiffs have incurred, and will continue to incur, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable pursuant to 42 U.S.C. §§ 1983 and 1988(b). Plaintiffs are entitled to recover reasonable fees and costs in defending their constitutional rights. Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

## **PRAYER**

WHEREFORE, Plaintiff Vallejo Police Officer's Association prays for judgment as follows:

1. For a determination that Defendants, and each of them, have denied the VPOA and its members the rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution;

2. For temporary, preliminary, and permanent injunctions enjoining the City Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' constitutional rights;

3. For a determination that Defendants', and each of them, herein described conduct violated the First and Fourteenth Amendments;

4. For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

5. For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

Third Amended Complaint for Damages and
Demand for Jury Trial                                55                  *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

6.    For temporary, preliminary, and permanent injunctions enjoining the Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' statutory and other rights;

7.    For damages in an amount according to proof but not less than $10,500,000.00;

8.    For special damages according to proof;

9.    For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

10.    For interest on damages as awarded as allowed by law;

11.    For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

12.    For costs incurred herein;

13.    For such other relief as the court deems just and proper;

14.    For a statement of decision.

## **PRAYER**

WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

1.    For a determination that Defendants', and each of them, herein described conduct violated the First and Fourteenth Amendments;

2.    For a determination that Defendants, and each of them, violated President Nichelini's right to privacy;

3.    For a determination that Defendants, and each of them, defamed President Nichelini;

4.    For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

5.    For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

6.    For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

Third Amended Complaint for Damages and
Demand for Jury Trial                    56                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

7.     For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

8.     For damages in an amount according to proof but not less than $10,500,000.00;

9.     For special damages according to proof;

10.    For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

11.    For interest on damages as awarded as allowed by law;

12.    For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

13.    For costs incurred herein;

14.    For such other relief as the court deems just and proper;

15.    For a statement of decision.

## FIFTH CAUSE OF ACTION

**(Violations of U.S. and Cal. Constitutions – Fourteenth Amendment Right to Equal Protection)**

**(Plaintiffs Against All Defendants)**

222.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 221 as though fully set forth herein.

223.    In retaliation for Plaintiff's exercise of constitutional rights, and to deprive Plaintiff's of their constitutional rights, VPOA Members, including Nichelini, were subjected to adverse employment actions as set forth above, including but not limited to July 2020 administrative leave against Nichelini, the March 2021 unpaid suspension, and the March 2021 termination, among others.

224.    City Defendants' and each of them, arbitrary enforcement of VPD policies, guidelines, and standards against VPOA members, denials of VPOA members' right to be noticed, heard, and to have a decision on any adverse employment consequences to be made by a neutral

Third Amended Complaint for Damages and
Demand for Jury Trial                                      57                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                                 Case No. 2:21-cv-00454-KJM-CKD

1  decision maker, and the infringements of the VPOA and VPOA members' free speech and

2  associational rights, including President Nichelini, treats the VPOA and its members differently

3  than other similarly situated individuals, based on their speech's content, the viewpoint of their

4  expression, their employment status, and their status as union members.

5      225.   Because City Defendants' and each of them, actions impact the VPOA's free speech

6  and associational rights, a fundamental right is implicated.

7      226.   Other labor organizations, such as The International Brotherhood of Electrical

8  Workers (IBEW), The International Association of Firefighters (IAFF), and the Confidential,

9  Administrative, Managerial, & Professional Association (CAMP), similarly situated, are not

10 experiencing targeted repression of their members' speech and associational rights, as described

11 herein.

12     227.   City Defendants, and each of them, have no rational, legitimate, or compelling

13 reason that would justify their disparate treatment of the VPOA or its members, including President

14 Nichelini.

15     228.   City Defendants' and each of them, arbitrary enforcement of VPD policies,

16 guidelines, and standards against VPOA members, denials of VPOA members' right to be noticed,

17 heard, and to have a decision on any adverse employment consequences, including the termination

18 of President Nichelini, to be made by a neutral decision maker, and the infringements of the VPOA

19 and VPOA members' free speech and associational rights, including President Nichelini, violates

20 the Equal Protection Clause of the U.S. Constitution.

21     229.   City Defendants, and each of them, including GREG NYHOFF, ANNE

22 CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

23 ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

24 MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

25 willingly participated in the formation of the aforementioned official polices, and promulgated,

26 adopted, and ratified the aforementioned plans to dismantle the VPOA leadership and scapegoat its

27 members as responsible for the leadership inadequacies of City Defendants, and each of them,

28 including by promulgating, adopting, and ratifying a plan to purposefully insulate Defendant

WILLIAMS from his misconduct toward VPOA members by associating themselves and each other with said misconduct, and adopting and ratifying said misconduct, including, but not limited to, targeting, harassing, intimidating, bullying, defaming, retaliating against, wrongfully terminating, and interfering with the free speech and associational rights of VPOA members, including President Nichelini, including by interfering with the political activities of VPOA members and the union as a whole, while treating the members, including the operating board members such as President, of other similarly situated unions and union members similarly situated, differently.

230.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of the aforementioned official polices, and promulgated, adopted, and ratified the aforementioned plans with oppression, fraud, and/or malice by knowingly, intentionally, purposefully, and willingly violating state and federal law and the rights of VPOA members, including under the State Constitution and Federal Constitution, including those of President Nichelini, for the express purpose of dismantling the leadership of the VPOA, however, City Defendants, and each of them, did not engage in the aforementioned conduct against other unions that are similarly situated to the VPOA, or the members of other unions that are similarly situated to the members of the VPOA.

231.   The many punishments carried out by Defendants against Nichelini, the VPOA, and its members are set forth above, and include but are not limited to publication of the so-called "swastika email."

232.   As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs have been damaged in an amount according to proof but not less than $10,500,000.00.

233.     Plaintiffs have incurred, and will continue to incur, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable pursuant to 42 U.S.C. §§ 1983 and 1988(b).  Plaintiffs are entitled to recover reasonable fees and costs in defending their constitutional rights.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

**PRAYER**

WHEREFORE, Plaintiff Vallejo Police Officer's Association prays for judgment as follows:

1.   For a determination that Defendants, and each of them, have denied the VPOA and its members the rights guaranteed by the First and Fourteenth Amendments to the U.S. Constitution;

2.     For temporary, preliminary, and permanent injunctions enjoining the City Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' constitutional rights;

3.     For a determination that Defendants', and each of them, herein described conduct violated the First and Fourteenth Amendments;

4.     For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

5.     For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

6.     For temporary, preliminary, and permanent injunctions enjoining the Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' statutory and other rights;

7.     For damages in an amount according to proof but not less than $10,500,000.00;

8.     For special damages according to proof;

9.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

10.     For interest on damages as awarded as allowed by law;

11.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

12.     For costs incurred herein;

13.     For such other relief as the court deems just and proper;

14.     For a statement of decision.

## **PRAYER**

WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

1.   For a determination that Defendants', and each of them, herein described conduct violated the First and Fourteenth Amendments;

2.     For a determination that Defendants, and each of them, violated President Nichelini's right to privacy;

3.     For a determination that Defendants, and each of them, defamed President Nichelini;

4.     For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

5.     For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

6.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

7.     For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

8.     For damages in an amount according to proof but not less than $10,500,000.00;

9.     For special damages according to proof;

10.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

11.     For interest on damages as awarded as allowed by law;

12. For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

13. For costs incurred herein;

14. For such other relief as the court deems just and proper;

15. For a statement of decision.

## SIXTH CAUSE OF ACTION

**(Violations of California Constitution and Statutes – Right to Privacy)**

**(President Nichelini Against All Defendants)**

234. Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 233 as though fully set forth herein.

235. The California Constitution, Article I, Section I confers on Plaintiffs a general right to the reasonable expectation of privacy and an interest legally protected therein.

236. Peace Officers, including all VPOA members and President Nichelini, have additional privacy protections in California under Cal. Penal Code § 832.7 and Cal. Evid. Code § 1043 *et seq*., and an interest legally protected therein.

237. Employers of Peace Officers in California, including City Defendants, and each of them, may not release the personnel records of VPOA members, particularly as it regards discipline, to members of the general public or the media.

238. Plaintiff has a reasonable expectation of privacy in confidential VPOA member personnel information and an interest legally protected therein. Furthermore, confidential VPOA member personnel information cannot be considered an appropriate matter of public concern.

239. The disclosure of VPOA personnel or medical files constitutes a clearly unwarranted and serious invasion of VPOA members' privacy. Moreover, such public disclosure of private facts regarding an employee's confidential personnel file would be highly offensive and objectionable to the reasonable person and was in fact highly offensive and objectionable to Plaintiffs.

240. No privilege protects City Defendants, and each of them, from the unwarranted disclosure of VPOA member personnel information to members of the public or the media. Further, City Defendants, and each of them, knew that a reasonable person would consider the publicity

1  highly offensive and objectionable or acted with reckless disregard for whether a reasonable person

2  would consider the publicity highly offensive and objectionable.

3      241.   City Defendants, and each of them, violated the VPOA's and President Nichelini's

4  privacy rights by releasing President Nichelini's confidential personnel information, including

5  disciplinary action taken against President Nichelini, to members of the public and the media.

6      242.   City Defendants, and each of them, including GREG NYHOFF, ANNE

7  CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

8  ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

9  MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly,

10  intentionally, purposefully, and willingly approved, endorsed, adopted, and ratified the

11  employment practices and decisions of Defendant WILLIAMS, including the express, personal,

12  individual approval, endorsement, direction, and adoption by City Defendants, and each of them,

13  of Defendant WILLIAMS's release of private and confidential personnel information, including

14  disciplinary information, about VPOA members and President Nichelini, with the express aim of

15  damaging the VPOA's, VPOA members', and President Nichelini's reputation, thus acting with

16  oppression, fraud, and/or malice.

