1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   VALLEJO POLICE OFFICERS'              No.  2:21-cv-00454-DAD-CKD
     ASSOCIATION, et al.,
12
             Plaintiffs,
13
        v.                                 ORDER GRANTING DEFENDANTS'
14                                         MOTION TO DISMISS PLAINTIFFS' THIRD
     CITY OF VALLEJO, et al.,              AMENDED COMPLAINT AND CLOSING
15                                         THIS CASE
             Defendants.
16                                         (Doc. No. 42)

17

18          This matter is before the court on defendants' motion to dismiss filed on January 16, 2024.

19   (Doc. No. 42.)  On January 24, 2024, defendants' motion was taken under submission on the

20   papers pursuant to Local Rule 230(g).  (Doc. No. 43.)  For the reasons explained below,

21   defendants' motion to dismiss will be granted.

22                                    **BACKGROUND**

23          This case arises from the discipline imposed upon and subsequent termination from the

24   Vallejo Police Department ("VDP") of plaintiff Lieutenant Michael Nichelini, who also serves as

25   the president of the City of Vallejo's police union—plaintiff Vallejo Police Officers' Association

26   ("VPOA").  This lawsuit was filed by plaintiff Nichelini on behalf of himself and by plaintiff

27   VPOA on behalf of itself and its members.  In their operative third amended complaint ("TAC"),

28   plaintiffs allege as follows.

                                             1

A. **The Parties**

Plaintiff VPOA is the exclusively recognized collective bargaining agent for VPD officers of all ranks, except the chief of police and the newly-created position, deputy chief of police. (Doc. No. 39 at ¶ 14.)  The VPOA's primary purpose includes representing its members in their relations with the City of Vallejo and advocating for their interests.  (*Id.*)  Plaintiff VPOA asserts its claims in this action on behalf of itself and its members.  (*Id.*)

Plaintiff Michael Nichelini is a former law enforcement officer with the VPD who was terminated from his position in March 2021.  (*Id.* at ¶¶ 10, 34.)  Before his termination, he had served fourteen years with the VPD.  (*Id.* at ¶ 34.)  He became the VPOA president on January 1, 2020.  (*Id.* at ¶ 44.)  Plaintiff Nichelini asserts his claims in his individual capacity as well as in his official capacity as president of the VPOA.  (*Id.* at ¶ 13.)

Plaintiffs named as defendants in this action the City of Vallejo (the "City") and the VPD (collectively, the "municipal defendants").  (*Id.* at ¶ 15.)  In addition, plaintiffs named the following individual defendants in their individual capacities:  police chief Shawny Williams; city manager Greg Nyhoff; assistant city manager Anne Cardwell; former mayor Bob Sampayan; and current and former city councilmembers Hermie Sunga, Cristina Arriola, Hakeem Brown, Pippin Dew, Mina Diaz, Robert McConnell, Katy Miessner, and Rozzana Verder-Aliga (collectively, the "individual defendants").  (*Id.* at 4–7.)  According to the TAC, all of the individual defendants were final policymakers for the City or the VPD.  (*Id.* at ¶¶ 16–27.)

B. **Factual Background**

The City and the VPD have been immersed in public controversy for over a decade due to the VPD's conduct and the City's endorsement of that conduct.  (Doc. No. 39 at ¶¶ 3, 36.)  The tensions within the City boiled over in 2019 after the contentious fatal shooting of Willie McCoy, an African-American resident of Vallejo, by VPD officers.  (*Id.* at ¶¶ 2, 37.)  This incident led to the election of plaintiff Nichelini as the new VPOA president and to the replacement of the police chief.  (*Id.* at ¶ 3.)  In September 2019, defendant Williams was appointed chief of police for the City, stepping into this role during a time of heightened tensions between the City's citizens and defendants.  (*Id.* at ¶ 38.)

2

Before and after changes to the Vallejo City Council in the 2020 election, defendants embraced a policy aimed at shielding defendant Williams from legal scrutiny, portraying his actions as representative of them rather than him.  (*Id.* at ¶ 39.)  Additionally, defendants undertook efforts to "reform" the VPD by assigning blame for mismanagement to rank-and-file VPOA members, including plaintiff Nichelini, in an attempt to avoid accountability.  (*Id.* at ¶ 40.) Additionally, defendants targeted former VPOA president Mat Mustard and then-current VPOA president plaintiff Nichelini with unfounded allegations to weaken the VPOA's leadership.  (*Id.* at ¶ 41.)  This "targeting" included at least five instances of alleged harassment between January and December 2020, each intended to interfere with the VPOA's concerted rights.  (*Id.* at ¶ 4.) The plan was orchestrated to pave the way for defendant Williams's preferred candidates to assume positions on the board of the VPOA.  (*Id.* at ¶ 41.)

A scheme was devised to remove plaintiff Nichelini from VPOA leadership by falsely branding him as a racist.  (*Id.* at ¶ 42.)  On March 4, 2020, plaintiff Nichelini, in his capacity as VPOA president, sent an email to fellow VPOA members discussing interactions with the public and the ongoing political dynamics between VPOA members and defendants, discussions which plaintiffs allege constitute matters of public concern.  (*Id.* at ¶ 45.)  Plaintiff Nichelini sent the email from his personal computer, using a software application he wanted to encourage VPOA members to use for communication amongst themselves.  (*Id.* at ¶ 46.)  The email contained a small image of one of VPD's earliest historic badges.  (*Id.* at ¶ 45.)  Unbeknownst to plaintiff Nichelini, the image of the badge bore a small engraving of a Gammadion cross (i.e., a swastika), which, when added to the badge around 1907, held no negative connotations.  (*Id.* at ¶ 46.) Despite plaintiff Nichelini's explanations, defendants Williams and Nyhoff later publicized the matter in an October 5, 2020 press release, falsely accusing plaintiff Nichelini of a hate crime. (*Id.* at ¶ 47.)