17      243.   As a direct and proximate result of Defendants', and each of them, illegal conduct,

18  Plaintiff has suffered physical and/or mental anguish, past lost wages, future lost wages, medical

19  damages, special damages, reputational harm, embarrassment, and humiliation, among other

20  things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

21  have been damaged in an amount according to proof but not less than $10,500,000.00.

22      244.   Plaintiff has incurred, and will continue to incur, actual damages, attorney fees and

23  costs because of this proceeding in amounts that cannot yet be determined precisely, which are

24  recoverable, in addition to special damages.  Plaintiffs are entitled to recover reasonable fees and

25  costs in defending his rights.  Accordingly, Defendants are responsible for the fees and costs

26  Plaintiffs incur in conjunction with this litigation.

27

28

Third Amended Complaint for Damages and
Demand for Jury Trial          63          *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

**PRAYER**

WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

1. For a determination that Defendants, and each of them, violated President Nichelini's right to privacy;

2. For a determination that Defendants, and each of them, defamed President Nichelini;

3. For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3300 *et seq*., based on their conduct described herein;

4. For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3500 *et seq*., based on their conduct described herein;

5. For a determination that Defendants, and each of them, violated Cal. Labor Code §§ 1100 *et seq*., based on their conduct described herein;

6. For a determination that Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

7. For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

8. For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

9. For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

10. For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

11. For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

12. For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally

Third Amended Complaint for Damages and
Demand for Jury Trial                                          64                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                                     Case No. 2:21-cv-00454-KJM-CKD

1   notify City employees electronically, and post in a conspicuous place in the VPD workplace, an

2   acknowledgement that the allegations against President Nichelini are unsubstantiated;

3        13.     For damages in an amount according to proof but not less than $10,500,000.00;

4        14.     For special damages according to proof;

5        15.     For punitive damages according to proof of oppression, fraud, and/or malice, and

6   for each and every violation of the Peace Officer's Bill of Rights ;

7        16.     For interest on damages as awarded as allowed by law;

8        17.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal.

9   Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

10        18.     For costs incurred herein;

11        19.     For such other relief as the court deems just and proper;

12        20.     For a statement of decision.

13   **SEVENTH CAUSE OF ACTION**

14   **(Defamation and Reputational Harm – Cal. Civil Code §§ 44-47)**

15   **(President Nichelini Against All Defendants)**

16        245.     Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs

17   1 through 244 as though fully set forth herein.

18        246.     California Civil Code §§ 44-47 set forth multiple defamation statutes, including a

19   bar against filing a complaint with a peace officer's employment agency alleging misconduct,

20   criminal misconduct, or incompetence with knowledge such complaint is false.

21        247.     California Gov't Code § 815.2 provides liability for public entities for harm

22   proximately caused by an act or omission of an employee of the public entity, including defamation.

23        248.     In addition to Cal. Gov't Code § 815.2, President Nichelini's reputational and

24   privacy interests are protected against employer invasion by California statute, multiple California

25   common law doctrines, the California Constitution, and the Federal Constitution.

26        249.     Despite those protections, City Defendants, and each of them, intentionally caused

27   false and defamatory statements about President Nichelini to be leaked to the local press and

28   published, including that President Nichelini destroyed a windshield, that President Nichelini had

been punished and needed to be apologized for, and that President Nichelini has racial animus toward any group, resulting in foreseeable reputational harm to President Nichelini.

250.    The defamatory statements supplied by City Defendants, and each of them, to the local press adversely reflect on President Nichelini's ability to engage in his profession, causing irreparable harm to President Nichelini's trade, profession, and occupation, and future earning capacity.

251.    The defamatory statements supplied by City Defendants, and each of them, to the local press about President Nichelini were, and are false, and the falsity of the statements was known to City Defendants, and each of them, at the time the statements were publicized to the local press.

252.    The defamatory statements supplied by City Defendants, and each of them, to the local press about President Nichelini were and are false, and the City Defendants, and each of them, at the time the statements were publicized to the local press, publicized those statements with reckless disregard for the truth or falsity of the statements, thus acting with oppression, fraud, and/or malice.

253.    City Defendants, and each of them, knew the local press reasonably understood the defamatory statements to be about President Nichelini and that the local press understood the defamatory statements to mean that President Nichelini was forever unqualified to engage in his profession, causing irreparable harm to President Nichelini's trade, profession, and occupation, and future earning capacity.

254.    City Defendants, and each of them, knew, that because of the facts and circumstances known to the local press, that the statements tended to injure President Nichelini in his occupation, intentionally exposing President Nichelini to hatred, contempt, ridicule, and shame, and to discourage others from associating or dealing with President Nichelini.

255.    President Nichelini's reputation was invaded and damaged by the defamatory statements supplied by City Defendants, and each of them, to the local press as evidenced by subsequent, repeated public attacks on President Nichelini's character and reputation by members of the local citizenry and press, and others, through both traditional and social media channels.

256.   The defamatory statements published by Defendants, and each of them, showed President Nichelini in a false light.  Moreover, Defendants, and each of them, knew the defamatory statements would create a false impression about President Nichelini, and Defendants, and each of them, acted with reckless disregard as to whether the defamatory statements would create a false impression about President Nichelini.

257.   The defamatory statements published by Defendants, and each of them, about President Nichelini caused him to suffer harm to his trade, profession, and occupation, and President Nichelini has spent and lost money as a result of the defamatory statements.

258.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, intentionally, purposefully, and willingly approved, endorsed, adopted, and ratified the employment practices and decisions of Defendant WILLIAMS, including the express, personal, individual approval, endorsement, and adoption by City Defendants, and each of them, of Defendant WILLIAMS's release of private and confidential personnel information, including disciplinary information, and including knowingly false information, about President Nichelini, with the express purpose of forever destroying President Nichelini's career as a police officer by individually, knowingly, intentionally, purposefully, and willingly publicly portraying President Nichelini as a "racist cop",  and with the express purpose of forever tarnishing President Nichelini's reputation and image, and to damage and hamstring the VPOA, and to tarnish the VPOA's image and reputation, and the images and reputations of other VPOA members.

259.   As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff has suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff has been damaged in an amount according to proof but not less than $10,500,000.00.

Third Amended Complaint for Damages and
Demand for Jury Trial                               67                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                          Case No. 2:21-cv-00454-KJM-CKD

260.    Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable, in addition to special damages.  Plaintiffs are entitled to recover reasonable fees and costs in defending his rights.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

## **PRAYER**

WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

1.   For a determination that Defendants, and each of them, violated President Nichelini's right to privacy;

2.    For a determination that Defendants, and each of them, defamed President Nichelini;

3.    For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3300 *et seq.*, based on their conduct described herein;

4.    For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3500 *et seq.*, based on their conduct described herein;

5.    For a determination that Defendants, and each of them, violated Cal. Labor Code §§ 1100 *et seq.*, based on their conduct described herein;

6.    For a determination that Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

7.    For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

8.    For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

9.    For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

10.    For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code

§ 96(k);

11.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

12.     For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

13.     For damages in an amount according to proof but not less than $10,500,000.00;

14.     For special damages according to proof;

15.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

16.     For interest on damages as awarded as allowed by law;

17.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

18.     For costs incurred herein;

19.     For such other relief as the court deems just and proper;

20.     For a statement of decision.

## EIGHTH CAUSE OF ACTION

**(Interference with Union Activities – Cal. Gov. Code §§ 3500 et seq.)**

**(Plaintiffs Against All Defendants)**

261.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 260 as though fully set forth herein.

262.    By engaging in the acts described herein, City Defendants, and each of them, unlawfully interfered with VPOA members' rights guaranteed by Cal. Gov. Code §§ 3502, 3503, 3504, 3505, and 3506, including those of President Nichelini.

263.    By engaging in the acts described herein, City Defendants, and each of them, unlawfully interfered with the administration of the VPOA.

Third Amended Complaint for Damages and
Demand for Jury Trial                                   69                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

264.   By engaging in the acts described herein, City Defendants, and each of them, unlawfully interfered with the VPOA and its members, including President Nichelini, by conditioning employment, threatening to discharge or fail to retain, and other threats of reprisal, against the VPOA and its members, including President Nichelini, for their engagement in concerted activities, and for in fact terminating President Nichelini for his engaging in concerted, protected activities.

265.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of official polices, and promulgated, adopted, and ratified plans with an aim to "reform" the VPD, despite unequivocally knowing that such reformation efforts violated state and federal law and the rights of VPOA members, including President Nichelini, with the express purpose and desire to directly interfere with the VPOA and its leadership structure.

266.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of official polices, and promulgated, adopted, and ratified the plans to dismantle the VPOA leadership and scapegoat its members as responsible for the leadership inadequacies of City Defendants, and each of them, including by promulgating, adopting, and ratifying a plan to purposefully insulate Defendant WILLIAMS from his misconduct toward VPOA members by associating themselves and each other with said misconduct, and adopting and ratifying said misconduct, including, but not limited to, targeting, harassing, intimidating, bullying, defaming, retaliating against, wrongfully terminating, and interfering with the free speech and associational rights of VPOA members, including President Nichelini,

1   including by interfering with the political activities of VPOA members and the union as a whole,

2   thus acting with oppression, fraud, and/or malice.

3       267.    As a direct and proximate result of Defendants', and each of them, illegal conduct,

4   Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical

5   damages, special damages, reputational harm, embarrassment, and humiliation, among other

6   things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

7   have been damaged in an amount according to proof but not less than $10,500,000.00.

8       268.    Because of the unlawful acts of City Defendants, and each of them, as described

9   herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

10  because of this proceeding in amounts that cannot yet be determined precisely, which are

11  recoverable.  Plaintiffs are entitled to attorney fees, costs, and punitive damages pursuant to Cal.

12  Gov. Code § 3309.5.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur

13  in conjunction with this litigation.