On July 15, 2020, defendant Williams placed plaintiff Nichelini on administrative leave and prohibited him from being in the VPD workplace based on defendant Williams's accusations that plaintiff Nichelini destroyed a windshield that was a crucial piece of evidence in a prominent officer-involved shooting incident that had occurred on June 2, 2020.  (*Id.* at ¶ 50.)  Subsequently,

1   defendants leaked false information about plaintiff Nichelini's alleged role in destroying the

2   windshield to the press.  (*Id.* at ¶ 51.)

3        Plaintiffs allege that the disciplinary action taken against plaintiff Nichelini in July 2020

4   was a response to plaintiff Nichelini's filing of grievances on behalf of the union.  (*Id.*)

5   Specifically, plaintiff Nichelini filed a grievance (with an unspecified entity) in May 2020 on

6   behalf of the union against the VPD regarding defendants' efforts to civilianize the public

7   information officer and officer recruitment positions.  (*Id.* at ¶ 48.)  In addition, in June 2020, he

8   filed a complaint with the California Public Employment Relations Board ("PERB") on behalf of

9   the VPOA against the VPD regarding defendants' efforts to civilianize these positions.  (*Id.*)

10  Plaintiffs allege, "[a]mong other things, the timing of the false accusations against [plaintiff]

11  Nichelini by [defendant] Williams evinces retaliatory intent."  (*Id.* at ¶ 51.)

12       On July 31, 2020, plaintiff Nichelini filed another complaint with the PERB against the

13  VPD on behalf of the VPOA, asserting that defendants were interfering with the VPOA's

14  protected activities through retaliation against him.  (*Id.* at ¶ 52.)  On August 21, 2020, defendants

15  responded to the VPOA's grievance regarding the public information officer and recruiting

16  positions, denying the grievance at Step Two.  (*Id.* at ¶ 54.)  On August 25, 2020, plaintiff

17  Nichelini filed a Step Three grievance on behalf of the VPOA against defendants regarding the

18  public information officer and recruiting positions.  (*Id.*)

19       A few days later, on August 28, 2020, plaintiff Nichelini received two notices of

20  interviews.  (*Id.* at ¶ 55.)[1]  The first notice was in relation to a Vallejo City Council meeting from

21  nearly a year prior, and the notice alleged dishonesty in an earlier internal affairs investigation.

22  (*Id.*)[2]  The second notice was given to plaintiff Nichelini from the VPD and regarded disparaging

23

---

24  [1]  From the allegations of the TAC, it is unclear whether plaintiff Nichelini was actually
    interviewed after receiving these interview notices.

25

26  [2]  In their TAC, plaintiffs do not specify from whom plaintiff Nichelini received the first notice.
    Additionally, although the allegations of the TAC are not entirely clear about who was allegedly
27  dishonest and who would be interviewed, the reasonable inference that can be drawn is that the
    notice of interview was intended to inform plaintiff Nichelini that he would be interviewed
28  concerning allegations that he had been dishonest in a previous investigation.

comments he had allegedly made to a human resources officer about defendant Williams.  (*Id.*)
Plaintiffs allege that the timing of these disciplinary notices evince retaliatory intent (*id.*),
presumably for plaintiff Nichelini's action of filing a Step Three grievance, though plaintiffs'
TAC does not allege specific facts in this regard.

On September 3, 2020, defendants subjected plaintiff Nichelini to an administrative
interrogation regarding the windshield evidence, the 1907 badge image, and a press release
plaintiff Nichelini had sent while performing his duties for the VPD.  (*Id.* at ¶ 56.)[3]  On
September 4, 2020, plaintiff Nichelini filed another grievance (with an unspecified entity) on
behalf of himself and the VPOA against defendants, citing discrimination against VPOA
members for engaging in protected, concerted activities.  (*Id.* at ¶ 57.)

Plaintiffs allege, "on information and belief," that five City employees formed a "group
referred to as the 'Legal and Policy Team # 2,'" though they do not specify precisely when this
group was formed.  (*Id*. at ¶ 58.)  The members of the group purportedly were defendants
Cardwell, Nyhoff, Williams, and two individuals not named as defendants in this action.  (*Id*.)
According to the TAC, this group "established a formal policy" to issue a proclamation regarding
the "public safety emergency in order to implement the VPOA reforms that were intended to
circumvent the speech rights, associational rights, due process rights, privacy rights, and many
other rights … that were held by Nichelini, the VPOA, and its members."  (*Id.* at ¶¶ 58, 59.)  On
September 21, 2020, the members of "Legal and Policy Team # 2" exchanged emails about their
plan for the city council closed session, which would be to convey to the Vallejo City Council the
need for a declaration of emergency to address police reform and discuss the problems the city
has had in working with the VPOA.  (*Id.* at ¶ 60.)  Plaintiffs allege that these emails "constitute a
formal policy, plan, or practice, and/or an act made by a final policymaker on behalf of the City
of Vallejo."  (*Id.* at ¶ 61.)  In addition, the "Legal and Policy Team # 2" had several meetings, and
plaintiffs allege that each one of these meetings similarly "constitute a formal policy, plan, or
practice, and/or an act made by a final policymaker on behalf of the City of Vallejo."  (*Id.* at

---

[3]  The TAC lacks any details about the press release, including its content, location of issuance, distribution, and the date it was sent.

¶¶ 76, 86, 88, 92, 113, 115, 140, 145.)  From September 2020 to April 2021, members of the "Legal and Policy Team #2" discussed the possible discipline and termination of plaintiff Nichelini.  (*See, e.g.*, *id.* at ¶¶ 63, 75, 81, 87, 89, 108, 110, 112, 116, 118, 120, 122, 127, 133, 135, 137, 139, 144, 148.)

On October 6, 2020, the Vallejo City Council voted unanimously to declare a public safety emergency, granting unprecedented powers to defendants, specifically defendant Nyhoff.  (*Id.* at ¶ 72.)  This empowerment allegedly aimed to facilitate the implementation of policy reforms within the VPOA and to enforce disciplinary measures against defendant Nichelini.  (*Id.*)  However, plaintiffs also allege that it served to circumvent the procedural and substantive rights of VPOA members, including those safeguarded by the Meyers-Milias-Brown Act, California Public Safety Officers Procedural Bill of Rights Act, and the City's "meet and confer" obligations.  (*Id.* at ¶ 72.)  The formal policy initiative to reform the VPOA was articulated in at least two written policy documents, including the "Resolution Adopting the Vallejo Police Reform Initiative" and the "City of Vallejo Proclamation of a Local Public Safety Emergency by the Vallejo City Council."  (*Id.* at ¶ 74.)  Subsequently, in October 2020, the VPOA filed several lawsuits alleging that the City had misused the emergency declaration to infringe upon the rights of VPOA members.  (*Id.* at ¶¶ 79, 80.)