14  **PRAYER**

15  WHEREFORE, Plaintiff Vallejo Police Officer Association prays for judgment as follows:

16      1.    For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3300

17      *et seq*., based on their conduct described herein;

18      2.    For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

19  3500 *et seq*., based on their conduct described herein;

20      3.    For a determination that Defendants, and each of them, violated Cal. Labor Code §§

21  1100 *et seq*., based on their conduct described herein;

22      4.    For a determination that Defendants, and each of them, engaged in unfair labor

23  practices and interfered with the VPOA's union activities, including by harassing, intimidating,

24  defaming, victimizing, and discriminating and retaliating against Plaintiffs;

25      5.    For a determination that Defendants, and each of them, engaged in unfair labor

26  practices against Plaintiffs in violation of California state law;

27      6.    For a determination that Defendants, and each of them, were negligent in their

28  treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant

1  WILLIAMS;

2      7.      For a determination that Defendant WILLIAMS's conduct was extreme and

3  outrageous and the cause of President Nichelini's severe emotional distress;

4      8.      For a determination that Defendants, and each of them, wrongfully terminated

5  President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code

6  § 96(k);

7      9.      For temporary, preliminary, and permanent injunctions enjoining the Defendants,

8  and each of them, their agents, employees, and all persons acting on their behalf from further

9  violating VPOA members' statutory and other rights;

10      10.     For damages in an amount according to proof but not less than $10,500,000.00;

11      11.     For special damages according to proof;

12      12.     For punitive damages according to proof of oppression, fraud, and/or malice, and

13  for each and every violation of the Peace Officer's Bill of Rights ;

14      13.     For interest on damages as awarded as allowed by law;

15      14.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal.

16  Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

17      15.     For costs incurred herein;

18      16.     For such other relief as the court deems just and proper;

19      17.     For a statement of decision.

20  **PRAYER**

21  WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

22      1.      For a determination that Defendants, and each of them, violated President Nichelini's

23          right to privacy;

24      2.      For a determination that Defendants, and each of them, defamed President Nichelini;

25      3.      For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

26  3300 *et seq*., based on their conduct described herein;

27      4.      For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

28  3500 *et seq*., based on their conduct described herein;

5.      For a determination that Defendants, and each of them, violated Cal. Labor Code §§ 1100 *et seq.*, based on their conduct described herein;

6.      For a determination that Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

7.      For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

8.      For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

9.      For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

10.      For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

11.      For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

12.      For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

13.      For damages in an amount according to proof but not less than $10,500,000.00;

14.      For special damages according to proof;

15.      For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

16.      For interest on damages as awarded as allowed by law;

17.      For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

1     18.     For costs incurred herein;

2     19.     For such other relief as the court deems just and proper;

3     20.     For a statement of decision.

4                          **NINTH CAUSE OF ACTION**

5              **(Discrimination – Cal. Gov. Code §§ 3500 et seq.)**

6                     **(Plaintiffs Against All Defendants)**

7     269.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs

8     1 through 267 as though fully set forth herein.

9     270.    By engaging in the acts described herein, City Defendants, and each of them,

10    unlawfully interfered with VPOA members' rights guaranteed by Cal. Gov. Code §§ 3502, 3503,

11    3504, 3505, and 3506, including those of President Nichelini.

12    271.    By engaging in the acts described herein, City Defendants, and each of them,

13    unlawfully discriminated against members of the VPOA, including President Nichelini.

14    272.    By engaging in the acts described herein, City Defendants, and each of them,

15    unlawfully discriminated against the VPOA and its members, including President Nichelini, by

16    conditioning employment, threatening to discharge or fail to retain, and other threats of reprisal,

17    against the VPOA and its members, including President Nichelini, for their engagement in

18    concerted activities, and for in fact terminating President Nichelini for his engaging in concerted,

19    protected activities.

20    273.    City Defendants, and each of them, including GREG NYHOFF, ANNE

21    CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

22    ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

23    MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

24    willingly participated in the formation of official polices, and promulgated, adopted, and ratified

25    plans with an aim to "reform" the VPD, despite unequivocally knowing that such reformation

26    efforts violated state and federal law and the rights of VPOA members, including President

27    Nichelini, and discriminated against VPOA members with no legitimate government interest in

28    doing so save a bare desire to harm a politically unpopular group.

274.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of official polices, and promulgated, adopted, and ratified the plans to dismantle the VPOA leadership and scapegoat its members as responsible for the leadership inadequacies of City Defendants, and each of them, including by promulgating, adopting, and ratifying a plan to purposefully insulate Defendant WILLIAMS from his misconduct toward VPOA members by associating themselves and each other with said misconduct, and adopting and ratifying said misconduct, including, but not limited to, targeting, harassing, intimidating, bullying, defaming, retaliating against, wrongfully terminating, and interfering with the free speech and associational rights of VPOA members, including President Nichelini, including for the express purpose of interfering with, controlling, and directing the political activities of VPOA members and the union as a whole, thus acting with oppression, fraud, and/or malice.

275.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of the aforementioned official polices, and promulgated, adopted, and ratified the aforementioned plans to dismantle the VPOA leadership and scapegoat its members as responsible for the leadership inadequacies of City Defendants, and each of them, including by promulgating, adopting, and ratifying a plan to purposefully insulate Defendant WILLIAMS from his misconduct toward VPOA members by associating themselves and each other with said misconduct, and adopting and ratifying said misconduct, including, but not limited to, targeting, harassing, intimidating, bullying, defaming, retaliating against, wrongfully terminating, and interfering with the free speech and associational rights of VPOA members, including President Nichelini, including by interfering with the political activities of VPOA

1    members and the union as a whole, while treating the members, including the operating board

2    members such as President, of other similarly situated unions and union members similarly situated,

3    differently.

4         276.   City Defendants, and each of them, including GREG NYHOFF, ANNE

5    CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

6    ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

7    MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

8    willingly participated in the formation of the aforementioned official polices, and promulgated,

9    adopted, and ratified the aforementioned plans with oppression, fraud, and/or malice by knowingly,

10   intentionally, purposefully, and willingly violating state and federal law and the rights of VPOA

11   members, including under the State Constitution and Federal Constitution, including those of

12   President Nichelini, for the express purpose of dismantling the leadership of the VPOA, however,

13   City Defendants, and each of them, did not engage in the aforementioned conduct against other

14   unions that are similarly situated to the VPOA, or the members of other unions that are similarly

15   situated to the members of the VPOA.

16        277.   As a direct and proximate result of Defendants', and each of them, illegal conduct,

17   Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical

18   damages, special damages, reputational harm, embarrassment, and humiliation, among other

19   things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

20   have been damaged in an amount according to proof but not less than $10,500,000.00.

21        278.   Because of the unlawful acts of City Defendants, and each of them, as described

22   herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

23   because of this proceeding in amounts that cannot yet be determined precisely, which are

24   recoverable.  Plaintiffs are entitled to attorney fees, costs, and punitive damages pursuant to Cal.

25   Gov. Code § 3309.5.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur

26   in conjunction with this litigation.

27

28

**PRAYER**

WHEREFORE, Plaintiff Vallejo Police Officer Association prays for judgment as follows:

1. For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3300 *et seq.*, based on their conduct described herein;

2. For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3500 *et seq.*, based on their conduct described herein;

3. For a determination that Defendants, and each of them, violated Cal. Labor Code §§ 1100 *et seq.*, based on their conduct described herein;

4. For a determination that Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

5. For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

6. For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

7. For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

8. For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

9. For temporary, preliminary, and permanent injunctions enjoining the Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' statutory and other rights;

10. For damages in an amount according to proof but not less than $10,500,000.00;

11. For special damages according to proof;

12. For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

Third Amended Complaint for Damages and
Demand for Jury Trial                                     77                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

13.     For interest on damages as awarded as allowed by law;

14.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

15.     For costs incurred herein;

16.     For such other relief as the court deems just and proper;

17.     For a statement of decision.

## **PRAYER**

WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

1.  For a determination that Defendants, and each of them, violated President Nichelini's right to privacy;

2.      For a determination that Defendants, and each of them, defamed President Nichelini;

3.      For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3300 *et seq*., based on their conduct described herein;

4.      For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3500 *et seq*., based on their conduct described herein;

5.      For a determination that Defendants, and each of them, violated Cal. Labor Code §§ 1100 *et seq*., based on their conduct described herein;

6.      For a determination that Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

7.      For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

8.      For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

9.      For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

Third Amended Complaint for Damages and
Demand for Jury Trial                                           78                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

10.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

11.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

12.     For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

13.     For damages in an amount according to proof but not less than $10,500,000.00;

14.     For special damages according to proof;

15.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

16.     For interest on damages as awarded as allowed by law;

17.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

18.     For costs incurred herein;

19.     For such other relief as the court deems just and proper;

20.     For a statement of decision.

## TENTH CAUSE OF ACTION

### (Retaliation – Cal. Gov. Code §§ 3300 et seq. & 3500 et seq.)

### (Plaintiffs Against All Defendants)

279.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 277 as though fully set forth herein.

280.    By engaging in the acts described herein, City Defendants, and each of them, unlawfully interfered with VPOA members' rights guaranteed by Cal. Gov. Code §§ 3304, 3502, 3503, 3504, 3505, and 3506, including those of President Nichelini.

Third Amended Complaint for Damages and
Demand for Jury Trial                                          79                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                                    Case No. 2:21-cv-00454-KJM-CKD

281. By engaging in the acts described herein, City Defendants, and each of them, unlawfully retaliated against members of the VPOA, including President Nichelini.

282. By engaging in the acts described herein, City Defendants, and each of them, unlawfully retaliated against the VPOA and its members, including President Nichelini, by conditioning employment, threatening to discharge or fail to retain, and other threats of reprisal, against the VPOA and its members, including President Nichelini, for their engagement in concerted activities, and for in fact terminating President Nichelini for his engaging in concerted, protected activities.