On December 7, 2020, plaintiff Nichelini, acting in his capacity as VPOA president, responded to an email from a local newspaper reporter who was relocating to Georgia.  (*Id.* at ¶ 93.)  In that email, plaintiff Nichelini expressed concerns regarding the fairness of that reporter's reporting on VPOA members and the VPD.  (*Id.*)  On December 15, 2020, defendant Williams instructed the VPD deputy chief, Michael Kihmm, to notify plaintiff Nichelini that he was under an internal affairs investigation regarding his December 7, 2020 email.  (*Id.* at ¶¶ 5, 95.)  The notice cautioned plaintiff Nichelini that the investigation could potentially result in disciplinary action and falsely accused Nichelini of "sending an inappropriate and potentially threatening email to a member of the media."  (*Id.* at ¶ 6.)  Plaintiffs allege that the timing of this notice also evinces retaliatory intent (*id.* at ¶ 95), presumably for plaintiffs having filed lawsuits

/////

in October 2020, though again, plaintiffs do not specifically allege the cause of the asserted retaliation in their TAC.

On December 18, 2020, plaintiff Nichelini was interrogated regarding his December 7, 2020 email to the reporter.  (*Id.* at ¶¶ 7, 98.)  Following this interrogation, the City and the VPD issued a personnel report that, according to plaintiffs, contained inconsistencies, demonstrably false information about plaintiff, and conclusions divorced from the supporting evidence.  (*Id.* at ¶ 8.)  On December 21, 2020, plaintiff Nichelini received notice that the City intended to terminate his employment with the VPD.  (*Id.* at ¶¶ 9, 102.)

On March 31, 2021, defendants, through defendant Williams, delivered a notice of 40 hours of unpaid suspension to plaintiff Nichelini as discipline for the September 24, 2019 city council meeting incident.[4]  (*Id.* at ¶ 141.)  Further, the March 31, 2021 notice informed plaintiff Nichelini that he had been terminated from his position at the VPD.  (*Id.*)  The notice attempted to paint plaintiff Nichelini as being a "racist cop."  (*Id.* at ¶ 142.)  This allegation, according to plaintiffs, was baseless and damaging, aiming to permanently tarnish plaintiff Nichelini's career, professional reputation, and personal life.  (*Id.*)

Based on the foregoing allegations in their TAC, plaintiffs collectively assert the following five federal claims brought pursuant to 42 U.S.C. § 1983 against all defendants:  (1) a First Amendment free speech claim; (2) a First Amendment right to free association claim; (3) a Fourteenth Amendment substantive due process claim; (4) a Fourteenth Amendment procedural due process claim; and (5) a Fourteenth Amendment equal protection claim.  (Doc. No. 39.)  Additionally, the TAC includes thirteen asserted state law claims.  (*Id.*)

**C.    Procedural History**

On October 20, 2023, plaintiffs filed their operative TAC.  (Doc. No. 39.)  The court had previously dismissed plaintiffs' second amended complaint ("SAC") following a motion to dismiss brought by defendants, but had also granted plaintiffs leave to amend.  (Doc. No. 38.)  /////

---

[4]  Plaintiffs do not allege what occurred at the September 24, 2019 city council meeting.

Following a stipulation and minute order extending the time for defendants to respond to plaintiffs' TAC, (Doc. Nos. 40, 41), defendants timely filed the pending motion to dismiss on January 16, 2024, contending that plaintiffs' TAC suffers from the same deficiencies as their SAC.  (Doc. No. 42.)  In addition, in connection with their motion to dismiss, defendants filed a request that the court take judicial notice of the "City of Vallejo Proclamation of a Local Public Safety Emergency by the Vallejo City Council, dated October 6, 2020" (the "Proclamation"), as well as the "Resolution No. 20-121 N.C. Adopting the Vallejo Police Reform Initiative, adopted by the City Council at a special meeting held on October 6, 2020" (the "Resolution re Police Reform").[5]  (Doc. No. 42-1.)  On January 30, 2024, plaintiffs filed an opposition to the pending motion to dismiss, and on February 9, 2024, defendants filed a reply thereto.  (Doc. Nos. 44, 45.)

**LEGAL STANDARD**

**A.     Motion to Dismiss Under Rule 12(b)(1)**

"Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions."  *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021).  Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen*, 511 U.S. at 377 (internal citations omitted).  Subject matter jurisdiction is required; it cannot be forfeited or waived.  *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156.  Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may "challenge a federal court's jurisdiction over the subject matter of the complaint."  *Nat'l Photo*

---

[5]  Plaintiffs oppose defendants' request for judicial notice, arguing that "[t]he use of extrinsic documents to resolve competing theories against the complaint risks premature dismissal of plausible claims without the benefit of discovery and due process."  (Doc. No. 44 at 2.)  However, the court finds that the "Proclamation" and the "Resolution re Police Reform" are the proper subject of judicial notice and defendants' request will therefore be granted.  *See* Fed. R. Evid. 201(b)–(c); *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1083 n.3 (9th Cir. 2022) (taking judicial notice of a document obtained from an official government website).

*Grp., LLC v. Allvoices, Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24, 2014).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

Here, the court construes defendants' motion as posing a facial attack under Rule 12(b)(1) because in it, defendants contend that the allegations of plaintiffs' TAC are insufficient for purposes of establishing standing with respect to plaintiff VPOA.  (*See* Doc. No. 42 at 25–26.)