283. City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, intentionally, purposefully, and willingly punished President Nichelini pretextually for sending the concerted, protected correspondence for the express purpose of silencing the VPOA, VPOA members' speech, and President Nichelini's speech on behalf of the VPOA, for the sole and illegitimate purpose of retaliating against the VPOA, VPOA members, and President Nichelini for engaging in protected concerted activities, whistleblowing, and resisting the "reform" efforts of City Defendants, and each of them.

284. City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of official polices, and promulgated, adopted, and ratified the plans to dismantle the VPOA leadership and scapegoat its members as responsible for the leadership inadequacies of City Defendants, and each of them, including by promulgating, adopting, and ratifying a plan to purposefully insulate Defendant WILLIAMS from his misconduct toward VPOA members by associating themselves and each other with said misconduct, and adopting and ratifying said misconduct, including, but not limited to, targeting, harassing,

1    intimidating, bullying, defaming, retaliating against, wrongfully terminating, and interfering with

2    the free speech and associational rights of VPOA members, including President Nichelini,

3    including by interfering with the political activities of VPOA members and the union as a whole.

4         285.   City Defendants, and each of them, including GREG NYHOFF, ANNE

5    CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

6    ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

7    MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

8    willingly participated in the formation of the aforementioned official polices, and promulgated,

9    adopted, and ratified the aforementioned plans to dismantle the VPOA leadership and scapegoat its

10   members as responsible for the leadership inadequacies of City Defendants, and each of them,

11   including by promulgating, adopting, and ratifying a plan to purposefully insulate Defendant

12   WILLIAMS from his misconduct toward VPOA members by associating themselves and each

13   other with said misconduct, and adopting and ratifying said misconduct, including, but not limited

14   to, targeting, harassing, intimidating, bullying, defaming, retaliating against, wrongfully

15   terminating, and interfering with the free speech and associational rights of VPOA members,

16   including President Nichelini, including by interfering with the political activities of VPOA

17   members and the union as a whole.

18        286.   City Defendants, and each of them, including GREG NYHOFF, ANNE

19   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

20   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

21   MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

22   willingly participated in the formation of the aforementioned official polices, and promulgated,

23   adopted, and ratified the aforementioned plans with an aim to "reform" the VPD, despite

24   unequivocally knowing that such reformation efforts violated state and federal law and the rights

25   of VPOA members, including President Nichelini.

26        287.   City Defendants, and each of them, including GREG NYHOFF, ANNE

27   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

28   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

1  MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

2  willingly participated in the formation of the aforementioned official polices, and promulgated,

3  adopted, and ratified the aforementioned plans with an aim to "reform" the VPD, including direct

4  and personal involvement about employment decisions related to VPOA members, in particular

5  President Nichelini, among others, and including direct and personal involvement in ratifying and

6  adopting the employment decisions made by Defendant WILLIAMS as the employment decisions

7  of all City Defendants, and each of them.

8      288.   City Defendants, and each of them, including GREG NYHOFF, ANNE

9  CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

10  ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

11  MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

12  willingly participated in the formation of the aforementioned official polices, and promulgated,

13  adopted, and ratified the aforementioned plans with oppression, fraud, and/or malice by knowingly,

14  intentionally, purposefully, and willingly violating state and federal law and the rights of VPOA

15  members, including under the State Constitution and Federal Constitution, including those of

16  President Nichelini.

17      289.   As a direct and proximate result of Defendants', and each of them, illegal conduct,

18  Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical

19  damages, special damages, reputational harm, embarrassment, and humiliation, among other

20  things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

21  have been damaged in an amount according to proof but not less than $10,500,000.00.

22      290.   Because of the unlawful acts of City Defendants, and each of them, as described

23  herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

24  because of this proceeding in amounts that cannot yet be determined precisely, which are

25  recoverable.  Plaintiffs are entitled to attorney fees, costs, and punitive damages pursuant to Cal.

26  Gov. § Code 3309.5.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur

27  in conjunction with this litigation.

28

## PRAYER

WHEREFORE, Plaintiff Vallejo Police Officer Association prays for judgment as follows:

1. For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3300 *et seq*., based on their conduct described herein;

2. For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3500 *et seq*., based on their conduct described herein;

3. For a determination that Defendants, and each of them, violated Cal. Labor Code §§ 1100 *et seq*., based on their conduct described herein;

4. For a determination that Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

5. For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

6. For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

7. For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

8. For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

9. For temporary, preliminary, and permanent injunctions enjoining the Defendants, and each of them, their agents, employees, and all persons acting on their behalf from further violating VPOA members' statutory and other rights;

10. For damages in an amount according to proof but not less than $10,500,000.00;

11. For special damages according to proof;

12. For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

13.     For interest on damages as awarded as allowed by law;

14.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

15.     For costs incurred herein;

16.     For such other relief as the court deems just and proper;

17.     For a statement of decision.

## **PRAYER**

WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

1.   For a determination that Defendants, and each of them, violated President Nichelini's right to privacy;

2.     For a determination that Defendants, and each of them, defamed President Nichelini;

3.     For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3300 *et seq.*, based on their conduct described herein;

4.     For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3500 *et seq.*, based on their conduct described herein;

5.     For a determination that Defendants, and each of them, violated Cal. Labor Code §§ 1100 *et seq.*, based on their conduct described herein;

6.     For a determination that Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

7.     For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

8.     For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

9.     For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

10.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

11.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

12.     For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

13.     For damages in an amount according to proof but not less than $10,500,000.00;

14.     For special damages according to proof;

15.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

16.     For interest on damages as awarded as allowed by law;

17.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

18.     For costs incurred herein;

19.     For such other relief as the court deems just and proper;

20.     For a statement of decision.

## ELEVENTH CAUSE OF ACTION

### (Interference with Political Affiliations – Cal. Labor Code § 1101)

### (Plaintiffs Against All Defendants)

291.     Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 290 as though fully set forth herein.

292.     City Defendants, and each of them, through the making, adopting, or enforcement of rules, regulations, or policies, seek to discharge, discriminate and retaliate against, and take other adverse employment action against Plaintiffs in an effort to forbid or prevent VPOA members, including President Nichelini, from engaging in politics.

293.    City Defendants, and each of them, through the making, adopting, or enforcement of rules, regulations, or policies, seek to discharge, discriminate and retaliate against, and take other adverse employment action against Plaintiffs in an effort direct, control, or tend to direct or control, the political activities of the VPOA and the political affiliations of VPOA members, including President Nichelini.

294.    City Defendants, and each of them, coerced and influenced, or attempted to coerce and influence Plaintiffs, through or by means of threat of discharge or loss of employment, to adopt or follow, or refrain from adopting or following, the course or line of political action and political activities of the VPOA and VPOA members, including President Nichelini, by in fact terminating President Nichelini for engaging in protected, concerted activities, and in particular because President Nichelini is a respected and fierce advocate for VPOA members' rights in a hyper-political environment.

295.    City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and willingly participated in the formation of the aforementioned official polices, and promulgated, adopted, and ratified the aforementioned plans to dismantle the VPOA leadership and scapegoat its members as responsible for the leadership inadequacies of City Defendants, and each of them, including by promulgating, adopting, and ratifying a plan to purposefully insulate Defendant WILLIAMS from his misconduct toward VPOA members by associating themselves and each other with said misconduct, and adopting and ratifying said misconduct, including, but not limited to, targeting, harassing, intimidating, bullying, defaming, retaliating against, wrongfully terminating, and interfering with the free speech and associational rights of VPOA members, including President Nichelini, including by interfering with the political activities of VPOA members and the union as a whole.

296.    City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

1   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

2   MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

3   willingly participated in the formation of the aforementioned official polices, and promulgated,

4   adopted, and ratified the aforementioned plans with an aim to "reform" the VPD, despite

5   unequivocally knowing that such reformation efforts violated state and federal law and the rights

6   of VPOA members, including President Nichelini.

7          297.   City Defendants, and each of them, including GREG NYHOFF, ANNE

8   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

9   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

10  MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

11  willingly participated in the formation of the aforementioned official polices, and promulgated,

12  adopted, and ratified the aforementioned plans with an aim to "reform" the VPD, including direct

13  and personal involvement about employment decisions related to VPOA members, in particular

14  President Nichelini, among others, and including direct and personal involvement in ratifying and

15  adopting the employment decisions made by Defendant WILLIAMS as the employment decisions

16  of all City Defendants, and each of them.

17         298.   City Defendants, and each of them, including GREG NYHOFF, ANNE

18  CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

19  ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

20  MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

21  willingly participated in the formation of the aforementioned official polices, and promulgated,

22  adopted, and ratified the aforementioned plans with oppression, fraud, and/or malice by knowingly,

23  intentionally, purposefully, and willingly violating state and federal law and the rights of VPOA

24  members, including under the State Constitution and Federal Constitution, including those of

25  President Nichelini.

26         299.   As a direct and proximate result of Defendants', and each of them, illegal conduct,

27  Plaintiffs have suffered physical and/or mental anguish, past lost wages, future lost wages, medical

28  damages, special damages, reputational harm, embarrassment, and humiliation, among other

1    things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiffs

2    have been damaged in an amount according to proof but not less than $10,500,000.00.

3         300.    Because of the unlawful acts of City Defendants, and each of them, as described

4    herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

5    because of this proceeding in amounts that cannot yet be determined precisely, which are

6    recoverable.  Plaintiffs are entitled to damages for each violation pursuant to Cal. Labor Code §

7    1103.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction

8    with this litigation.