A party making a facial attack does not submit supporting evidence with the motion because jurisdiction is challenged based solely on the pleadings.  *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156; *see also Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1084 (N.D. Cal. 2019) ("[C]ourts do not consider evidence outside the pleadings when deciding a facial attack.") (citation omitted).  Important for purposes of resolving the pending motion, it has been recognized that "[t]he district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

**B.      Motion to Dismiss Under Rule 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

### A.      Plaintiff VPOA's Standing

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold [sic] requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit.") (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)). An actual case or controversy will be held to exist when a plaintiff establishes standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Standing, in turn, "requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is

'likely' to be 'redressed by a favorable decision.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*) (citing *Lujan*, 504 U.S. at 560–61). "Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Id.* "[T]o establish standing to pursue injunctive relief . . . [the plaintiff] must demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citation and internal quotations omitted).

"To determine whether organizational standing requirements have been satisfied, [courts] 'conduct the same inquiry as in the case of an individual:  Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction?'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)). "[W]here the plaintiff is an organization, the standing requirements of Article III can be satisfied in two ways.  Either the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 109 (2023) (citation omitted); *see also E. Bay Sanctuary Covenant*, 993 F.3d at 662 ("Organizations can assert standing on behalf of their own members, or in their own right.") (internal citations omitted); *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019) ("[A]bsent a member with standing, . . . an organizational plaintiff 'may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'") (citation omitted).

Here, plaintiff VPOA alleges that it has standing to assert causes of action on behalf of itself and its members.  (Doc. No 39 at ¶ 165.)  Accordingly, the court will address both of plaintiff VPOA's theories as to its standing to bring this action.

       1.     <u>Whether Plaintiff VPOA Has Standing on Behalf of Itself</u>

An organization has standing on its own behalf if it can show:  (1) that the defendants' actions have frustrated its mission; and (2) that it has been forced to expend resources counteracting that frustration of mission.  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013); *see also E. Bay Sanctuary Covenant*, 993 F.3d at 663.  "Of course, organizations

1   cannot 'manufacture the injury by incurring litigation costs or simply choosing to spend money

2   fixing a problem that otherwise would not affect the organization at all[.]'" *E. Bay Sanctuary*

3   *Covenant*, 993 F.3d at 663 (quoting *La Asociacion de Trabajadores de Lake Forest v. City of*

4   *Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)).  Rather, an organizational plaintiff must

5   "show they 'would have suffered some other injury' had they 'not diverted resources to

6   counteracting the problem.'" *Id.* at 974 (quoting *La Asociacion*, 624 F.3d at 1088).  Thus, "[a]n

7   organization may sue only if it was *forced* to choose between suffering an injury and diverting

8   resources to counteract the injury." *La Asociacion*, 624 F.3d at 1088 n.4 (emphasis added).

9         In order for plaintiff VPOA to have direct standing to bring this action, "the challenged

10  conduct must harm the organization's activities specifically, not merely frustrate [its] mission in a

11  general sense." *In Def. of Animals v. Sanderson Farms, Inc.*, No. 3:20-cv-05293-RS, 2021 WL

12  4243391, at *4 (N.D. Cal. Sept. 17, 2021).  Here, critically, the TAC is devoid of any allegations

13  addressing how defendants' actions have caused or threatened injury to plaintiff VPOA's mission

14  or what steps plaintiff VPOA has been forced to take to avoid such harm.  *See La Asociacion*, 624

15  F.3d at 1088 n.4.  In the TAC, plaintiff VPOA makes only a vague reference to the organization's

16  broad mission and activities:  "[The VPOA is] the exclusively recognized collective bargaining

17  agent for [VPD] Officers" and "The VPOA's primary purpose includes representing its members

18  in their relations with the City of Vallejo and advocating for their interests,"  (Doc. No. 39 at

19  ¶ 14), but fails to detail its regular activities beyond collective bargaining representation or how

20  defendants' actions specifically impact its functions.  Plaintiff VPOA's bare and conclusory

21  allegations are insufficient to show that defendants' actions have frustrated its mission by

22  harming any of the organization's activities.

23        Therefore, the court finds that the TAC fails to allege Article III standing predicated on

24  plaintiff VPOA's direct standing.  *See In Def. of Animals*, 2021 WL 4243391, at *5 ("[Plaintiff]

25  only pleads facts showing the abstract interests it fights for have been set back by [defendant's

26  conduct] . . . . and asserts its mission has been frustrated.  This is not enough."); *Serv. Women's*

27  *Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1100 (N.D. Cal. 2018) (holding that an

28  organizational plaintiff did not establish standing where it was unclear whether the challenged

1  policies "constitute[d] more than a setback to [the plaintiff's] abstract social interest" because the

2  plaintiff's "conclusory" allegations did not provide sufficient "specificity in describing (1) from

3  what and (2) to what its resources have been reallocated"); *Our Watch With Tim Thompson, v.*

4  *Bonta*, ___ F. Supp.3d ___, 2023 WL 4600117, at *6 (E.D. Cal. July 18, 2023) (dismissing a

5  complaint for lack of standing where the plaintiff-organization challenging the constitutionality of

6  a state law failed to allege "what plaintiff's regular activities are and how [the state law's]

7  enactment specifically impacts the organization's functions").

8          2.      <u>Whether Plaintiff VPOA Has Organizational Standing on Behalf of its Members</u>

9          To invoke organizational standing on behalf of its members, a plaintiff must allege facts

10  demonstrating that: "(1) its members would otherwise have standing to sue in their own right; (2)

11  the interests it seeks to protect are germane to the organization's purpose; and (3) neither the

12  claim asserted nor the relief requested requires the participation of individual members in the

13  lawsuit." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (citing *Hunt v.*

14  *Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

15          Plaintiff VPOA has not adequately pled facts addressing the elements of the associational

16  standing test.  As to the second prong, as discussed above, plaintiff VPOA only makes a vague

17  reference to the organization's broad purpose and activities.  As a result, plaintiff VPOA has not

18  plausibly alleged that the interests it seeks to protect in this action are germane to the

19  organization's purpose. *See Am. Canine Found. v. Sun*, No. 06-cv-04713-MMC, 2007 WL

20  4208358, at *3 (N.D. Cal. Nov. 27, 2007) (finding that the plaintiff organization did not

21  adequately demonstrate the second element of the *Hunt* test where it failed to define the

22  organization's purpose).