9                                              **PRAYER**

10   WHEREFORE, Plaintiff Vallejo Police Officer's Association prays for judgment as follows:

11        1.   For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3300

12             *et seq*., based on their conduct described herein;

13        2.   For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

14   3500 *et seq*., based on their conduct described herein;

15        3.   For a determination that Defendants, and each of them, violated Cal. Labor Code §§

16   1100 *et seq*., based on their conduct described herein;

17        4.   For a determination that Defendants, and each of them, engaged in unfair labor

18   practices and interfered with the VPOA's union activities, including by harassing, intimidating,

19   defaming, victimizing, and discriminating and retaliating against Plaintiffs;

20        5.   For a determination that Defendants, and each of them, engaged in unfair labor

21   practices against Plaintiffs in violation of California state law;

22        6.   For a determination that Defendants, and each of them, were negligent in their

23   treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant

24   WILLIAMS;

25        7.   For a determination that Defendant WILLIAMS's conduct was extreme and

26   outrageous and the cause of President Nichelini's severe emotional distress;

27        8.   For a determination that Defendants, and each of them, wrongfully terminated

28   President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code

1   § 96(k);

2   9.   For temporary, preliminary, and permanent injunctions enjoining the Defendants,

3   and each of them, their agents, employees, and all persons acting on their behalf from further

4   violating VPOA members' statutory and other rights;

5   10.   For damages in an amount according to proof but not less than $10,500,000.00;

6   11.   For special damages according to proof;

7   12.   For punitive damages according to proof of oppression, fraud, and/or malice, and

8   for each and every violation of the Peace Officer's Bill of Rights ;

9   13.   For interest on damages as awarded as allowed by law;

10   14.   For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal.

11   Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

12   15.   For costs incurred herein;

13   16.   For such other relief as the court deems just and proper;

14   17.   For a statement of decision.

15   ## **PRAYER**

16   WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

17   1.   For a determination that Defendants, and each of them, violated President Nichelini's

18        right to privacy;

19   2.   For a determination that Defendants, and each of them, defamed President Nichelini;

20   3.   For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

21   3300 *et seq.*, based on their conduct described herein;

22   4.   For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

23   3500 *et seq.*, based on their conduct described herein;

24   5.   For a determination that Defendants, and each of them, violated Cal. Labor Code §§

25   1100 *et seq.*, based on their conduct described herein;

26   6.   For a determination that Defendants, and each of them, engaged in unfair labor

27   practices and interfered with the VPOA's union activities, including by harassing, intimidating,

28   defaming, victimizing, and discriminating and retaliating against Plaintiffs;

7.      For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

8.      For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

9.      For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

10.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

11.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

12.     For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

13.     For damages in an amount according to proof but not less than $10,500,000.00;

14.     For special damages according to proof;

15.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

16.     For interest on damages as awarded as allowed by law;

17.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

18.     For costs incurred herein;

19.     For such other relief as the court deems just and proper;

20.     For a statement of decision.

**TWELFTH CAUSE OF ACTION**

**(Whistleblower Retaliation – Cal. Labor Code § 1102)**

**(President Nichelini Against All Defendants)**

301.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 300 as though fully set forth herein.

302.    City Defendants, and each of them, knew that President Nichelini was engaged in protected, concerted activity on behalf of himself, the VPOA, and VPOA members when President Nichelini repeatedly engaged in whistleblowing activity, including, but not limited to, publicizing City Defendants' and each of them, violations of state and federal law, including violations of the California Penal Code, the California Evidence Code, the State Constitution and Federal Constitution, the MMBA, the Peace Officer's Bill of Rights , and the Ralph C. Dills Act, among others.

303.    City Defendants, and each of them, purposefully and intentionally subjected President Nichelini to adverse employment actions because City Defendants, and each of them, knew that President Nichelini was engaged in protected, concerted activity on behalf of himself, the VPOA, and VPOA members when President Nichelini repeatedly engaged in whistleblowing activity, including, but not limited to, publicizing City Defendants' and each of them, violations of state and federal law, including violations of the California Penal Code, the California Evidence Code, the State Constitution and Federal Constitution, the MMBA, the Peace Officer's Bill of Rights, and the Ralph C. Dills Act, among others, with the purpose and design to prevent President Nichelini from continuing to engage in whistleblowing activity.

304.    A causal link exists between City Defendants' and each of them, knowledge that President Nichelini was engaged in protected, concerted activity on behalf of himself, the VPOA, and VPOA members when President Nichelini repeatedly engaged in whistleblowing activity, including, but not limited to, publicizing City Defendants' and each of them, violations of state and federal law, including violations of the State Constitution and Federal Constitution, the Meyers-Milias-Brown Act, the Peace Officer's Bill of Rights, and the Ralph C. Dills Act, among others, when City Defendants, and each of them, purposefully and intentionally subjected President

1  Nichelini to adverse employment actions with the purpose and design to prevent President Nichelini

2  from continuing to engage in whistleblowing activity.

3      305.   City Defendants, and each of them, including GREG NYHOFF, ANNE

4  CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

5  ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

6  MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, and

7  willingly participated in the formation of the aforementioned official polices, and promulgated,

8  adopted, and ratified the aforementioned plans to target, harass, intimidate, bully, defame, retaliate

9  against, wrongfully terminate, and interfere with the free speech and associational rights of

10  President Nichelini, including by interfering with his political activities, including whistleblowing

11  activities, showing City Defendants, and each of them, thus acted with fraud, oppression, and/or

12  malice.

13      306.   As a direct and proximate result of Defendants', and each of them, illegal conduct,

14  Plaintiff has suffered physical and/or mental anguish, past lost wages, future lost wages, medical

15  damages, special damages, reputational harm, embarrassment, and humiliation, among other

16  things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff

17  has been damaged in an amount according to proof but not less than $10,500,000.00.

18      307.   Because of the unlawful acts of City Defendants, and each of them, as described

19  herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

20  because of this proceeding in amounts that cannot yet be determined precisely, which are

21  recoverable.  Plaintiffs are entitled to damages for each violation pursuant to Cal. Labor Code §

22  1103.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction

23  with this litigation.

24                    **PRAYER**

25  WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

26      1.  For a determination that Defendants, and each of them, violated President Nichelini's

27          right to privacy;

28      2.      For a determination that Defendants, and each of them, defamed President Nichelini;

3.      For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3300 *et seq.*, based on their conduct described herein;

4.      For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3500 *et seq.*, based on their conduct described herein;

5.      For a determination that Defendants, and each of them, violated Cal. Labor Code §§ 1100 *et seq.*, based on their conduct described herein;

6.      For a determination that Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

7.      For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

8.      For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

9.      For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

10.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

11.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

12.     For an order that Defendants place and retain an acknowledgment in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgment that the allegations against President Nichelini are unsubstantiated;

13.     For damages in an amount according to proof but not less than $10,500,000.00;

14.     For special damages according to proof;

15.     For punitive damages according to proof of oppression, fraud, and/or malice, and

1    for each and every violation of the Peace Officer's Bill of Rights ;

2          16.    For interest on damages as awarded as allowed by law;

3          17.    For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal.

4    Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

5          18.    For costs incurred herein;

6          19.    For such other relief as the court deems just and proper;

7          20.    For a statement of decision.

8                          **THIRTEENTH CAUSE OF ACTION**

9                                  **(Negligence)**

10                   **(President Nichelini Against All Defendants)**

11         308.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs

12   1 through 307 as though fully set forth herein.

13         309.    California Gov't Code §§ 815.2 and 815.3 provide liability for public entities for

14   harm proximately caused by an act or omission of an employee of the public entity.

15         310.    City Defendants, and each of them, employed all VPOA members, including

16   President Nichelini, during all relevant times and events herein stated.

17         311.    City Defendants, and each of them, owed a duty of due care to Plaintiffs because a

18   special employment relationship exists between City Defendants, and each of them, and Plaintiffs.

19         312.    City Defendants, and each of them, breached their duty of care by harassing,

20   intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs, and by

21   treating Plaintiffs disparately and unfairly, as described herein.

22         313.    City Defendants, and each of them, including GREG NYHOFF, ANNE

23   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

24   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

25   MEISSNER, and ROZZANA VERDER-ALIGA each were personally and individually

26   responsible for exercising due care in ensuring that the VPD and Defendant WILLIAMS respected

27   and protected the rights of the VPOA and its members, including President Nichelini, but instead

28   allowed Defendant WILLIAMS to dismantle the VPOA leadership and scapegoat its members as

1   responsible for the leadership inadequacies of City Defendants, and each of them, including by

2   promulgating, adopting, and ratifying a plan to negligently insulate Defendant WILLIAMS from

3   his misconduct toward VPOA members by associating themselves and each other with said

4   misconduct, and adopting and ratifying said misconduct, including, but not limited to, targeting,

5   harassing, intimidating, bullying, defaming, retaliating against, wrongfully terminating, and

6   interfering with the free speech and associational rights of VPOA members, including President

7   Nichelini, including by interfering with the political activities of VPOA members and the union as

8   a whole, creating a foreseeable risk of harm to Plaintiffs and to Plaintiffs' rights.

9       314.   City Defendants, and each of them, including GREG NYHOFF, ANNE

10   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

11   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

12   MEISSNER, and ROZZANA VERDER-ALIGA each were personally and individually

13   responsible for exercising due care in ensuring that the VPD and Defendant WILLIAMS respected

14   and protected the rights of the VPOA and its members, including President Nichelini, but instead

15   allowed Defendant WILLIAMS to "reform" the VPD, including the failure of City Defendants, and

16   each of them, to exercise due care regarding employment decisions related to VPOA members, in

17   particular President Nichelini, among others, and by negligently ratifying and adopting the

18   employment decisions made by Defendant WILLIAMS as the employment decisions of all City

19   Defendants, and each of them, creating a foreseeable risk of harm to Plaintiffs and to Plaintiffs'

20   rights.

21       315.   City Defendants' and each of them, acts and omissions, as described herein,

22   including the abdication of their proper oversight role of the VPD and Defendant WILLIAMS,

23   breached the duties City Defendants, and each of them, owed to Plaintiffs.