23          Furthermore, the third prong of the test has not been adequately pled.  Plaintiff VPOA

24  requests damages, which cannot be awarded under the associational standing doctrine. *See Na*

25  *Po'e KOkua v. Bank of Am. Corp.*, No. 22-cv-00238-JMS-WRP, 2023 WL 2042923, at *4 (D.

26  Haw. Feb. 16, 2023) ("The general rule is that an association's claim for monetary damages run

27  afoul of this third prong, because such claims involve individualized proof necessarily 'requiring

28  the participation of individual members of a lawsuit.'") (quoting *Hunt*, 432 U.S. at 343).

1    Although plaintiff VPOA also requests injunctive and declaratory relief, which could be granted

2    in keeping with the standard governing associational standing, it is unclear what specific relief

3    plaintiff VPOA seeks to address their members' purported injuries. *See id.* at *5. As a result, the

4    court finds that the TAC fails to allege Article III standing predicated on plaintiff VPOA's

5    organizational standing.

6         Accordingly, plaintiff VPOA will be dismissed for lack of standing.

7    **B.    Plaintiff Nichelini's § 1983 Claims**

8         The court now turns to the Rule 12(b)(6) portion of defendants' motion. Because plaintiff

9    VPOA will be dismissed due to lack of standing, the court will only address the sufficiency of the

10   § 1983 claims in relation to plaintiff Nichelini.

11        1.    Lack of Allegations Regarding Personal Participation

12        Defendants argue that plaintiff Nichelini has failed to amend his complaint to allege facts

13   demonstrating the individual defendants' personal participation in violating his constitutional

14   rights. (Doc. No. 42 at 20.) They contend that while plaintiff Nichelini mentions city council

15   actions regarding issuing the Proclamation and enacting the Resolution re Police Reform, there is

16   nothing inherently unconstitutional in those actions. (*Id.*) Furthermore, defendants argue that

17   although plaintiff Nichelini alleges defendants Nyhoff, Cardwell, and Williams's participation in

18   the "Legal and Policy Team #2" and email exchanges, there is nothing which indicates that those

19   defendants took any action to deprive plaintiff Nichelini of his constitutional rights. (*Id.* at 20–

20   21.) In response, plaintiff Nichelini argues that even if the Proclamation and the Resolution re

21   Police Reform do not overtly violate his rights, they were intended to do so. (Doc. No. 44 at 3.)

22        The court agrees with defendants that the TAC fails to cure the previously noted

23   deficiencies in alleging personal participation by the individual defendants in any violation of

24   plaintiff Nichelini's constitutional rights. Although plaintiff Nichelini has added allegations that

25   certain defendants took specific acts, he has not tied the actions taken by those defendants to any

26   plausible allegations of unconstitutional conduct.

27        Upon reviewing the alleged correspondence cited by plaintiff Nichelini, the court finds

28   that it does not support his assertion that the Proclamation and Resolution re Police Reform were

1    intended to violate his rights.  As defendants argue in their reply, acknowledging the need for

2    police department reform or the need to discipline an employee is not inherently unconstitutional,

3    nor does it raise an inference of an intent to violate plaintiff Nichelini's constitutional rights.  (*See*

4    Doc. No. 45 at 12, 13.)  The court also finds that plaintiff Nichelini's allegations that defendants

5    declared a public emergency to bypass VPOA's members rights are mere "conclusions . . . not

6    entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

7          Moreover, the court previously pointed out that plaintiff Nichelini had not described any

8    personal participation by any of the individual defendants in the decision to terminate him.  (Doc.

9    No. 38 at 15.)  Yet, he has included the exact allegation that the court previously found

10   inadequate:  "[o]n March 31, 2021, defendants, and each of them, through defendant Williams,

11   delivered a notice of 40 hours of unpaid suspension for the September 24, 2019 city council

12   meeting incident."  (Doc. No. 39 at ¶ 141.)  While plaintiff Nichelini adds new allegations

13   averring that defendants who were part of the "Legal and Policy Team #2" discussed his proposed

14   termination, these allegations do not actually aver that those defendants participated in the

15   decision to suspend or terminate plaintiff Nichelini in March 2021.

16         Because the TAC does not contain allegation sufficiently detailing how the individual

17   defendants personally participated in causing the alleged constitutional harms, plaintiff Nichelini

18   has not plausibly alleged any viable § 1983 claims against those defendants.  Therefore, the

19   § 1983 claims against the individual defendants will be dismissed.

20         2.    Additional Pleading Deficiencies in the Allegations of Constitutional Violations

21         In addition to the deficiencies in alleging personal participation by the individual

22   defendants, plaintiff Nichelini's § 1983 claims are still substantively deficient, supporting the

23   denial of leave to amend, as discussed below.

24               a.    *First Amendment Claims (First and Second Claims)*

25         "It is well settled that the state may not abuse its position as employer to stifle 'the First

26   Amendment rights its employees would otherwise enjoy as citizens to comment on matters of

27   public interest.'"  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (quoting *Pickering v. Bd. of*

28   *Educ.*, 391 U.S. 563, 568 (1968)) (brackets omitted).  The Supreme Court has explained that "the

problem in any case is to arrive at a balance between the interests of the [public employee] as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568.

In striking this balance, the Ninth Circuit has articulated a five-step test for evaluating First Amendment retaliation claims under § 1983:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng*, 552 F.3d at 1070.  The first three elements make up the plaintiff's *prima facie* case.  *See id.* at 1070–71.  "[A]ll five factors are independently necessary" and "failure to meet any one of them is fatal to the plaintiff's case."  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013)