24       316.   City Defendants, and each of them, including GREG NYHOFF, ANNE

25   CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

26   ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

27   MEISSNER, and ROZZANA VERDER-ALIGA each were personally and individually

28   responsible for exercising due care in ensuring that the VPD and Defendant WILLIAMS respected

1   and protected the rights of the VPOA and its members, including President Nichelini, but instead

2   allowed Defendant WILLIAMS to negligently violate the state and federal law and the rights of

3   VPOA members, including under the State Constitution and Federal Constitution, including those

4   of President Nichelini, including by and through Defendants', and each of them, acts and omissions,

5   as described herein, creating a foreseeable risk of harm to Plaintiffs and to Plaintiffs' rights.

6       317.   Plaintiff has experienced emotional, psychological, financial, reputational, and

7   professional harm as a result of City Defendants' and each of them, breaches of the duties they

8   owed to Plaintiff.

9       318.   City Defendants' and each of them, negligence, as described herein, was a

10  substantial factor in causing Plaintiff's harm, and City Defendants' and each of them, negligence

11  was the legal and proximate cause of Plaintiff's harm.

12      319.   As a direct and proximate result of Defendants', and each of them, illegal conduct,

13  Plaintiff has suffered physical and/or mental anguish, past lost wages, future lost wages, medical

14  damages, special damages, reputational harm, embarrassment, and humiliation, among other

15  things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff

16  has been damaged in an amount according to proof but not less than $10,500,000.00

17      320.   Because of the negligent acts of City Defendants, and each of them, as described

18  herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

19  because of this proceeding in amounts that cannot yet be determined precisely, which are

20  recoverable.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in

21  conjunction with this litigation.

22                              **PRAYER**

23  WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

24      1.  For a determination that Defendants, and each of them, violated President Nichelini's

25          right to privacy;

26      2.  For a determination that Defendants, and each of them, defamed President Nichelini;

27      3.  For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

28  3300 *et seq*., based on their conduct described herein;

4. For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3500 *et seq*., based on their conduct described herein;

5. For a determination that Defendants, and each of them, violated Cal. Labor Code §§ 1100 *et seq*., based on their conduct described herein;

6. For a determination that Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

7. For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

8. For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

9. For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

10. For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

11. For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

12. For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

13. For damages in an amount according to proof but not less than $10,500,000.00;

14. For special damages according to proof;

15. For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights ;

16. For interest on damages as awarded as allowed by law;

17. For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

18. For costs incurred herein;

19. For such other relief as the court deems just and proper;

20. For a statement of decision.

**FOURTEENTH CAUSE OF ACTION**

**(Negligent Infliction of Emotional Distress)**

**(President Nichelini Against All Defendants)**

321. Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 320 as though fully set forth herein.

322. California Gov't Code §§ 815.2 and 815.3 provide liability for public entities for harm proximately caused by an act or omission of an employee of the public entity.

323. City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each were personally and individually responsible for exercising due care in ensuring that the VPD and Defendant WILLIAMS respected and protected the rights of the VPOA and its members, including President Nichelini, but instead allowed Defendant WILLIAMS to dismantle the VPOA leadership and scapegoat its members as responsible for the leadership inadequacies of City Defendants, and each of them, including by promulgating, adopting, and ratifying a plan to negligently insulate Defendant WILLIAMS from his misconduct toward VPOA members by associating themselves and each other with said misconduct, and adopting and ratifying said misconduct, including, but not limited to, targeting, harassing, intimidating, bullying, defaming, retaliating against, wrongfully terminating, and interfering with the free speech and associational rights of VPOA members, including President Nichelini, including by interfering with the political activities of VPOA members and the union as a whole, creating a foreseeable risk of harm to Plaintiffs and to Plaintiffs' rights.

98

324.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each were personally and individually responsible for exercising due care in ensuring that the VPD and Defendant WILLIAMS respected and protected the rights of the VPOA and its members, including President Nichelini, but instead allowed Defendant WILLIAMS to "reform" the VPD, including the failure of City Defendants, and each of them, to exercise due care regarding employment decisions related to VPOA members, in particular President Nichelini, among others, and by negligently ratifying and adopting the employment decisions made by Defendant WILLIAMS as the employment decisions of all City Defendants, and each of them, creating a foreseeable risk of harm to Plaintiffs and to Plaintiffs' rights.

325.   City Defendants' and each of them, acts and omissions, as described herein, including the abdication of their proper oversight role of the VPD and Defendant WILLIAMS, breached the duties City Defendants, and each of them, owed to Plaintiffs.

326.   City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each were personally and individually responsible for exercising due care in ensuring that the VPD and Defendant WILLIAMS respected and protected the rights of the VPOA and its members, including President Nichelini, but instead allowed Defendant WILLIAMS to negligently violate the state and federal law and the rights of VPOA members, including under the State Constitution and Federal Constitution, including those of President Nichelini, including by and through Defendants', and each of them, acts and omissions, as described herein, creating a foreseeable risk of harm to Plaintiffs and to Plaintiffs' rights.

327.   As a direct and proximate result of City Defendants' and each of them, negligent conduct, as described herein, President Nichelini has suffered, and will continue to suffer, serious emotional distress, including suffering, anguish, horror, nervousness, grief, anxiety, worry, shock,

1  humiliation, and shame.

2      328.    Moreover, a reasonable person, normally constituted, would be unable to cope with

3  the mental stress engendered by the circumstances arising out of City Defendants' and each of

4  them, negligent conduct, as described herein.

5      329.    Further, City Defendants' and each of them, negligent conduct was a substantial

6  factor in causing President Nichelini's serious emotional distress, as described herein.

7      330.    As a direct and proximate result of Defendants', and each of them, illegal conduct,

8  Plaintiff has suffered physical and/or mental anguish, past lost wages, future lost wages, medical

9  damages, special damages, reputational harm, embarrassment, and humiliation, among other

10 things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff

11 has been damaged in an amount according to proof but not less than $10,500,000.00.

12     331.    Because of the negligent acts of City Defendants, and each of them, as described

13 herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

14 because of this proceeding in amounts that cannot yet be determined precisely, which are

15 recoverable.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in

16 conjunction with this litigation.

17                            **PRAYER**

18 WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

19     1.    For a determination that Defendants, and each of them, violated President Nichelini's

20         right to privacy;

21     2.    For a determination that Defendants, and each of them, defamed President Nichelini;

22     3.    For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

23 3300 *et seq*., based on their conduct described herein;

24     4.    For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

25 3500 *et seq*., based on their conduct described herein;

26     5.    For a determination that Defendants, and each of them, violated Cal. Labor Code §§

27 1100 *et seq*., based on their conduct described herein;

28

Third Amended Complaint for Damages and
Demand for Jury Trial          100          *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

6.  For a determination that Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

7.  For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

8.  For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

9.  For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

10.  For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

11.  For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

12.  For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

13.  For damages in an amount according to proof but not less than $10,500,000.00;

14.  For special damages according to proof;

15.  For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights;

16.  For interest on damages as awarded as allowed by law;

17.  For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

18.  For costs incurred herein;

19.  For such other relief as the court deems just and proper;

Third Amended Complaint for Damages and
Demand for Jury Trial                    101                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                               Case No. 2:21-cv-00454-KJM-CKD

20.     For a statement of decision.

## FIFTEENTH CAUSE OF ACTION

### (Negligent Supervision)

### (President Nichelini Against All Defendants *Except* Defendant WILLIAMS)

332.    Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 331 as though fully set forth herein.

333.    California Gov't Code §§ 815.2 and 815.3 provide liability for public entities for harm proximately caused by an act or omission of an employee of the public entity.

334.    City Defendants, and each of them, employed all VPOA members, including President Nichelini, during all relevant times and events herein stated.

335.    City Defendants, and each of them, owed a duty of due care to Plaintiffs because a special employment relationship exists between City Defendants, and each of them, and Plaintiffs.

336.    City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each were personally and individually responsible for exercising due care in ensuring that the VPD and Defendant WILLIAMS respected and protected the rights of the VPOA and its members, including President Nichelini, but failed to exercise due care in preventing Defendant WILLIAMS from engaging in efforts to dismantle the VPOA leadership and scapegoat its members as responsible for the leadership inadequacies of City Defendants, and each of them, including by promulgating, adopting, and ratifying a plan to negligently insulate Defendant WILLIAMS from his misconduct toward VPOA members by associating themselves and each other with said misconduct, and adopting and ratifying said misconduct, including, but not limited to, targeting, harassing, intimidating, bullying, defaming, retaliating against, wrongfully terminating, and interfering with the free speech and associational rights of VPOA members, including President Nichelini, including by interfering with the political activities of VPOA members and the union as a whole, creating a foreseeable risk of harm to Plaintiffs and to Plaintiffs' rights.

Third Amended Complaint for Damages and
Demand for Jury Trial                    102            *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

337. City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each were personally and individually responsible for exercising due care in ensuring that the VPD and Defendant WILLIAMS respected and protected the rights of the VPOA and its members, including President Nichelini, but failed to exercise due care in preventing Defendant WILLIAMS from engaging in efforts to "reform" the VPD, including the failure of City Defendants, and each of them, to exercise due care regarding employment decisions related to VPOA members, in particular President Nichelini, among others, and by negligently ratifying and adopting the employment decisions made by Defendant WILLIAMS as the employment decisions of all City Defendants, and each of them, creating a foreseeable risk of harm to Plaintiffs and to Plaintiffs' rights.

338. City Defendants' and each of them, acts and omissions, as described herein, including the abdication of their proper oversight role of the VPD and Defendant WILLIAMS, breached the duties City Defendants, and each of them, owed to Plaintiffs.

339. City Defendants, and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each were personally and individually responsible for exercising due care in ensuring that the VPD and Defendant WILLIAMS respected and protected the rights of the VPOA and its members, including President Nichelini, but failed to exercise due care in preventing Defendant WILLIAMS from engaging in efforts to negligently violate the state and federal law and the rights of VPOA members, including under the State Constitution and Federal Constitution, including those of President Nichelini, including by and through Defendants', and each of them, acts and omissions, as described herein, creating a foreseeable risk of harm to Plaintiffs and to Plaintiffs' rights.