Plaintiff Nichelini characterizes his First Amendment free speech and free association claims as distinct claims.  (Doc. No. 39 at 39, 43.)  However, the Ninth Circuit has explained that in a case where the "speech and associational rights at issue . . . are so intertwined that [there is] no reason to distinguish [a] hybrid circumstance from a case involving only speech rights," courts may analyze the claims together and the *Pickering* framework may be applied to the entire claim. *Hudson v. Craven*, 403 F.3d 691, 698 (9th Cir. 2005); *see also Heidt v. City of McMinnville*, No. 3:15-cv-00989-SI, 2015 WL 9484484, at *5 (D. Or. Dec. 29, 2015) (dismissing the plaintiff's hybrid speech and association claim because it appeared to relate only to the plaintiff's "personnel grievances and not to any matter of public concern").  Here, given the substantial overlap between plaintiff Nichelini's freedom of association and freedom of speech claims, (*see* Doc. No. 39 at 39–48), the court will treat these claims as a hybrid speech/association claim.  *See Candelaria v. City of Tolleson*, No. 14-cv-02123-PHX-JJT, 2016 WL 3653959, at *7 (D. Ariz. July 8, 2016) ("Since the facts underlying Plaintiffs' First Amendment speech and association claims are substantially the same, the Court will analyze the claims collectively . . . ."), *aff'd*, 721

F. App'x 588 (9th Cir. 2017); *Vizcarra v. Chou*, No. 05-cv-08440-CAS-E, 2007 WL 4790813, at

\*4 (C.D. Cal. June 6, 2007) ("Plaintiff asserts claims for violation of her right to freedom of

speech as well as her right to freedom of association.  Although the parties approach these as two

separate claims, it appears to the Court that plaintiff's First Amendment claim is better described

as a 'hybrid speech/association claim' as described in [*Hudson*].").

> i. Plaintiff Nichelini Does Not Adequately Allege That He Spoke on a Matter of Public Concern

Whether "speech addresses a matter of public concern must be determined by the content,

form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461

U.S. 138, 147–48 (1983).  This inquiry is purely a question of law.  *Robinson v. York*, 566 F.3d

817, 822 (9th Cir. 2009).  The content of the speech at issue is the "greatest single factor" in the

inquiry.  *Demers v. Austin*, 746 F.3d 402, 415 (9th Cir. 2014); *Desrochers v. City of San*

*Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009).  Courts are to "look to what the employee[ ]

actually said, not what they say they said after the fact" or "post hoc characterizations."

*Desrochers*, 572 F.3d at 711.

In their pending motion, defendants argue that plaintiff Nichelini's First Amendment

claims fail because his allegations are conclusory and "fail to specify what speech they contend

was protected, never mind stating enough facts to demonstrate that it was speech on a matter of

public concern."  (Doc. No. 42 at 22.)  Hence, defendants assert that the court's inquiry should

end at step one of the five-step test.  (*See id.*)

In his opposition, plaintiff Nichelini highlights the following allegations as speech that he

believes addressed matters of public concern:

> On March 4, 2020, President Nichelini, in his capacity as VPOA
> President, sent an email regarding matters of public concern to other
> VPOA members.  The email discussed matters of important VPOA
> business, including dealings with the public and the ongoing political
> relations between VPOA members and the City Defendants.

> On December 7, 2020, President Nichelini, in his capacity as VPOA
> President, responded to an email from a local newspaper reporter
> who was relocating to Georgia, and expressed concerns about the
> fairness of the individual's reporting on VPOA members and the
> VPD.

17

1
2
3
4

> President Nichelini's correspondence to members of the VPOA and the media about matters of public concern is speech protected by the First Amendment, and City Defendants, and each of them, knew the correspondence was protected, concerted speech. City Defendants further knew that when he issued the correspondence, President Nichelini was speaking in his capacity as the VPOA President, not as a public employee, on matters of public concern.

5    (Doc. No. 44 at 13) (citations omitted).

6          The court finds that these allegations are insufficient to determine whether the speech

7    addressed a matter of public concern. Critically, plaintiff Nichelini fails to allege what he

8    actually said. Instead, he relies on mere "labels and conclusions" regarding the alleged speech,

9    *Iqbal*, 556 U.S. at 678 (citation omitted), such as his discussions on "matters of public concern,"

10   "matters of important VPOA business, including dealings with the public and the ongoing

11   political relations between VPOA members and the City Defendants," and expressing "concerns

12   about the fairness of the individual's reporting on VPOA members and the VPD." (Doc. No. 39 at

13   ¶¶ 45, 93, 172.) These are precisely the kinds of "post hoc characterizations" that the Ninth

14   Circuit has instructed district courts not to consider when addressing whether the content of the

15   speech addresses matters of public concern for First Amendment purposes. *Desrochers*, 572 F.3d

16   at 711; *see also Cross v. Cal. Dep't of Food & Agric.*, No. 1:18-cv-01302-DAD-JLT, 2019 WL

17   2355598, at *4 (E.D. Cal. June 4, 2019) ("The label 'Hurtado Illegal Driving,' which plaintiff has

18   placed on her stated objection, is exactly the type of *post hoc* characterization the Ninth Circuit

19   has instructed courts not to consider when evaluating the content of a statement allegedly giving

20   rise to such a claim."); *O'Connor v. City of Desert Hot Springs*, No. 11-cv-03621-SVW-E, 2012

21   WL 13195089, at *2 (C.D. Cal. Jan. 11, 2012) (dismissing the plaintiff's First Amendment claim,

22   because that plaintiff had "failed to allege 'what [he] actually said'") (quoting *Desrochers*, 572

23   F.3d at 711); *Ibarra v. City of Watsonville*, No. 5:12-cv-02271-EJD, 2013 WL 623045, at *6

24   (N.D. Cal. Feb. 15, 2013) (holding that the plaintiff's "vague assertions that he 'spoke out on a

25   matter of public interest, to wit: corruption and misconduct in the CITY police department' does

26   not save his claims. Plaintiff must identify what corruption and misconduct he spoke out against,

27   what he said, to whom, and in what forum") (internal citation omitted).

28   /////

Furthermore, the form of plaintiff Nichelini's speech also suggests that he was not speaking on a matter of public concern but rather that his speech was of a private nature. Although not dispositive, speech directed at "a limited audience weighs against a claim of protected speech." *Desrochers*, 572 F.3d at 714 (quoting *Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 585 (9th Cir.1997)) (brackets omitted). Here, plaintiff Nichelini alleges that he sent emails to other VPOA members—a purely internal form of communication. Although he also alleges that he sent an email to a newspaper reporter expressing concerns about the fairness of that individual's prior reporting, there is no indication that plaintiff intended this message for publication. In fact, plaintiff Nichelini alleges that the reporter was relocating to Georgia, suggesting that the email was personal in nature, directed at the reporter, rather than to any newspaper.