340. City Defendants, and each of them, did, and do, employ Defendant WILLIAMS, and at all relevant times referenced herein, Defendant WILLIAMS was an employee of City

1   Defendants, and each of them.

2          341.   Plaintiff was harmed by Defendant WILLIAMS, and City Defendants, and each of

3   them, are responsible for Plaintiff's harm because City Defendants negligently supervised

4   Defendant WILLIAMS.

5          342.   Defendant WILLIAMS is unfit to perform the duties of Police Chief for the City of

6   Vallejo because Defendant WILLIAMS repeatedly violated the rights of Plaintiffs, putting them

7   and other VPOA members at risk of having their constitutional and statutory rights further violated.

8          343.   City Defendants, and each of them, should have known and in fact did know that

9   Defendant WILLIAMS was unfit to perform the duties of Police Chief because City Defendants,

10  and each of them, noticed that Defendant WILLIAMS repeatedly violated the rights of Plaintiff

11  and other VPOA members and that Defendant WILLIAMS' unfitness put Plaintiff and VPOA

12  members at risk of having their constitutional and statutory rights further violated, and City

13  Defendants.

14         344.   Plaintiff has experienced emotional, psychological, financial, reputational, and

15  professional harm as a result of City Defendants and each of them, breaches of the duties they owed

16  to Plaintiffs.

17         345.   City Defendants and each of them, negligence was a substantial factor in causing

18  Plaintiff's harm, and City Defendants' and each of them, negligence was the legal and proximate

19  cause of Plaintiff's harm.

20         346.   As a direct and proximate result of Defendants' and each of them, illegal conduct,

21  Plaintiff has suffered physical and/or mental anguish, past lost wages, future lost wages, medical

22  damages, special damages, reputational harm, embarrassment, and humiliation, among other

23  things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff

24  has been damaged in an amount according to proof but not less than $10,500,000.00.

25         347.   Because of the negligent acts of City Defendants' and each of them, as described

26  herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

27  because of this proceeding in amounts that cannot yet be determined precisely, which are

28

1   recoverable.   Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in

2   conjunction with this litigation.

3                                                **<u>PRAYER</u>**

4   WHEREFORE, Plaintiff Michael Nichelini prays for judgement as follows:

5        1.   For a determination that Defendants, and each of them, violated President Nichelini's

6             right to privacy;

7        2.       For a determination that Defendants, and each of them, defamed President Nichelini;

8        3.       For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

9   3300 *et seq*., based on their conduct described herein;

10       4.       For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

11  3500 *et seq*., based on their conduct described herein;

12       5.       For a determination that Defendants, and each of them, violated Cal. Labor Code §§

13  1100 *et seq*., based on their conduct described herein;

14       6.       For a determination that Defendants, and each of them, engaged in unfair labor

15  practices and interfered with the VPOA's union activities, including by harassing, intimidating,

16  defaming, victimizing, and discriminating and retaliating against Plaintiffs;

17       7.       For a determination that Defendants, and each of them, engaged in unfair labor

18  practices against Plaintiffs in violation of California state law;

19       8.       For a determination that Defendants, and each of them, were negligent in their

20  treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant

21  WILLIAMS;

22       9.       For a determination that Defendant WILLIAMS's conduct was extreme and

23  outrageous and the cause of President Nichelini's severe emotional distress;

24       10.      For a determination that Defendants, and each of them, wrongfully terminated

25  President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code

26  § 96(k);

27       11.      For a determination that Defendants, and each of them, wrongfully terminated

28  President Nichelini;

12.     For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

13.     For damages in an amount according to proof but not less than $10,500,000.00;

14.     For special damages according to proof;

15.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights;

16.     For interest on damages as awarded as allowed by law;

17.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

18.     For costs incurred herein;

19.     For such other relief as the court deems just and proper;

20.     For a statement of decision.

## SIXTEENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### (President Nichelini Against Defendant WILLIAMS)

348.     Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 347 as though fully set forth herein.

349.     California Gov't Code §§ 815.2 and 815.3 provide liability for public entities for harm proximately caused by an act or omission of an employee of the public entity.

350.     At all relevant times stated herein, Defendant WILLIAMS was the direct supervisors of Plaintiff and every member of the VPOA and was thus in a position of authority over Plaintiff.

351.     Defendant WILLIAMS targeted Plaintiff and other VPOA members for harassment, intimidation, defamation, victimization, discrimination, and retaliation.  In doing so, Defendant WILLIAMS' conduct was extreme and outrageous.

Third Amended Complaint for Damages and
Demand for Jury Trial                                    106                     *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                                                Case No. 2:21-cv-00454-KJM-CKD

352.    In targeting Plaintiff for harassment, intimidation, defamation, victimization, discrimination, and retaliation, Defendant WILLIAMS intended to harass, intimidate, defame, victimize, and discriminate and retaliate, and was substantially certain that such harassment, intimidation, defamation, victimization, discrimination, and retaliation against Plaintiff would result from his conduct.

353.    In targeting Plaintiff for harassment, intimidation, defamation, victimization, discrimination, and retaliation, Defendant WILLIAMS intended to cause President Nichelini severe emotional distress, and Defendant WILLIAMS acted with reckless disregard of the probability President Nichelini would suffer severe emotional distress, knowing that President Nichelini would bear the brunt of Defendant WILLIAMS' extreme and outrageous conduct towards Plaintiff, and thus acted with oppression, fraud, and/or malice.

354.    As a direct and proximate result of Defendant WILLIAMS' extreme and outrageous conduct, President Nichelini did, and does, suffer severe emotional distress.

355.    Despite being on notice that President Nichelini was in fact suffering severe emotional distress as a direct and proximate result of the actions of Defendant WILLIAMS, Defendant WILLIAMS nonetheless continued to engage in extreme and outrageous conduct towards Plaintiffs, and towards President Nichelini, including the intentional infliction shame, humiliation, embarrassment, fear, apprehension, and physiological harm on VPOA members, including President Nichelini.

356.    As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff has suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff has been damaged in an amount according to proof but not less than $10,500,000.00.

357.    Because of the intentional acts of Defendant WILLIAMS, as described herein, President Nichelini has incurred, and will continue to incur, actual damages, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in

1    conjunction with this litigation.

2                                    **PRAYER**

3    WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

4          1.    For a determination that Defendants, and each of them, violated President Nichelini's

5                right to privacy;

6          2.    For a determination that Defendants, and each of them, defamed President Nichelini;

7          3.    For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

8    3300 *et seq*., based on their conduct described herein;

9          4.    For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

10   3500 *et seq*., based on their conduct described herein;

11         5.    For a determination that Defendants, and each of them, violated Cal. Labor Code §§

12   1100 *et seq*., based on their conduct described herein;

13         6.    For a determination that Defendants, and each of them, engaged in unfair labor

14   practices and interfered with the VPOA's union activities, including by harassing, intimidating,

15   defaming, victimizing, and discriminating and retaliating against Plaintiffs;

16         7.    For a determination that Defendants, and each of them, engaged in unfair labor

17   practices against Plaintiffs in violation of California state law;

18         8.    For a determination that Defendants, and each of them, were negligent in their

19   treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant

20   WILLIAMS;

21         9.    For a determination that Defendant WILLIAMS's conduct was extreme and

22   outrageous and the cause of President Nichelini's severe emotional distress;

23         10.   For a determination that Defendants, and each of them, wrongfully terminated

24   President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code

25   § 96(k);

26         11.   For a determination that Defendants, and each of them, wrongfully terminated

27   President Nichelini;

28

12.     For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

13.     For damages in an amount according to proof but not less than $10,500,000.00;

14.     For special damages according to proof;

15.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights;

16.     For interest on damages as awarded as allowed by law;

17.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

18.     For costs incurred herein;

19.     For such other relief as the court deems just and proper;

20.     For a statement of decision.

## SEVENTEENTH CAUSE OF ACTION

**(Wrongful Discharge for Lawful Off-Duty Conduct – Cal. Labor Code § 96(k))**

**(President Nichelini Against all Defendants)**

358.     Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 357 as though fully set forth herein.

359.     Under Cal. Labor Code §§ 96(k) and 98.6, an employer may not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the applicant engaged in lawful conduct during nonworking hours away from the employer's premises.

360.     Under Cal. Labor Code §§ 98.7 and 244, no requirement to exhaust administrative remedies applies to causes of action brought under Cal. Labor Code § 96(k).

361.     Defendants, and each of them, improperly and pretextually terminated President Nichelini on March 31, 2021, only after President Nichelini filed a federal civil rights complaint against Defendants, and each of them, for violating President Nichelini's and the VPOA's rights.

Third Amended Complaint for Damages and
Demand for Jury Trial                          109                  *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                   Case No. 2:21-cv-00454-KJM-CKD

362.   In improperly and pretextually terminating President Nichelini, Defendants, and each of them, specifically cited President Nichelini's protected, concerted, lawful, off-duty communication with a member formerly of the local media on December 7, 2020.

363.   By improperly and pretextually terminating President Nichelini, specifically citing President Nichelini's protected, concerted, lawful, off-duty communication with a member formerly of the local media on December 7, 2020 as a reason for terminating President Nichelini, Defendants, and each of them, violated Cal. Labor Code § 96(k).