Finally, plaintiff Nichelini does not provide enough information to enable the court to determine the context of the speech at issue. When evaluating the context of an employee's speech, the relevant inquiry is "why did the employee speak (as best as we can tell)?" *Id.* at 715. However, the allegations are so vague that the court cannot tell whether the alleged speech concerns mostly "individual personnel disputes and grievances," or, instead, concerns information that would be of "relevance to the public's evaluation of the performance of governmental agencies." *Id.* at 710 (citations omitted).

Because plaintiff Nichelini has failed to allege facts establishing the threshold element of a First Amendment retaliation claim, the court does not need to consider the further elements required to state a viable retaliation claim, and it declines to do so. *See id.* at 719. Accordingly, defendants' motion to dismiss plaintiff Nichelini's First Amendment claims will be granted.

      b.    *Fourteenth Amendment Due Process Claims (Third and Fourth Claims)*

In their pending motion, defendants move to dismiss plaintiff Nichelini's Fourteenth Amendment due process violation claims asserted in the TAC, arguing that the amendments made to these claims fail to rectify the deficiencies outlined in the court's order dismissing the SAC. (Doc. No. 42 at 22.)

/////

1                              i.    Procedural Due Process

2          With respect to plaintiff Nichelini's third claim that defendants violated his procedural

3   due process right under the Fourteenth Amendment, the court previously held that plaintiffs had

4   failed to allege that plaintiff Nichelini was deprived of any pre- or post-disciplinary due process

5   in relation to his March 2021 termination or his March 2021 unpaid suspension.  (Doc. No. 38 at

6   23–24.)  Additionally, the court observed that the SAC did not specify whether the July 2020

7   administrative leave was unpaid, and that a "public employee suspended with pay has not been

8   deprived of a property interest."  (*Id.* at 24) (citation omitted).  Although the court advised

9   plaintiff Nichelini of these deficiencies and provided him with an opportunity to amend, the TAC

10  still does not allege that plaintiff Nichelini was not provided with notice and an opportunity to be

11  heard, either before the discipline was imposed, or afterward, nor does it allege that in July 2020

12  plaintiff Nichelini was placed on unpaid administrative leave.  Consequently, plaintiff Nichelini's

13  third claim for procedural due process violations will be dismissed.

14                             ii.    Substantive Due Process

15         Turning to plaintiff Nichelini's fourth claim that defendants violated his right to

16  substantive due process under the Fourteenth Amendment, the court previously explained that

17  such claims are limited to situations where an employee is prevented from pursuing an entire

18  profession, purportedly as a result of circumstances akin to a government blacklist that is

19  circulated or publicized to potential employers.  (Doc. No. 38 at 18.)  The court observed that

20  plaintiff Nichelini did not allege that the City published or circulated the March 31, 2021 Notice

21  of Termination, which allegedly painted him as a "racist cop," nor did he allege that he was

22  denied employment outside the Vallejo Police Department.  (*Id.* at 19.)  The TAC contains the

23  following new allegation with respect to this claim:

24                 As a result of being labeled and published as a "racist cop," Nichelini
                   suffered harm to reputation which will prevent further employment
25                 opportunity, both inside and outside the field of law enforcement.
                   This includes but is not limited to lateral Department transfers,
26                 promotions both inside and outside the VPD, and career changes.
                   Additionally, Nichelini had other business interests in agriculture and
27                 sales, which were economically harmed as a result of boycotts staged
                   by anti-police groups and their followers which caused reductions in
28                 business revenue and harm to business reputation and goodwill.

                                                20

1

2

3

> Many news stories carried the allegations against Nichelini and were therefore publicized widely to the public, Nichelini's potential employers, as well as customers and potential customers of Nichelini's business interests.

4     (Doc. No. 39 at ¶ 143.)

5          The court agrees with defendants that plaintiff Nichelini still fails to state a cognizable

6     substantive due process claim. (*See* Doc. No. 42 at 24.)  Plaintiff Nichelini's allegations do not

7     state that he was denied other employment outside the VPD; it merely hypothesizes that he will

8     not be able to secure such employment.  Nor does he allege that the March 31, 2021 Notice of

9     Termination was actually disseminated such that prospective employers could see it.  Instead, the

10    allegation is just as vague as the allegation appearing in the SAC, which the court found to be

11    deficient.  Finally, the allegations regarding plaintiff Nichelini's other business interests and the

12    alleged harm to his reputation misses the mark.  "Stigmatizing statements that merely cause

13    reduced economic returns and diminished prestige, but not permanent exclusion from . . . gainful

14    employment within the trade or profession do not constitute a deprivation of liberty." *Blantz v.*

15    *Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 925 (9th Cir.

16    2013) (internal quotation and citation omitted).  Thus, it is immaterial that plaintiff Nichelini "had

17    other business interests in agriculture and sales, which were economically harmed as a result of

18    boycotts staged by anti-police groups and their followers which caused reductions in business

19    revenue and harm to business reputation and goodwill" because plaintiff Nichelini has pled no

20    facts suggesting that he is barred from all employment in his field.  (Doc. No. 39 at ¶ 143); *see*

21    *also WMX Technologies, Inc. v. Miller*, 197 F.3d 367 (9th Cir. 1999) (finding that an allegedly

22    defamatory report that "arguably . . . damaged [the plaintiff's] reputation and could affect its

23    business relations with others and thus the goodwill of the business . . . . would present a classic

24    case for a state court defamation action, but not an action under § 1983"); *Frazier v. City of*

25    *Fresno*, No. 1:20-cv-01069-DAD-SAB, 2022 WL 1128991, at *8 (E.D. Cal. Apr. 15, 2022).