364.   City Defendants' and each of them, including GREG NYHOFF, ANNE CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly, intentionally, purposefully, and willingly approved, endorsed, adopted, and ratified the employment practices and decisions of Defendant WILLIAMS, including the knowingly false dissemination of the windshield charges, City Defendants' and each of them, knowing and intentional leaking of those charges to the press, the intentional failure to have President Nichelini be heard by a neutral decision maker, including by improperly and pretextually terminating President Nichelini, specifically citing President Nichelini's protected, concerted, lawful, off-duty communication with a member formerly of the local media on December 7, 2020, including City Defendants' and each of them, personal animus toward President Nichelini in seeking his termination for the express purpose of removing him as President of the VPOA, including City Defendants' and each of them, in fact pretextually terminating President Nichelini in a retaliatory and discriminatory fashion, only after he filed a federal civil rights complaint, for the express purpose of removing him as President of the VPOA, and City Defendants' and each of them, purposeful public disparagement of President Nicheini and his fitness for his profession for the express purpose of removing him as President of the VPOA, thus acting with oppression, fraud, and/or malice.

365.   As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff has suffered physical and/or mental anguish, past lost wages, future lost wages, medical

Third Amended Complaint for Damages and
Demand for Jury Trial                    110                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                Case No. 2:21-cv-00454-KJM-CKD

1  damages, special damages, reputational harm, embarrassment, and humiliation, among other

2  things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff

3  has been damaged in an amount according to proof but not less than $10,500,000.00.

4      366.   Because of the unlawful acts of City Defendants, and each of them, as described

5  herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs

6  because of this proceeding in amounts that cannot yet be determined precisely, which are

7  recoverable.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in

8  conjunction with this litigation.

9                                  **PRAYER**

10 WHEREFORE, Plaintiff Michael Nichelini prays judgment as follows:

11     1.  For a determination that Defendants, and each of them, violated President Nichelini's

12          right to privacy;

13     2.   For a determination that Defendants, and each of them, defamed President Nichelini;

14     3.   For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

15 3300 *et seq.*, based on their conduct described herein;

16     4.   For a determination that Defendants, and each of them, violated Cal. Gov. Code §§

17 3500 *et seq.*, based on their conduct described herein;

18     5.   For a determination that Defendants, and each of them, violated Cal. Labor Code §§

19 1100 *et seq.*, based on their conduct described herein;

20     6.   For a determination that Defendants, and each of them, engaged in unfair labor

21 practices and interfered with the VPOA's union activities, including by harassing, intimidating,

22 defaming, victimizing, and discriminating and retaliating against Plaintiffs;

23     7.   For a determination that Defendants, and each of them, engaged in unfair labor

24 practices against Plaintiffs in violation of California state law;

25     8.   For a determination that Defendants, and each of them, were negligent in their

26 treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant

27 WILLIAMS;

28

9.      For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

10.      For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

11.      For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

12.      For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

13.      For damages in an amount according to proof but not less than $10,500,000.00;

14.      For special damages according to proof;

15.      For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights;

16.      For interest on damages as awarded as allowed by law;

17.      For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

18.      For costs incurred herein;

19.      For such other relief as the court deems just and proper;

20.      For a statement of decision.

## EIGHTEENTH CAUSE OF ACTION

### (Wrongful Termination)

### (President Nichelini Against all Defendants)

367.      Plaintiffs incorporate by reference each and every allegation set forth in Paragraphs 1 through 366 as though fully set forth herein.

368.      Defendants, and each of them, improperly and pretextually terminated President Nichelini on March 31, 2021, only after President Nichelini filed a federal civil rights complaint

Third Amended Complaint for Damages and
Demand for Jury Trial                          112                 *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                                Case No. 2:21-cv-00454-KJM-CKD

1   against Defendants, and each of them, for violating President Nichelini's and the VPOA's rights.

2   369.   Defendants, and each of them, improperly and pretextually terminated President

3   Nichelini for activities protected by the Federal and State Constitutions, including for speech and

4   associational activities, as well as protected concerted activities, protected by the First Amendment

5   to the Constitution of the United States and Article I of the California Constitution.

6   370.   By improperly and pretextually terminating President Nichelini, Defendants, and

7   each of them, breached President Nichelini's employment contract and civil service protections as

8   well as the covenant of good faith and fair dealing contained therein.

9   371.   By improperly and pretextually terminating President Nichelini, Defendants, and

10  each of them, improperly retaliated against President Nichelini and the VPOA for engaging in

11  whistleblowing and for pointing out violations by Defendants, and each of them, of California

12  employment law.

13  372.   By improperly and pretextually terminating President Nichelini, Defendants, and

14  each of them, discriminated against President Nichelini on the basis of his political activities and/or

15  political affiliations, and further violated the VPOA's right to be free from interference with its

16  political activities and/or political affiliations in an effort by Defendants, and each of them, to direct,

17  control, or tend to direct or control, the political activities of the VPOA and the political affiliations

18  of VPOA members.

19  373.   By improperly and pretextually terminating President Nichelini, Defendants, and

20  each of them, violated California public policy by punishing President Nichelini for his lawful

21  conduct during non-working hours and away from the employer's premises.

22  374.   City Defendants, and each of them, including GREG NYHOFF, ANNE

23  CARDWELL, BOB SAMPAYAN, HERMIE SUNGA, SHAWNY WILLIAMS, CRISTINA

24  ARRIOLA, HAKEEM BROWN, PIPPIN DEW, MINA DIAZ, ROBERT McCONNELL, KATY

25  MEISSNER, and ROZZANA VERDER-ALIGA each personally, individually, knowingly,

26  intentionally, purposefully, and willingly approved, endorsed, adopted, and ratified the

27  employment practices and decisions of Defendant WILLIAMS, including the knowingly false

28  dissemination of the windshield charges, City Defendants' and each of them, knowing and

Third Amended Complaint for Damages and
Demand for Jury Trial                                    113                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                                Case No. 2:21-cv-00454-KJM-CKD

intentional leaking of those charges to the press, the intentional failure to have President Nichelini be heard by a neutral decision maker, including by improperly and pretextually terminating President Nichelini, specifically citing President Nichelini's protected, concerted, lawful, off-duty communication with a member formerly of the local media on December 7, 2020, including City Defendants' and each of them, personal animus toward President Nichelini in seeking his termination for the express purpose of removing him as President of the VPOA, including City Defendants' and each of them, in fact pretextually terminating President Nichelini in a retaliatory and discriminatory fashion, only after he filed a federal civil rights complaint, for the express purpose of removing him as President of the VPOA, and City Defendants' and each of them, purposeful public disparagement of President Nicheini and his fitness for his profession for the express purpose of removing him as President of the VPOA,  thus acting with oppression, fraud, and/or malice.

375.     As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff has suffered physical and/or mental anguish, past lost wages, future lost wages, medical damages, special damages, reputational harm, embarrassment, and humiliation, among other things.  As a direct and proximate result of Defendants', and each of them, illegal conduct, Plaintiff has been damaged in an amount according to proof but not less than $10,500,000.00.

376.     Because of the unlawful acts of City Defendants, and each of them, as described herein, Plaintiffs have incurred, and will continue to incur, actual damages, attorney fees and costs because of this proceeding in amounts that cannot yet be determined precisely, which are recoverable.  Plaintiffs are entitled to attorney fees, costs, and punitive damages pursuant to Cal. Gov. Code § 3309.5.  Accordingly, Defendants are responsible for the fees and costs Plaintiffs incur in conjunction with this litigation.

## **PRAYER**

WHEREFORE, Plaintiff Michael Nichelini prays for judgment as follows:

1. For a determination that Defendants, and each of them, violated President Nichelini's right to privacy;

2.     For a determination that Defendants, and each of them, defamed President Nichelini;

Third Amended Complaint for Damages and
Demand for Jury Trial                                          114                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD

3.      For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3300 *et seq*., based on their conduct described herein;

4.      For a determination that Defendants, and each of them, violated Cal. Gov. Code §§ 3500 *et seq*., based on their conduct described herein;

5.      For a determination that Defendants, and each of them, violated Cal. Labor Code §§ 1100 *et seq*., based on their conduct described herein;

6.      For a determination that Defendants, and each of them, engaged in unfair labor practices and interfered with the VPOA's union activities, including by harassing, intimidating, defaming, victimizing, and discriminating and retaliating against Plaintiffs;

7.      For a determination that Defendants, and each of them, engaged in unfair labor practices against Plaintiffs in violation of California state law;

8.      For a determination that Defendants, and each of them, were negligent in their treatment of Plaintiffs and that Defendants, and each of them, negligently supervised Defendant WILLIAMS;

9.      For a determination that Defendant WILLIAMS's conduct was extreme and outrageous and the cause of President Nichelini's severe emotional distress;

10.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini for his engagement in lawful, off-duty conduct in violation of Cal. Labor Code § 96(k);

11.     For a determination that Defendants, and each of them, wrongfully terminated President Nichelini;

12.     For an order that Defendants place and retain an acknowledgement in President Nichelini's personnel file that the allegations against him are unsubstantiated, and additionally notify City employees electronically, and post in a conspicuous place in the VPD workplace, an acknowledgement that the allegations against President Nichelini are unsubstantiated;

13.     For damages in an amount according to proof but not less than $10,500,000.00;

14.     For special damages according to proof;

Third Amended Complaint for Damages and
Demand for Jury Trial                              115                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
                                                                          Case No. 2:21-cv-00454-KJM-CKD

15.     For punitive damages according to proof of oppression, fraud, and/or malice, and for each and every violation of the Peace Officer's Bill of Rights;

16.     For interest on damages as awarded as allowed by law;

17.     For an award of Plaintiffs' reasonable attorney's fees and costs pursuant to Cal. Code. Civ. Proc. § 1021.5 and 42 U.S.C. § 1988; and

18.     For costs incurred herein;

19.     For such other relief as the court deems just and proper;

20.     For a statement of decision.


DATED:  October 20, 2023                    **MASTAGNI HOLSTEDT, A.P.C**.


By: */s/ Grant A. Winter*
GRANT A. WINTER
Attorney for Plaintiffs

Third Amended Complaint for Damages and
Demand for Jury Trial                    116                    *Vallejo POA, et al. vs. City of Vallejo, et al.*
Case No. 2:21-cv-00454-KJM-CKD