26    Accordingly, plaintiff Nichelini's fourth claim will also be dismissed.

27    /////

28    /////

1                                c.       *Fourteenth Amendment Equal Protection Claim (Fifth Claim)*

2               In its previous order, the court noted that plaintiffs' Fourteenth Amendment equal

3       protection claim appeared to be duplicative of plaintiffs' First Amendment claims.  (Doc. No. 38

4       at 18 n.9.)  The court explained that plaintiff Nichelini did not assert that he was subject to any

5       invidious classification, such as one based on race or gender; rather, he contended that the

6       differential treatment he received resulted from his exercise of his rights to free speech and

7       association.  (*Id.*) (citing *Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915,

8       943, 944 (C.D. Cal. 2019)) (dismissing the plaintiffs' equal protection claim as duplicative of

9       their First Amendment claim where the court found that the plaintiffs could not "plead an Equal

10      Protection claim without reference to their First Amendment rights").  The undersigned

11      emphasized:  "In any third amended complaint, should plaintiffs intend to include an equal

12      protection claim, they must ground such a claim in factors other than the exercise of their rights to

13      free speech and association."  (*Id.*)  Nonetheless, plaintiff Nichelini did not do so.  Instead, he

14      merely realleges in the TAC that the purported denial of equal protection was based on his

15      exercise of First Amendment rights.  (*See* Doc. No. 39 at ¶ 223.)  For this reason, defendants

16      argue that this claim should be dismissed.  (Doc. No. 42 at 25.)

17              However, in his opposition, plaintiff Nichelini argues that he need not assert some basis

18      for his equal protection claim aside from the First Amendment claim because equal protection

19      claims can sometimes involve a "class of one," which is not based on membership in a protected

20      class.  (Doc. No. 44 at 15.)  But as defendants point out in their reply, a class-of-one theory of

21      equal protection cannot be applied in the public employment context.  (Doc. No. 45 at 17); *see*

22      *also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 607 (2008) (holding that "the class-of-one

23      theory of equal protection has no application in the public employment context").  Although

24      plaintiff Nichelini argues that he is suing in part in his private capacity as union president rather

25      than as a government employee (Doc. No. 44 at 15), as discussed above, the union does not have

26      standing to sue.

27      /////

28      /////

As such, plaintiff Nichelini's class-of-one theory is not viable.  Furthermore, because plaintiff Nichelini's equal protection claim is entirely duplicative of his First Amendment claims, it too will be dismissed.

           d.       Monell *Liability*

Plaintiff Nichelini asserts all of his § 1983 claims against the municipal defendants.  To establish Monell *municipal* liability under § 1983, a plaintiff must allege and ultimately show: (1) that the plaintiff "possessed a constitutional right of which [he or she] was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks omitted).  *Monell* claims require a plaintiff to show an underlying constitutional violation.  *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).

As discussed above, plaintiff Nichelini fails to adequately allege a constitutional violation. Therefore, he cannot state a *Monell* claim under any theory of liability.  *See id.*; *see also Johnson v. City of Seattle*, 474 F.3d 634, 638–40 (9th Cir. 2007) (noting that *Monell* claims require "an underlying constitutional tort" and concluding that the municipal defendants were not liable under *Monell* because plaintiffs had not alleged a substantive due process violation); *Patel v. Maricopa Cnty.*, 585 F. App'x 452, 452 (9th Cir. 2014)[6] (holding that the plaintiff's "*Monell* and supervisory liability claims fail as there was no underlying constitutional violation"); *Moreno v. Cnty. of San Bernardino*, No. 21-cv-01905-JGB-SHK, 2022 WL 3012224, at *4 (C.D. Cal. June 2, 2022) (declining to address the plaintiffs' arguments related to its *Monell* theories because the plaintiff had failed to allege an underlying constitutional violation).

## C.    Plaintiffs' State Law Claims

"Where all federal claims are dismissed in an action containing both federal and state law claims, a federal court may decline to exercise supplemental jurisdiction over the remaining state

---

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1   law claims." *Tennyson v. Cnty. of Sacramento*, No. 2:19-cv-00429-KJM-EFB, 2020 WL

2   4059568, at *7 (E.D. Cal. July 20, 2020).  Because the court will dismiss all of plaintiffs' federal

3   claims, the court will decline to exercise supplemental jurisdiction over plaintiffs' state law

4   claims.  Accordingly, plaintiffs' state law claims will also be dismissed.

5   **D.      Leave to Amend**

6   Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

7   P. 15(a).  Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure

8   deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

9   leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

10   The court has considered the *Foman* factors and finds justice does not require granting

11   plaintiffs further leave to amend.  Plaintiffs have failed to correct the deficiencies the court

12   identified in the previous order granting a motion to dismiss brought on behalf of these

13   defendants.  Based on this failure, the court concludes that granting leave to amend would not

14   only be futile, but would also be unduly prejudicial to defendants.  *See, e.g., Sciacca v. Apple,*

15   *Inc.*, 362 F. Supp. 3d 787, 801 (N.D. Cal. 2019) ("Plaintiff's claim is dismissed with prejudice

16   because granting Plaintiff an additional opportunity to amend his complaint would be futile and

17   unduly prejudicial because Plaintiff already had notice of this deficiency and failed to cure it.")

18   (citing *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)); *Shetty v.*

19   *SunTrust Mortg.*, No. 13-cv-00820-AG-E, 2013 WL 12244326, at *4 (C.D. Cal. Sept. 9, 2013)

20   ("It would be an 'exercise in futility' to allow Plaintiff to amend his Complaint for a second time

21   because Plaintiff has already been informed of deficiencies in his Complaint and failed to correct

22   them.") (quoting *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998)), *aff'd sub nom.*

23   *Shetty v. SunTrust Mortg., Inc.*, 696 F. App'x 830 (9th Cir. 2017).

24   /////

25   /////

26   /////

27   /////

28

1

**CONCLUSION**

2

For the reasons explained above:

3    1.    Defendants' request for judicial notice (Doc. No. 42-1) is granted;

4    2.    Defendants' motion to dismiss (Doc. No. 42) is granted in its entirety, without

5          leave to amend;

6    3.    The court declines to exercise supplemental jurisdiction over plaintiffs' state law

7          claims, and those claims are therefore dismissed without prejudice; and

8    4.    The Clerk of the Court is directed to close this case.

9

IT IS SO ORDERED.

10

Dated:  __**April 8, 2024**__                    _____

11                                              DALE A. DROZD
                                                UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25